B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| JOSEPH B. COLLINS, Trustee in Bankruptcy of Robert N. Lupo | See attached Addendum |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Joseph B. Collins, Esq. (BBO No. 092660) HENDEL & COLLINS, P.C.,, 101 State Street Springfield, MA 01101 (413)734-6411 | See attached Addendum |

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| □ Debtor ☒U.S. Trustee/Bankruptcy Admin □ Creditor □ Other □ Trustee | □ Debtor □ U.S. Trustee/Bankruptcy Admin □ Creditor ☒Other □ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint to seek declaratory judgment that certain trust property is property of the Bankruptcy Estate under 11 U.S.C. § 541 and to avoid the post-petition transfer of real estate for the benefit of the bankruptcy estate, or, alternatively, to recover the value of the transfer under 11 U.S.C. §§ 549, 550, and 551.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
□ 11-Recovery of money/property - §542 turnover of property
□ 12-Recovery of money/property - §547 preference
□ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☒ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
□ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
□ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ 1,445,690.00 |

Other Relief Sought    Avoidance of transfer and preservation of asset transferred; Declaratory Judgment

**B104 (FORM 104) (08/07), Page 2**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR        Robert N. Lupo | | BANKRUPTCY CASE NO.     09-21945-JNF | |
| DISTRICT IN WHICH CASE IS PENDING<br>District of Massachusetts | | DIVISION OFFICE<br>Boston | NAME OF JUDGE<br>Hon Joan N. Feeney |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | | |
| DATE<br><br>4-12-11 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Joseph B. Collins | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

ADDENDUM TO ADVERSARY PROCEEDING COVER SHEET
(Form B104)

Defendants:

ROBERT N. LUPO, individually, and as Trustee of N&A Lupo Realty
Trust, Mashpee Realty Trust, and M. Adeline Lupo Revocable
Trust;
KENNETH V. LOPEZ, Trustee of N&A Lupo Realty Trust and M.
Adeline Lupo Revocable Trust;
JKCB, LLC;
JOAN BATISTA; and
AXIOM PARTNERS, LP

Attorneys for Defendants (if known)

Leonard M. Krulewich, Esq.
LEONARD M. KRULEWICH AND ASSOCIATES
29 Crafts Street
Newton, MA 02458
 (counsel to Robert N. Lupo, individually)

Philip C. Silverman, Esq.
ANDERSON AQUINO, LLP
240 Lewis Wharf
Boston, MA 02110
 (counsel to Joan Batista)

JAMES A. RICE, ESQ.
6 Bennett Street
Cambridge, MA 02138-5708
 (counsel to Axiom Partners, LLP)

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re | ) Chapter 7, No. 09-21945-JNF |
| | ) |
| ROBERT N. LUPO | ) |
| | ) |
| | ) |
| Debtor | ) |
| | ) |
| | ) |
| JOSEPH B. COLLINS, | ) Adversary Proceeding No. |
| TRUSTEE IN BANKRUPTCY OF | ) |
| ROBERT N. LUPO | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| ROBERT N. LUPO, individually, | ) |
| and as Trustee of | ) |
| N&A Lupo Realty Trust, | ) |
| Lupo Mashpee Realty Trust, | ) |
| and M. Adeline Lupo Revocable | ) |
| Trust, | ) |
| KENNETH V. LOPEZ, Trustee of | ) |
| N&A Lupo Realty Trust and | ) |
| M. Adeline Lupo Revocable | ) |
| Trust, | ) |
| JKCB, LLC, | ) |
| JOAN BATISTA, and | ) |
| AXIOM PARTNERS, LP | ) |
| | ) |
| Defendants | ) |
| | ) |

## VERIFIED COMPLAINT

## Jurisdictional, Venue, and Procedural Allegations

1. This is an Adversary Proceeding brought pursuant to 11
U.S.C. §§ 105, 541, 549, 550 and 551 and Rules 7001 et seq. of

the Federal Rules of Bankruptcy Procedure. This Adversary
Proceeding seeks a Declaratory Judgment determining whether, and
to what extent, the Lupo Trusts (defined below), the assets of
the Lupo Trusts, and the proceeds from transfers made by the
Debtor from the Lupo Trusts constitute property of the Debtor's
Bankruptcy Estate; and also a Judgment avoiding certain
transfers, or alternatively awarding a money judgment for the
value of such transfers.

    2.    As a Bankruptcy Court, this Court has jurisdiction
over this instant Adversary Proceeding pursuant to 28 U.S.C.
§ 157, which confers upon this Court jurisdiction over
proceedings arising under Title 11 of the United States Code
("Bankruptcy Code") and of Civil Proceedings arising in or
related to cases under the Bankruptcy Code, and this proceeding
may be commenced and prosecuted in this Bankruptcy Court in
which the underlying Chapter 7 case is pending.

    3.    Pursuant to 11 U.S.C. § 105(a), this Court has the
equitable power to issue Orders which are necessary and
appropriate to carry out the provisions of the Bankruptcy Code.

    4.    This is a core proceeding pursuant to 28 U.S.C.
§ 157(b)(2).

## Parties

    5.    The Plaintiff, JOSEPH B. COLLINS, Trustee in
Bankruptcy of Robert N. Lupo ("Plaintiff" or "Trustee"), is the
duly appointed, qualified, and acting Trustee in Bankruptcy in
the underlying Chapter 7 case of Robert N. Lupo and has a usual

place of business c/o HENDEL & COLLINS, P.C., 101 State Street, Springfield, Massachusetts.

6.    The Defendant, ROBERT N. LUPO ("Debtor"), is an individual residing at 89 Sudbury Road, Weston, Massachusetts.

7.    The Debtor is a trustee of Defendant N&A LUPO REALTY TRUST which, upon information and belief, has a place of business at 89 Sudbury Road, Weston, Massachusetts.

8.    The Debtor is the trustee of Defendant LUPO MASHPEE REALTY TRUST which, upon information and belief, has a place of business at 89 Sudbury Road, Weston, Massachusetts.

9.    The Debtor is a trustee of Defendant M. ADELINE LUPO REVOCABLE TRUST which, upon information and belief, has a place of business at 89 Sudbury Road, Weston, Massachusetts.

10.    The Defendant, KENNETH LOPEZ, may be a trustee of the N&A LUPO REALTY TRUST and the M. ADELINE LUPO REVOCABLE TRUST and, upon information and belief, has a principal place of business at 131 Linden Street, Waltham, Massachusetts.

11.    The Defendant, JKCB, LLC, is a Massachusetts Limited Liability Company, having its principal office located at 131 Linden Street, Waltham, Massachusetts.

12.    The Defendant, JOAN C. BATISTA, is an individual residing at 3683 Vancouver Way, Concord, California.

13. The Defendant, Axiom Partners, LP, is a Delaware
limited partnership with a place of business at 21 Custom House
Street, Suite 910, Boston, Massachusetts.

## Factual Background

14. On December 10, 2009, the Debtor filed a Voluntary
Petition pursuant to the provisions of Chapter 11 of the United
States Bankruptcy Code ("Code") with the United States
Bankruptcy Court for the District of Massachusetts ("Court").

15. On or about August 19, 2010, the Trustee accepted an
appointment as Chapter 11 Trustee of the Debtor's Bankruptcy
Estate.

16. On September 15, 2010, the Court entered an Order
converting the Debtor's bankruptcy case to one under the
provisions of Chapter 7 of the Code effective September 18, 2010
("Conversion Order"). On or about September 18, 2010, the
Trustee accepted an appointment as Chapter 7 Trustee of the
Debtor's Bankruptcy Estate, and he continues to serve in that
capacity.

17. On Schedule B, of the Debtor's Amended Bankruptcy
Schedules, and in response to Question 35 inquiring about other
personal property not previously listed, the Debtor represented
that his assets included an "Interest in N&A Realty Trust", an
"Interest in Mashpee Realty Trust," and an "Interest in M.
Adeline Lupo Revocable Trust" (Collectively these three Trusts
are referred to as the "Lupo Trusts").

18.   The value of each of the Lupo Trusts was stated in the Debtor's Schedules as "Unknown".

19.   The legal name of the entity referred to by the Debtor as the N&A Realty Trust appears to be the N&A Lupo Realty Trust. The N&A Lupo Realty Trust is referred to herein as the "N&A Trust".

20.   The legal name of the entity referred to by the Debtor as the Mashpee Realty Trust appears to be the Lupo Mashpee Realty Trust. The Lupo Mashpee Realty Trust is referred to herein as the "Mashpee Trust".

21.   In a statement attached to the Debtor's Schedules as Exhibit B, the Debtor made further representations regarding the N&A Trust. He represented that he and Ken Lopez were the trustees, that it contained a spendthrift provision, that the M. Adeline Lupo Revocable Trust was the beneficiary and that he and Joan Batista were the beneficiaries of the M. Adeline Lupo Revocable Trust. He also represented that the trust could be amended by a majority of the trustees and terminated by any beneficiary.

22.   In a statement attached to the Debtor's Schedules as Exhibit B, the Debtor made further representations regarding the Mashpee Trust. He represented that he was the trustee and that he and Joan Batista were the beneficiaries. He also represented that the trust could be amended with the consent of the beneficiaries and trustees could be terminated by any beneficiary.

23. In a statement attached to the Debtors' Schedules as Exhibit B, the Debtor made further representations regarding the M. Adeline Lupo Revocable Trust. He represented that he and Kenneth Lopez were the trustees and that he and Joan Batista were the beneficiaries. He also represented that the trust contained spendthrift provisions.

24. Joan Batista is the Debtor's sister.

25. Upon information and belief, Kenneth Lopez is also known as Ken Lopez and is the Debtor's stooge.

26. At an early stage of the Debtor's bankruptcy case, the Trustee began an investigation to determine whether, and to what extent, the Bankruptcy Estate held an interest in the Lupo Trusts.

27. In an Examiner's Report filed with the Court prior to the Trustee's appointment, the Examiner reported that all of the income from certain trusts that included the Lupo Trusts ". . . was deposited in the Debtor's operating account at RTN Bank along with all income received from the Debtor Owned Real Estate." See Examiner's Report, Docket No. 344, pgs 8 - 9.

28. Upon information and belief, the Debtor, during the two day period from December 2, 2009 through December 3, 2009, transferred the aggregate sum of $45,000.00 from the M. Adeline Lupo Trust to the N&A Trust for the stated purpose of "maintenance and repair of rental properties".

29. Upon information and belief, the Trustee says that, during the six month period immediately prior to the

commencement of his bankruptcy case, the Debtor used the assets
of the N&A Trust to pay his personal expenses, including legal
expense for matters unrelated to the financial affairs of N&A
Trust.

30.   Upon information and belief, the Debtor, during the
period from June 24, 2009 through December 31, 2009, transferred
the sum of $187,782.00 from the N&A Trust, directly or
indirectly, for his personal benefit; and further, only
$40,000.00 of the transfers were reimbursed by the Debtor prior
to the commencement of the Debtor's bankruptcy case.

31.   The Debtor's Bankruptcy Schedules do not list a claim
due to N&A Trust.

32.   The Trustee says that, by freely transferring and
using trust assets to pay personal expenses and by not
acknowledging that he is indebted to the trust as a result of
his personal use of trust assets, the Debtor has demonstrated
that he perceives and uses Lupo Trust assets as his personal
property.

33.   The Trustee requested the Debtor to voluntarily
turnover documents and information from which the Trustee could
determine whether the assets in the Lupo Trusts could be reached
for the benefit of the creditors of the Debtor's Bankruptcy
Estate.

34.   The Debtor refused to voluntarily provide the Trustee
with all information about the Lupo Trusts.   The Debtor also
refused to turnover other property, documents and information
regarding his financial affairs requested by the Trustee.

35. On February 3, 2011, the Trustee filed a Motion to Compel Turnover against the Debtor which sought, among other things, a Court Order requiring the Debtor to turnover, within 7 days from the entry of the Court Order, the following documents and information:

a complete copy of the N&A Trust, together with any amendments or modifications that may have been made from time to time; the names and addresses of all current and former trustees of the N&A Trust and the dates of the service of each trustee; the original Schedule of Beneficiaries of the N&A Trust and any amendments or modifications that may have been made from time to time.

36. On February 11, 2011, the Court entered an Order allowing the Motion to Compel Turnover (the "Turnover Order").

37. On February 11, 2011, the Trustee informed the Debtor, through his counsel, of the entry of the Turnover Order and of the requirement that all required documents were to be turned over by February 18, 2011.

38. The Debtor failed to comply with the Turnover Order and refused to turnover documents, including the documents relating to the N&A Trust.

39. On March 2, 2011, and as a result of the fact that the Debtor refused to turnover documents required by the Turnover Order, the Trustee filed a Motion seeking to hold the Debtor in Civil Contempt (the "Contempt Motion").

40.  A hearing on the Contempt Motion was scheduled for March 16, 2011.

41.  On March 16, 2011, the Debtor, through his counsel, requested the Trustee to agree to a continuance of the hearing on the Turnover Order.  The Trustee assented to the Debtor's request for a continuance and the Court rescheduled the hearing for April 26, 2011.

42.  Subsequent to March 16, 2011, the Debtor has turned over some, but not all, of the documents required by the Turnover Order.

43.  At all relevant times prior to February 17, 2011, the assets of the N&A Trust have included a parcel of real estate located at 29 Myles Standish Road, Weston, Massachusetts (the "Weston Real Estate").

44.  At all relevant times prior to February 17, 2011, the Weston Real Estate was unencumbered.

45.  The Weston Real Estate has an assessed value of $1,023,900.00.

46.  At all relevant times prior to February 17, 2011, the assets of the Mashpee Trust have included two parcels of real estate located at 28-33 Nehoiden Road, Mashpee, Massachusetts (the "Mashpee Real Estate").

47.  At all relevant times prior to February 17, 2011, the Mashpee Real Estate was unencumbered.

48.   The Mashpee Real Estate has an aggregate assessed value of $421,790.00.

49.   On February 17, 2011, without notice to the Trustee or the approval of the Bankruptcy Court, the Debtor executed a Deed, purporting to transfer the Weston Real Estate to JKCB, LLC for a stated consideration of $100.00.  A copy of the Deed executed by the Debtor is annexed hereto as Exhibit "A".

50.   On February 17, 2011, without notice to the Trustee or the approval of the Bankruptcy Court, the Debtor executed a Deed, purporting to transfer the Mashpee Real Estate to JKCB, LLC, for a stated consideration of $100.00.  A copy of the Deed executed by the Debtor is annexed hereto as Exhibit "B".

51.   JKCB, LLC is a Massachusetts Limited Liability Corporation organized by the Debtor on February 8, 2011.  The Debtor is listed as the Registered Agent for JKCB, LLC and is listed as the individual authorized to conduct real estate transactions.  Kenneth Lopez is listed as the Manager of JKCB, LLC.

52.   On or about February 14, 2011, the Debtor executed a document entitled Trustee Certificate and Acceptance in which he accepted an appointment as trustee of the N&A Trust.  A copy of the Trustee Certificate and Acceptance is annexed hereto as Exhibit "D".

53.   In violation of the Turnover Order, the Trustee's Certificate and Acceptance was never turned over to the Trustee.

54. On or about February 17, 2011, the Debtor executed a document entitled Lupo Mashpee Realty Trust Trustee's Certificate in which he certified that 100% of the holders of the beneficial interests in the Mashpee Trust had authorized him, in writing, to transfer the Mashpee Real Estate to JKCB, LLC for $100.00. A copy of the Lupo Mashpee Realty Trust Trustee's Certificate is attached hereto as Exhibit "E".

55. The Trustee has been informed by counsel representing Joan Batista, a beneficiary of the Mashpee Trust and the M. Adeline Lupo Revocable Trust, that since November of 2010, she has been asked by the Debtor on multiple occasions to authorize the transfer of the Weston Real Estate and the Mashpee Real Estate and that on each such occasion she has informed the Debtor that she did not authorize the conveyance of the Weston Real Estate or the Mashpee Real Estate.

56. On or about March 2, 2011, Robert N. Lupo and Kenneth Lopez, on behalf of JKCB, LLC, executed a Mortgage, purporting to encumber the Weston Real Estate and the Mashpee Real Estate in favor of Axiom Partners, LP ("Axiom"), in the stated amount of $750,000.00 (the "Mortgage"). A copy of the Mortgage is annexed hereto as Exhibit "C".

57. The Trustee says that upon the commencement of the Debtor's Bankruptcy Case, the Debtor's legal interests in the Lupo Trusts became property of his Bankruptcy Estate pursuant to Section 541(a) of the Bankruptcy Code; and further, the Trustee says that after the commencement of the Bankruptcy Case, the Trustee, and not the Debtor, has had the exclusive authority to exercise the rights, powers and privileges of the trustee of any

Trust in which the Debtor had served as trustee immediately
before the commencement of the bankruptcy case.

58.  The Trustee says that any powers of appointment that
the Debtor might hold as trustee of the Lupo Trusts, including
the power to transfer Trust assets to himself, or to entities
that he controlled, for nominal consideration, constitute
property of the Debtor's Bankruptcy Estate.

59.  Upon information and belief, the Lupo Trusts provide
the Debtor with powers that effectively provide the Debtor with
the power to transfer Trust assets to himself, or to an entity
that he controls, for nominal consideration.

60.  The Trustee says that the Debtor, by his actions, has
admitted that the powers of the trustee of the N&A Trust and the
Mashpee Trust include the power to transfer Trust assets to
himself, or an entity that he controls, for nominal
consideration.

61.  The Trustee says that upon the commencement of the
Debtor's Bankruptcy case the Debtor held a vested beneficial
interest in the Lupo Trusts and in the assets in the Lupo
Trusts.

62.  The Trustee says that this vested beneficial interest
in the Lupo Trusts and in the assets of the Lupo Trusts
constitutes property of the Debtor's Bankruptcy Estate.

63.  The Trustee says that the Debtor, by removing the
Weston Real Estate and the Mashpee Real Estate from the Lupo
Trusts, has removed these properties from any protection that he

might have had for such properties while they were in the Lupo
Trusts.

64.   Upon information and belief, the Trustee says that at
the time of the execution of the Deeds and Mortgage relating to
the Weston Real Estate or the Mashpee Real Estate, JKCB, LLC and
Axiom Partners, LP had actual knowledge of the pendency of the
Debtor's bankruptcy case.

65.   At no time prior to the execution of the Deeds or the
Mortgage relating to the Weston Real Estate and the Mashpee Real
Estate did JKCB, LLC or Axiom Partners, LP request authority
from the Trustee to undertake the transfers, or file a motion to
compel the abandonment of the Trustee's legal title to the
assets transferred.

66.   The Trustee says that there is a likelihood that the
Trustee will succeed on the merits of this Complaint and that
the Lupo Trust, and other assets will be deemed to be property
of the Debtor's Bankruptcy Estate.

67.   The Trustee says that the Bankruptcy Estate will
suffer immediate and irreparable harm if the Debtor, Kenneth
Lopez and the Lupo Trusts are not enjoined from dissipating the
assets of the Lupo Trusts, including the proceeds from the Axiom
LP Mortgage.

68.   The Trustee says that an Order enjoining the Debtor,
Kenneth Lopez and the Lupo Trusts from transferring, selling,
encumbering or otherwise hypothecating assets of the Lupo
Trusts, including the proceeds from the Axiom LP Mortgage will

preserve the status quo pending a ruling on the merits of this
Complaint.

69. The Trustee says that the balance of harms in granting
injunctive relief favors the Trustee in that trust assets will
not be further dissipated and will trust assets will be
preserved if injunctive relief is granted.

70. The Trustee says public policy will not be adversely
affected by the granting of the requested injunctive relief.

71. Upon information and belief, true copies of the N&A
Trust, the Mashpee Trust, and the M. Adeline Lupo Revocable
Trust are annexed hereto as Exhibits "F", "G" and "H".

## COUNT I - Declaratory Judgment
### (Section 541 - Property of the Estate)

72. The Trustee repeats and realleges the allegations made
in Paragraphs 1 through 71 with the same force and effect as if
fully detailed herein.

73. The Trustee says that as a result of the exclusive and
pervasive control that the Debtor has exercised over the Lupo
Trusts and as a result of his use of Trust assets for personal
purposes, the Lupo Trusts and the assets of the Lupo Trusts
constitute property of the Debtors bankruptcy Estate.

74. The Trustee says that the Lupo Trusts contain powers
of appointment that effectively authorize the Debtor to transfer
trust assets to himself, or to entities that he controls, for

nominal consideration and that these powers constitute property
of the Debtor's Bankruptcy Estate.

75. The Trustee says that the Debtor, by his actions, has
admitted that the Lupo Trust contain powers of appointment that
authorize him to transfer Trust assets to himself, or to
entities that he controls, for nominal consideration and that
these powers constitute property of the Debtor's Bankruptcy
Estate.

76. Alternatively, the Trustee says that upon the removal
of the Weston Real Estate and the Mashpee Real Estate Trust from
the Lupo Trusts, the vested beneficial interest that the Debtor
had in these assets was converted to a current equity interest
and that the Weston Real Estate and the Mashpee Real Estate
constitute property of his Bankruptcy Estate.

77. The Trustee seeks a Declaratory Judgment determining
whether, and to what extent, the Lupo Trusts, the assets of the
Lupo Trusts, the Weston Real Estate and the Mashpee Real Estate,
and the proceeds from the initial and mediate transfers of the
Weston Real Estate and the Mashpee Real Estate constitute
property of the Debtor's Bankruptcy Estate; and further,
determining whether the Deeds and Mortgage relating to the
Weston Real Estate and the Mashpee Real Estate are void.

## COUNT II - Post-Petition Transfer
### (Sections 549, 550 and 551)

78. The Trustee repeats and realleges the allegations made
in Paragraphs 1 through 77 with the same force and effect as if
fully detailed herein.

79.  The Trustee says that the Weston Real Estate and
Mashpee Real Estate constitute property of the Debtor's
Bankruptcy Estate pursuant to 11 U.S.C. § 541.

80.  After the commencement of the Debtor's Bankruptcy
case, the Debtor transferred the Weston Real Estate and the
Mashpee Real Estate to JKCB, LLC.

81.  After the commencement of the Debtor's Bankruptcy
Case, JKCB, LLC transferred a Mortgage on the Weston Real Estate
and the Mashpee Real Estate to Axiom Partners, LP.

81.  The Debtor's post-petition transfer of the Weston Real
Estate and Mashpee Real Estate to JKCB, LLC was not authorized
by the Bankruptcy Court or by the provisions of 11 U.S.C. § 101
et seq.

82.  JKCB, LLC's post-petition transfer of the Mortgage on
the Weston Real Estate and the Mashpee Real Estate was not
authorized by the Bankruptcy Court or by the provisions of 11
U.S.C. § 101 et seq.

83.  The Debtor's post-petition transfers of the Weston
Real Estate and Mashpee Real Estate are avoidable pursuant to 11
U.S.C. § 549, which provides that the Trustee may avoid
unauthorized, post-petition transfers of property.

84.  The avoided post-petition transfers may be preserved
for the benefit of the Bankruptcy Estate pursuant to 11 U.S.C. §
551.

85.   Alternatively, the Trustee may be awarded money
damages as against JKCB, LLC in the amount of $1,445,690.00, or
in any other amount that the Court determines to be the value of
the property transferred.

86.   Alternatively, the Trustee may be awarded money
damages as against Axiom Partners, LP in the amount of
$750,000.00, or in any other amount that the Court determines to
be the value of the transfer of the Mortgage.

WHEREFORE, the Trustee prays for the following relief:

1.   On Count I, Declaratory Judgment determining whether,
and to what extent, the Lupo Trusts, the assets of the Lupo
Trusts, the Weston Real Estate and the Mashpee Real Estate, and
the proceeds from the initial and mediate transfers of the
Weston Real Estate and the Mashpee Real Estate constitute
property of the Debtor's Bankruptcy Estate;

2.   On Count I, a Declaratory Judgment determining whether
the Deeds and Mortgage relating to the Weston Real Estate and
the Mashpee Real Estate is void;

3.   On Count II, an Order avoiding the transfer of the
Weston Real Estate and the Mashpee Real Estate to JKCB,LLC;

4.   On Count II, an Order avoiding the transfer of the
Mortgage on the Weston Real Estate and the Mashpee Real Estate
from JKCB, LLC to Axiom Partners, LP;

5.   On Count II, an Order preserving the avoided transfers
for the benefit of the Bankruptcy Estate;

6. Alternatively, on Court II, a money Judgment in favor
of the Trustee and as against JKCB, LLC in the amount of
$1,445,690.00, or such greater amount as may be determined by
the Court, plus interest, fees and costs;

7. Alternatively, on Count II, a money Judgment against
Axiom Partners, LP in the amount of $750,000.00, or any other
amount determined by the Court to be the value of the transfer
of the Mortgage, plus interest, fees and costs;

8. On Counts I and II, a preliminary and permanent
injunction barring the Debtor, Kenneth Lopez, the Mashpee Trust,
the N&A Trust, the M. Adeline Trust, and JKCB, LLC, together
with their officers, agents, servants, employees, and attorneys,
and all those in active concert or participation with the
foregoing parties from transferring, selling, encumbering, or
otherwise hypothecating the proceeds from the Mortgage without
written authorization from the Court;

9. On Counts I and II, a preliminary and permanent
injunction barring the Debtor, Kenneth Lopez, the Mashpee Trust,
the N&A Trust, the M. Adeline Trust, and JKCB, LLC, together
with their officers, agents, servants, employees, and attorneys,
and all those in active concert or participation with the
foregoing parties from transferring, selling, encumbering, or
otherwise hypothecating any of the assets of the Mashpee
Trustee, the N&A Trust, and the M. Adeline Trust ("Lupo Trusts")
without written authorization from the Court;; and

10. For such other and further relief as is just and
proper.

                                    JOSEPH B. COLLINS, TRUSTEE

Dated:   April 12, 2011

                            By: /s/ Joseph B. Collins
                                JOSEPH B. COLLINS, ESQ.
                                (BBO No. 092660)
                                For HENDEL & COLLINS, P.C.
                                101 State Street
                                Springfield, MA 01103
                                Tel. (413) 734-6411
                                jcollins@hendelcollins.com

                            VERIFICATION

    I, Joseph B. Collins, having been first duly sworn, do
hereby depose and say as follows:

    The statements set forth in this Complaint as facts are
true and accurate.  In each instance in which I believe, but
have not been able to confirm, that facts are accurate, I have
qualified the sentence by the use of the phrase "Upon
information and belief. . ."  In each statement that involves a
factual or legal conclusion, I have qualified the statement
through the use of the phrase "The Trustee says. . ."

    Signed under the pains and penalties of perjury, this 12th
day of April 2011.

                                _____
                                JOSPEH B. COLLINS

EXHIBIT

"A"

Bk: 1396 Pg: 107 Cert#: 246278
Doc: DEED   02/23/2011 09:33 AM

[2 pages]

Address of premises: 29 Myles Standish Road, Weston, Middlesex County, Massachusetts

## QUITCLAIM DEED

I, **ROBERT N. LUPO, TRUSTEE** of the **N & A LUPO REALTY TRUST**, under a Declaration of Trust dated July 8, 1988, filed with the Land Registration Office for the Middlesex South Registry District of the Land Court as Document No. 830618, and also recorded with the Middlesex South District Registry of Deeds in Book 20802, Page 368 (the "Grantor"), for consideration of less than One Hundred Dollars ($100.00) paid, hereby grant to **JKCB, LLC**, being a Massachusetts limited liability company with its principal office at 131 Linden Street, Waltham, Middlesex County, Massachusetts 02451 (the "Grantee"), with *QUITCLAIM COVENANTS.*

That certain parcel of land, together with the buildings and improvements thereon, situate in Weston, Middlesex County, Massachusetts, being bounded and described as follows:

| | |
|---|---|
| Northwesterly | by Myles Standish Road, being a curving line, three hundred fifty-seven and 51/100 (357.51) feet; |
| Northeasterly | by Lot 43 as shown on a plan hereinafter mentioned, two hundred forty-eight and 36/100 (248.36) feet; |
| Easterly | by Lot 44 as shown on said plan, one hundred and five (105) feet; and |
| Southeasterly | by Lot 41$^B$ as shown on said plan, two hundred ninety-four and 42/100 (294.42) feet. |

Said parcel is shown as **Lot 42** on said plan. *(Plan No. 3691 L)*

All of said boundaries are determined by the Court to be located as shown on a subdivision plan, as approved by the Court, filed in the Land Registration Office, a copy of which is filed in the Registry of Deeds for the South Registry District of Middlesex County in Registration Book 699, Page 141, with Certificate 113891.

*188826-1074-76*

The above described land is subject to, and has the benefit of, the Special Provisions more particularly set forth in Document No. 416237.

Meaning and intending, and hereby conveying, the same premises conveyed by deed dated September 28, 1990, recorded with the Middlesex South Registry District of the Land Court as Document No. 830617, on Certificate of Title Number 188826, filed with the Middlesex South District of the Land Court in Book 01074, Page 76.

There are no Massachusetts excise stamps affixed hereto as the consideration is less than $100.00.

Executed as a sealed instrument this 17th day of February, 2011.

N & A LUPO REALTY TRUST,

By
Robert N. Lupo, Trustee

### THE COMMONWEALTH OF MASSACHUSETTS
Middlesex, ss.

On this 17th day of February, 2011, before me, being the undersigned notary public, personally appeared the above named Robert N. Lupo, Trustee as aforesaid, proved to me through satisfactory evidence of identification, which was his Massachusetts driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he read and signed it voluntarily for its stated purpose individually, and in his capacity as the Trustee of the said N & A Lupo Realty Trust.

Notary Public:
My commission expires: 09/01/2017

[Seal]

E. PETER MULLANE
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Sept. 1, 2017

2

Doc#:1,161,191 03-01-2011  2:44
Ctf#:193718
BARNSTABLE LAND COURT REGISTRY

```
┌─────────────────────────┐
│        EXHIBIT          │
│  tabbies"               │
│           "B"           │
│           _____      │
└─────────────────────────┘
```

[2 pages]

<div style="float:left">Address of premises: 28 and 33 Nehoiden Road, Mashpee, Barnstable County, MA 02649</div>

## QUITCLAIM DEED

I, **ROBERT N. LUPO, TRUSTEE of the LUPO MASHPEE REALTY TRUST**, under a Declaration of Trust dated August 22, 2005, and filed with the Land Registration Office for the Barnstable Registry District of the Land Court as Document No. 1,014,970, of 719 Main Street, Waltham, Massachusetts 02451 (the "Grantor"), for consideration of less than One Hundred Dollars ($100.00) paid, hereby grant to **JKCB, LLC**, being a Massachusetts limited liability company with its principal office at 131 Linden Street, Waltham, Middlesex County, Massachusetts 02451 (the "Grantee"),
*WITH QUITCLAIM COVENANTS,*

That certain parcel of land, together with the buildings and improvements thereon, situate in Mashpee, Barnstable County, Massachusetts, and being more particularly bounded and described as follows:

SOUTHWESTERLY  by Nehoiden Road, one hundred ten (110) feet;

NORTHWESTERLY  by Lot 23 on plan hereinafter mentioned, one hundred Ten (110) feet;

NORTHEASTERLY  by Lot 38 on said plan, one hundred ten (110) feet; and

SOUTHEASTERLY  by Lot 25 on said plan, one hundred ten (110) feet.

Said land is shown as **LOT 24** on said plan.

NORTHEASTERLY  by Nehoiden Road, one hundred fifteen (115) feet;

SOUTHEASTERLY  by Lot 17 on said plan, one hundred ten (110) feet;

SOUTHWESTERLY  by a portion of Lots 13 and 12 on said plan, one hundred fifteen (115) feet; and

NORTHWESTERLY  by Lot 19 on said plan, one hundred ten (110) feet.

Said land is shown as **LOT 18** on said plan.

All of said boundaries are determined by the Court to be located as shown on subdivision plan 26502-C (Sheet 2), dated March 1968, drawn by Whitney & Bassett, Surveyors, as approved by the Court, and filed in the Land Registration Office at Boston, a copy of which is filed in Barnstable County Registry of Deeds in Land Registration Book 334, Page 120, with Certificate of Title No. 42270, and said land hereinabove described being shown thereon as **LOTS 24 and 18**.

Said lots are subject to the reservations and restrictions set forth in Document No. 130380 filed with Barnstable Registry District of the Land Court.

Said lots are subject to the terms of an easement in favor of the New England Telephone and Telegraph Company et al., dated September 10, 1969, and being Document No. 133166 filed with Barnstable Registry District of the Land Court.

Meaning and intending, and hereby conveying, the same premises conveyed by deed dated August 22, 2005, and recorded with the Barnstable Registry District of the Land Court as Document No. 1,014,971, noted on Certificate No. 178144.

There are no Massachusetts excise stamps affixed hereto as the consideration is less than $100.00.

EXECUTED as a sealed instrument this 17th day of February, 2011.

LUPO MASHPEE REALTY TRUST,

By: _____
Robert N. Lupo, Trustee

## THE COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

On this 17th day of February, 2011, before me, being the undersigned notary public, personally appeared the above named Robert N. Lupo, Trustee as aforesaid, proved to me through satisfactory evidence of identification, which was his Massachusetts driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he read and signed it voluntarily for its stated purpose individually, and in his capacity as the Trustee of the said Lupo Mashpee Realty Trust.

_____
Notary Public:
My commission expires: 09/01/2017

[Seal]

E. PETER MULLANE
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Sept. 1, 2017

2

2011  01561115
Bk: 1398 Pg: 107 Cert#: 248278
Doc: MTG    03/10/2011 05:46 PM

**AXIOM PARTNERS, LP**                    MORTGAGE, SECURITY AGREEMENT
                                                          AND ASSIGNMENT

THIS MORTGAGE, SECURITY AGREEMENT, AND ASSIGNMENT is granted as of this 2nd day of March, 2011 (this "Mortgage") to Axiom Partners, LP, a Delaware limited partnership (together with any successors, assigns, participants or any other subsequent holder or holders of the Note, the "Mortgagee"), having a principal place of business located at 21 Custom House Street, Suite 910, Boston, Massachusetts 02110, by JKCB, LLC, a Massachusetts limited liability company having a principal place of business located at 131 Linden Street, Waltham, Massachusetts 02452 (the "Mortgagor"). In consideration of the mutual covenants contained herein and benefits derived herefrom, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Mortgagor agrees to the following terms and conditions:

ARTICLE 1: GRANT OF MORTGAGE INTEREST

To secure the Mortgagor's prompt, punctual, and faithful payment and performance of all and each of the Mortgagor's present and future Liabilities (as that term is defined in Section 3-1 herein) to the Mortgagee, including, without limitation, those liabilities arising under a certain Commercial Real Estate Promissory Note of even date (as amended, restated, amended and restated or otherwise modified from time to time, the "Note") made by the Mortgagor payable to the order of the Mortgagee in the original principal amount of Seven Hundred Fifty Thousand and 00/100 Dollars ($750,000.00) (the "Loan"), and any extensions, renewals, substitutions, modifications, or replacements thereof, and any and all other liabilities of the Mortgagor to the

Return to:
Michael F. Dowley, Esquire
Seyfarth Shaw, LLP
Two Seaport Lane, Suite 300
Boston, MA 02210

13088632v.3

248278

**1561115**

Mortgagee hereunder, the Mortgagor hereby grants, mortgages, assigns, and transfers to the Mortgagee with MORTGAGE COVENANTS, the Collateral (as that term is defined in Section 3-3 herein). The Mortgagor intends to convey and hereby does convey to the Mortgagee with MORTGAGE COVENANTS (to be included within the Collateral), the premises conveyed to the Mortgagor by: (i) that certain quitclaim deed granted by the N&A Lupo Realty Trust and recorded immediately prior hereto; and (ii) that certain quitclaim deed granted by the Lupo Mashpee Realty Trust and recorded immediately prior hereto.

## ARTICLE 2- GRANT OF SECURITY INTEREST AND ASSIGNMENT

2-1.    Security Interest.    To secure the Mortgagor's prompt, punctual, and faithful payment and performance of all and each of the present and future Liabilities to the Mortgagee, including, without limitation, those arising under the Note (which shall include, without limitation, the Minimum Interest Recovery and the Exit Fee, as defined in the Note), the Mortgagor hereby grants to the Mortgagee a continuing security interest in and to, and assigns to the Mortgagee, the Collateral (as that term is defined in Section 3-3 herein).

2-2.    Financing Statement.    This Agreement is intended to take effect as a security agreement and is to be filed with the above described Registry of Deeds and/or Land Registration Office in lieu of a financing statement pursuant to Massachusetts General Laws Chapter 106 (the "UCC"), Section 9-502.

2-3.    Power of Attorney.    The Mortgagor hereby irrevocably constitutes and appoints the Mortgagee as the Mortgagor's true and lawful attorney for the purpose of signing and filing or recording on behalf of the Mortgagor any financing or other statement in order to establish, perfect or protect the Mortgagee's interest in the Collateral.

## ARTICLE 3- CERTAIN DEFINITIONS

As used herein, the following terms shall have the following meanings:

3-1.    Liabilities.    "Liabilities" includes, without limitation, the Loan and any and all other liabilities, debts, and obligations of the Mortgagor to the Mortgagee, now or hereafter arising, each of every kind, nature and description.    "Liabilities" also includes, without limitation, each obligation to repay the Note and all guarantees, loans, advances, indebtedness, notes, obligations, and amounts now or hereafter at any time owing by the Mortgagor to the Mortgagee, whether or not any of such are liquidated, unliquidated, secured, unsecured, direct, indirect, absolute, contingent, or of any other type, nature, or description, or by reason of any cause of action which the Mortgagee now or hereafter may hold against the Mortgagor. "Liabilities" also includes, without limitation, all notes and other obligations of the Mortgagor now or hereafter assigned to or held by the Mortgagee each of every kind, nature, and description.    "Liabilities" also includes, without limitation, all interest and other amounts which may be charged to the Mortgagor and/or which may be due from the Mortgagor to the Mortgagee from time to time and all costs and expenses now or hereafter incurred or paid by the Mortgagee in respect of this and any other agreement between the Mortgagor and the Mortgagee or

- 2 -

13088632v.5

1561115

instrument furnished by the Mortgagor to the Mortgagee (including, without limitation, Costs of Collection (as defined in Section 3-2 hereof), reasonable attorneys' fees and all court and litigation costs and expenses). "Liabilities" also includes, without limitation, any and all obligations of the Mortgagor to act or to refrain from acting in accordance with the terms, provisions, and covenants of the within Agreement and of any other agreement between the Mortgagor and the Mortgagee or instrument now or hereafter furnished by the Mortgagor to the Mortgagee. As used herein, the term "indirect" includes, without limitation, all obligations and liabilities which the Mortgagee may now or hereafter incur or become liable for on account of or as a result of any transactions between the Mortgagee and the Mortgagor including, without limitation, any which might arise out of any action brought or threatened against the Mortgagee, any guarantor or endorser of the Liabilities of the Mortgagor or any other person in connection with the Liabilities. The term "indirect" also refers to any direct or contingent liability of the Mortgagor to make payment towards any obligation now or hereafter held by the Mortgagee to the extent so held by the Mortgagee. Absent manifest error, the Mortgagee's books and records shall be prima facie evidence of the Mortgagor's indebtedness to the Mortgagee. As used herein, "Liability" shall mean "Liabilities".

    3-2.   Costs of Collection.   "Costs of Collection" includes, without limitation, all attorneys' fees, and all out-of-pocket expenses actually incurred by the Mortgagee's attorneys, and all costs actually incurred by the Mortgagee in the administration of the Liabilities, this Agreement, and all other documents, instruments, and agreements executed in connection with or relating to the Liabilities, including, without limitation, costs and expenses associated with travel on behalf of the Mortgagee. "Costs of Collection" also includes, without limitation, all attorneys' reasonable fees, out of pocket expenses actually incurred by the Mortgagee's attorneys, and all costs incurred by the Mortgagee, including, without limitation, costs and expenses associated with travel on behalf of the Mortgagee, which costs and expenses are directly or indirectly related to or in respect of the Mortgagee's efforts to collect or enforce any of the Liabilities and/or to exercise or enforce any of the Mortgagee's rights, remedies, or power against or in respect of the Mortgagor and/or any other guarantor or person liable in respect of the Liabilities (whether or not suit is instituted in connection with such efforts). The Costs of Collection shall be added to the Liabilities of the Mortgagor to the Mortgagee, as if such had been lent, advanced, and credited by the Mortgagee to, or for the benefit of, the Mortgagor, and shall accrue interest at the highest rate of interest charged relative to any of the Liabilities.

    3-3.   Collateral. "Collateral" shall include all and each of the following, whether singly or collectively, whether real property, personal property, or a combination thereof, whether now owned or now due or now existing, or in which the Mortgagor has an interest, or hereafter, at any time in the future, acquired, arising, or to become due, or in which the Mortgagor obtains an interest, and all proceeds, products, substitutions and accessions of or to any of the following:

        (a)   the land with buildings and improvements whether now existing or hereafter constructed or located thereon, situated at (i) 29 Myles Standish Road, Weston, Massachusetts; and (ii) 28-33 Nehoiden Road, Mashpee, Massachusetts, all as more particularly described on Exhibit A annexed hereto;

- 3 -

13088632v.3

**1561115**

(b)    all furnaces, ranges, heaters, plumbing goods, gas and electric fixtures, screens, screen doors, mantles, shades, storm doors and windows, awnings, oil burners and tanks or other equipment, gas or electric refrigerators and refrigerating systems, ventilating and air conditioning apparatus and equipment, door bell and alarm systems, sprinkler and fire extinguishing systems, portable or sectional buildings, and all other fixtures of whatever kind or nature owned by the Mortgagor, now or in the future contained in or on the Mortgaged Premises (as defined in Section 3-4 hereof), and any and all similar fixtures hereinafter installed in the Mortgaged Premises in any manner which renders such articles usable in connection therewith;

(c)    all easements, covenants, agreements and rights which are appurtenant to or benefit the Mortgaged Premises;

(d)    all machinery, equipment, furniture, inventory, building supplies, and appliances, owned by the Mortgagor, used or useful in the construction, operation, maintenance, or occupation of the Mortgaged Premises or any portion or unit thereof;

(e)    all leases, contracts or agreements entered into, for the lease, rental, hire or use by the Mortgagor of any property of the same nature as the foregoing Subparagraphs (b) and (d) in connection with the construction, operation, maintenance or occupation of the Mortgaged Premises;

(f)    all leases, tenancies, and occupancies, whether written or not, regarding all or any portion of the foregoing (a) through (e) (the "Leases"), all guarantees and security relating thereto, together with all income and profit arising therefrom or from any of the foregoing Subparagraphs (a) through (e), and all payments due or to become due thereunder (the "Rental Payments"), including, without limitation, all rent, additional rent, damages, insurance payments, taxes, insurance proceeds, condemnation awards, or any payments with respect to options contained therein (including any purchase option);

(g)    all contracts and agreements (together with the easements, covenants, agreements and rights referred to in Section 3-3(c), above, and the leases, contracts, and agreements referred to in Section 3-3(e), above, the "Contracts") licenses, permits and approvals (the "Licenses") and warranties and representations, relative to the use, operation, management, construction, repair or service of any of the foregoing Subparagraphs (a) through (c);

(h)    any other property of the Mortgagor in which the Mortgagee may in the future be granted an interest;

(i)    all funds, if any, held by the Mortgagee as tax or insurance escrow payments, the Debt Service Reserve Funds (as defined in the Note), and any other escrow or reserve funds, if any, held by the Mortgagee, and all accounts, including deposit accounts, in which such funds are deposited or held from time to time;

(j)    all proceeds received from the sale, exchange, collection or other disposition of any of the foregoing Subparagraphs (a) through (i), including, without limitation,

- 4 -

13088652v.3

1561115

equipment, inventory, goods, documents, securities, accounts, chattel paper, and general intangibles (as each of those terms is defined in the UCC; all insurance proceeds relating to all or any portion of the foregoing Subparagraphs (a) through (i); and all awards, damages, proceeds, or refunds from any state, local, federal or other takings of, and all municipal tax abatements relating to, all or any portion of the foregoing Subparagraphs (a) through (i); and

(k)    all rights, remedies, representations, warranties, and privileges pertaining to any of the foregoing Subparagraphs (a) through (j).

3-4.    Mortgaged Premises. "Mortgaged Premises" shall mean and refer to that portion of the Collateral described in Sections 3-3(a) and 3-3(c) herein.

3-5.    Personal Property. "Personal Property" shall mean and refer to all of the Collateral other than that portion of the Collateral which is included within the definition of Mortgaged Premises.

3-6.    Receivables Collateral. "Receivables Collateral" shall mean and refer to all Rental Payments and all rights to payment now held, or in which the Mortgagor has an interest or hereafter acquired by the Mortgagor, or in which the Mortgagor obtains an interest, arising out of, constituting a part of, or relating to all or a portion of the Collateral.

## ARTICLE 4- REPRESENTATIONS, WARRANTIES AND COVENANTS

4-1.    Organization: Authority. The Mortgagor is, and shall hereafter remain, in good standing as a limited liability company in The Commonwealth of Massachusetts, and is, and shall hereafter remain, duly qualified and in good standing in every other state in which such qualification may be necessary. The execution and delivery of this Agreement, and of any other instruments executed and delivered in connection herewith, constitutes representations by the Mortgagor and the individual signing this Agreement and said instruments that such execution and delivery has received all such authorization as may be necessary to permit such execution and delivery to, and that it does, bind the Mortgagor.

4-2.    Insurance. The Mortgagor hereby covenants and agrees to maintain public liability insurance, rent loss insurance, flood hazard insurance, all risk insurance, builder's risk insurance, and such other insurance against such casualties or contingencies as may be reasonably required by the Mortgagee in sums and in companies satisfactory to the Mortgagee in its sole discretion; provided, the property insurance on the Collateral shall be for no less than 100% of full replacement value thereof (meeting all co-insurance requirements and containing an "Agreed Amount Endorsement"). All policies shall contain a provision requiring at least thirty (30) days advance notice to the Mortgagee before any cancellation or modification. All insurance on the Collateral shall be for the benefit of and deposited with the Mortgagee, shall be first payable to the Mortgagee, and shall include such endorsement in favor of the Mortgagee as the Mortgagee may specify. The endorsement shall provide that the insurance, to the extent of the Mortgagee's interest therein, shall not be impaired or invalidated, in whole or in part, by reason of any act or neglect of the Mortgagor, or failure by the Mortgagor to comply with any

- 5 -

13083632v.3

1561115

warranty or condition of the policies. The Mortgagor shall advise the Mortgagee of each claim made by the Mortgagor under any policy of insurance which covers all or any portion of the Collateral and, at the Mortgagee's option in each instance, will permit the Mortgagee, to the exclusion of the Mortgagor, to conduct the adjustment of each such claim. The Mortgagor hereby appoints the Mortgagee as the Mortgagor's attorney in fact to obtain, adjust, settle, and cancel any insurance described in this section and to endorse in favor of the Mortgagee any and all drafts and other instruments with respect to such insurance. The within appointment, being coupled with an interest, is irrevocable until this Agreement is terminated by a written instrument executed by a duly authorized officer of the Mortgagee. The Mortgagee shall not be liable for any loss sustained on account of any exercise pursuant to said power unless such loss is caused by the willful misconduct and actual bad faith of the Mortgagee. The Mortgagee may, at its option, make any proceeds available to the Mortgagor to repair or reconstruct the Collateral (subject to such disbursement procedures as the Mortgagee may establish in its sole and absolute discretion) or apply any proceeds of such insurance against the Liabilities, whether or not such have matured, in accordance with Section 9-6 herein.

4-3.    Statutory Compliance. The Mortgagor shall comply with, shall not use any of the Collateral in violation of, and shall cause the Collateral to be in compliance with, each and every statute, regulation, ordinance, decision, directive, order, by-law, or rule of any federal, state, municipal, and other governmental authority which has or claims jurisdiction over the Mortgagor or any of the Collateral. The Mortgagor has obtained, and will maintain in full force and effect, all licenses, permits and approvals necessary for the use, maintenance, construction and operation of the Collateral, and at the option of the Mortgagee, will do all things and execute all such documents as the Mortgagee may reasonably request to assign the Mortgagor's rights therein to the Mortgagee.

4-4.    Title to Collateral. The Mortgagor is, and shall hereafter remain, the owner of the Collateral free and clear of all voluntary or involuntary liens, encumbrances, attachments, security interests, purchase money security interests, assignments, mortgages, charges or other liens or encumbrances of any nature whatsoever, with the exceptions of (a) the Mortgage and the security interest created herein, and (b) liens for real estate taxes not yet due and payable.

4-5.    Condition of Collateral. The Collateral is, and shall hereafter remain, in good repair, well maintained and in good working order. The Mortgagor shall make all necessary repairs, replacements, additions and improvements to maintain the Collateral in good order and condition. The Mortgagor shall not cause or permit to be suffered any waste, destruction or loss (whether or not such loss is insured against) to the Collateral or any part thereof, or use any of the Collateral in violation of any applicable statute, regulation, ordinance, decision, directive, order, by-law, or rule, or any policy of insurance thereon.

4-6.    Inspection of Collateral. From time to time as the Mortgagee and the Mortgagee's representatives may request, the Mortgagor shall accord the Mortgagee and such representatives access to the Collateral and all books and records relating to the use, operation, construction, or management thereof, and in connection with such access, will permit the Mortgagee and such representatives to inspect the Collateral, verify any information contained

- 6 -

13088632v.3

1561115

therein or relating thereto, and verify the Mortgagor's compliance with the provisions of this Agreement or of any other agreement between the Mortgagor and the Mortgagee and any instrument to be furnished by the Mortgagor to the Mortgagee.

4-7.    Taxes and Other Costs. To the extent payment is not provided for in Section 4-8 herein, the Mortgagor shall pay when due all real and personal property taxes, assessments, charges, franchises, income, unemployment, old age benefits, withholding, sales, and other taxes assessed against it, and all insurance premiums relative to the Collateral. The Mortgagor shall deliver to the Mortgagee, upon request of Mortgagee, evidence of the payment by the Mortgagor of all such items. The Mortgagor agrees that the Mortgagee may, at its option, and from time to time, pay any taxes or insurance premiums, the payment of which is then due, discharge any liens or encumbrances on any of the Collateral, or take any other action that the Mortgagee may deem proper to repair, insure, maintain, or preserve any of the Collateral or the Mortgagee's rights therein. The Mortgagor will pay to the Mortgagee on demand all amounts so reasonably paid or incurred by the Mortgagee. The obligation of the Mortgagor to pay such amounts shall be included in the Liabilities of the Mortgagor to the Mortgagee and shall accrue interest at the highest rate of interest charged relative to any of the Liabilities.

4-8.    Tax and Insurance Escrow. In addition to other payments herein required, the Mortgagor shall, at the Mortgagee's option, exercisable upon the occurrence of an Event of Default or upon the payoff and discharge of the Senior Mortgage, now or in the future, pay to the Mortgagee monthly on the first of each month, or such other day of the month as may be designated by the Mortgagee during the term hereof, and for so long as the Liabilities secured by this Agreement shall remain unpaid, an amount equal to one-twelfth (1/12th) of the municipal taxes and assessments which the Mortgagee estimates will become payable on account of the Mortgaged Premises for the year next succeeding any period for which such taxes and assessments have been paid or escrowed hereunder, and/or one twelfth (1/12th) of the insurance premiums which the Mortgagee estimates will become payable on account of the Collateral for the year next succeeding any period for which such premiums have been paid or escrowed hereunder, sufficient to enable Mortgagee to accumulate at least thirty (30) days prior to the dates upon which such municipal taxes and assessments or insurance premiums are payable the amounts then due and payable. Further, the Mortgagor shall pay to the Mortgagee on demand the amount of any deficiency of the funds so collected when the actual amount of such taxes and assessments or insurance premiums become known. The Mortgagee shall maintain such funds in a non-interest bearing account which may be commingled with other funds of the Mortgagee. The Mortgagee shall apply said funds to the payment of municipal taxes and assessments or insurance premiums, as applicable, to the extent such amounts are determined by the Mortgagee to be due and payable. In the event the Mortgagee collects such tax or insurance payments hereunder, the Mortgagor shall deliver to the Mortgagee the bills representing any such amounts within five (5) days of the receipt thereof by the Mortgagor. Notwithstanding the provisions of this Section 4-8, upon an occurrence of an event which is, or, solely with the passage of time, would be, an Event of Default hereunder, the Mortgagee shall not be required to apply such funds as provided above, and may set off such funds against the Liabilities and apply any such funds towards the Liabilities in accordance with Section 9-6 hereunder.

- 7 -

13088632v.3

1561115

4-9.   Litigation.  There is no suit, action, proceeding, or investigation presently pending or threatened against the Mortgagor, or any of the Collateral, which, if determined adversely, would have a material adverse effect upon the Mortgagor or the Collateral.

4-10.   Future Action.  The Mortgagor shall do all such things and execute all such documents from time to time hereafter as the Mortgagee may request in order to carry into effect the provisions and intent of this Agreement and to protect, perfect, and maintain the Mortgagee's interest in and to the Collateral.

4-11.   Additional Information.  The Mortgagor shall furnish the Mortgagee with such financial information or other information pertaining to the operation of the Mortgagor and the Collateral as the Mortgagee may from time to time request.  Without limiting the foregoing, annually, (i) within one hundred twenty (120) days of the end of each calendar year the Mortgagor shall furnish the Mortgagee with a complete original signed counterpart of (x) such Mortgagor's financial statement, which statement shall include a balance sheet, income/expense statement and rent roll with respect to the Mortgaged Premises; and (y) the business/personal (as applicable) financial statements of each guarantor, if any of the Liabilities; and (ii) within thirty (30) days of filing a complete signed copy of the Mortgagor's and each guarantor's, if any, of the Liabilities, federal and state tax returns together, in each case, with all schedules thereto as filed with the Internal Revenue Service or appropriate state agency, as the case may be, for the prior calendar year.  All financial information provided to the Mortgagee shall be in form and substance satisfactory to the Mortgagee.  Failure to submit any of the financial information required herein on a timely basis and thereafter within thirty (30) days after a request therefore by the Mortgagee shall constitute an Event of Default hereunder.

4-12.   Oil, Hazardous Material, and Toxic Substances.

(a)   The Mortgagor represents and warrants, with respect to the Mortgaged Premises that, except as expressly disclosed by the Mortgagor to the Mortgagee in writing prior to the date of this Mortgage, neither the Mortgagor nor any person (such representation and warranty shall be to the best of the Mortgagor's knowledge after due inquiry and investigation with respect to prior unaffiliated owners of the Mortgaged Premises), including, but not limited to, tenants or users of the Mortgaged Premises, ever:

(i)   owned, occupied, or operated a site or vessel on which any hazardous material or oil was or is stored (except if such storage was or is in compliance with all laws, ordinances, and regulations pertaining thereto), transported, or disposed of;

(ii)   directly or indirectly transported, stored, treated or disposed, or arranged for the transport, storage, treatment or disposal of any hazardous material or oil;

(iii)   caused or was legally responsible for any release, or threat of release, of any hazardous material or oil;

- 8 -

130R8632v.3

1581115

       (iv)    received notification from any federal, state, or other governmental authority of: (x) any potential, known, or threat of release of any hazardous material or oil on (whether from the Mortgaged Premises or from another property offsite of the Mortgaged Premises) or from the Mortgaged Premises, or any other site or vessel owned, occupied, or operated either by the Mortgagor or any person for whose conduct the Mortgagor is responsible or whose liability may result in a lien on the Mortgaged Premises; or (y) the incurrence of any expense or loss by such governmental authority, or by any other person, in connection with the assessment, containment, or removal of any release, or threat or release, of any hazardous material or oil from the Mortgaged Premises or any such site or vessel.

       (b)    The Mortgagor represents and warrants that no hazardous material or oil was ever, or is now, stored on (except for de minimis amounts stored in compliance with all laws, ordinances, and regulations pertaining thereto), transported, or disposed of on the Mortgaged Premises.

       (c)    The Mortgagor shall:

       (i)    not store or cause to be stored (except for de minimis amounts used in connection with the use and operation of the Mortgaged Premises in compliance with all laws, ordinances, and regulations pertaining thereto), or dispose of, or cause or permit to be disposed of, any hazardous material or oil in the Mortgaged Premises, or on any other site or vessel owned, occupied, or operated either by the Mortgagor, or by any person;

       (ii)    neither directly nor indirectly transport or arrange for the transport of any hazardous material or oil;

       (iii)    take all such action, including, without limitation, the conducting of engineering tests (at the sole expense of the Mortgagor) (x) to confirm that no hazardous material or oil is or ever was stored or released on the Mortgaged Premises; (y) to assess, contain, and remove any such hazardous material or oil on the Mortgaged Premises; and (z) to qualify for any insurance program or safe harbor which may be available under any federal, state or local law, including, without limitation, Massachusetts General Laws Chapter 21E, as amended;

       (iv)    provide the Mortgagee with immediate written notice upon: (x) the Mortgagor's obtaining knowledge of any potential or known release, or threat of release, of any hazardous material or oil on (whether from the Mortgaged Premises or from another property off site of the Mortgaged Premises) or from the Mortgaged Premises, or any other site or vessel owned, occupied, or operated by the Mortgagor or by any person for whose conduct the Mortgagor is responsible or whose liability may result in a lien on the Mortgaged Premises; (y) the Mortgagor's receipt of any notice to such effect from any federal, state, or other governmental authority; and (z) the Mortgagor's obtaining knowledge of any incurrence of any expense or loss by such governmental

- 9 -

13088632v.3

1561115

authority in connection with the assessment, containment, or removal of any hazardous material or oil for which expense or loss the Mortgagor may be liable or for which expense a lien may be imposed on the Mortgaged Premises; and

(v) comply with all laws, judgments, decrees, orders, rules, and regulations pertaining to environmental matters relating to the use, storage, containment, and removal of hazardous material or oil, including, without limitation, those arising under Massachusetts General Laws Chapter 21E, as amended, and any other federal, state or local statute, rule, regulation, ordinance, or decree.

(d) The Mortgagor shall indemnify, defend, and hold the Mortgagee harmless of and from any claim brought or threatened against the Mortgagee by the Mortgagor, any guarantor or endorser of the Liabilities, or any governmental agency or authority or any other person (as well as from attorneys' reasonable fees and expenses in connection therewith) on account of the presence of hazardous material or oil on the Mortgaged Premises, the release of hazardous material or oil on or from the Mortgaged Premises, or the failure by the Mortgagor to comply with the terms and provisions hereof (each of which may be defended, compromised, settled, or pursued by the Mortgagee with counsel of the Mortgagee's selection, but at the expense of the Mortgagor). This indemnification includes any costs and expenses that the Mortgagee may incur (i) in defending or protecting its security interest or the priority thereof, or (ii) for assessment, containment and/or removal of any hazardous material or oil from all or any portion of the Mortgaged Premises or any surrounding areas. The within indemnification shall survive payment of the Liabilities and/or any termination, release, or discharge executed by the Mortgagee in favor of the Mortgagor.

(e) All terms used in this Section are being used with the meanings given those terms in Massachusetts General Laws, Chapter 21E, as amended.

4-13. Mortgage Conditions. This Mortgage, Security Agreement and Assignment is given upon the STATUTORY CONDITION, upon breach of which, the Mortgagee shall have the STATUTORY POWER OF SALE.

4-14. Compliance with Leases and Contracts. The Mortgagor is not in default under any terms and conditions of any Lease or Contract and shall, during the term of this Agreement, perform all of the obligations of the Mortgagor under any such Lease or Contract within the period that such performance is required. The Mortgagor has entered into, and will maintain in full force and effect, all Contracts necessary for the use, maintenance, construction and operation of the Collateral, and at the option of the Mortgagee, will do all things and execute all such documents as the Mortgagee may request to assign the Mortgagor's rights therein to the Mortgagee.

4-15. Collection of Rents. The Mortgagor agrees not to collect or accept the payment of any Rental Payments, or other income or profit from, or on account of, any Lease or the use or occupation of the Collateral, in advance of the time when such payment becomes due unless such

- 10 -

{3088632v.3}

1561115

amount is delivered to the Mortgagee to be applied toward the Liabilities in accordance with Section 9-6 hereof.

4-16.  Modification of Lease and Contract.  Without the prior written consent of the Mortgagee, the Mortgagor will not modify or consent to the modification of any material provision of, or cancel, terminate or accept the early cancellation or termination, of any Lease or Contract.

4-17.  Leases.  The Mortgagor shall not enter into any Lease after the date of this Mortgage without the prior written consent of the Mortgagee.  The Mortgagor shall not permit the assignment of any interest in any Lease, without the prior written consent of the Mortgagee.  The Mortgagor shall furnish the Mortgagee, upon the request of the Mortgagee, with copies of each and every Lease and any other information relative to each such Lease and the tenant thereunder.  Each such Lease shall be in form and substance satisfactory to the Mortgagee and, without limiting the generality of the foregoing, shall include a provision confirming that the Lease is subordinate to the lien of this Agreement and consenting to the assignment provided for herein of the Lease to the Mortgagee.  The Mortgagor will take all action as may be requested by the Mortgagee in furtherance of the rights of the Mortgagee hereunder, including, without limitation, obtaining estoppel certificates and agreements (in form satisfactory to the Mortgagee) from each tenant subordinating the Lease to the lien of this Agreement, and consenting to the assignment of the Lease provided for herein, and taking all appropriate action to lease any portions of the Mortgaged Premises not occupied by the Mortgagor.

4-18.  Eminent Domain.  The Mortgagor shall immediately notify the Mortgagee in writing of any proposed or actual taking by any state, federal or local authority of all or a portion of the Collateral.  The Mortgagor shall cooperate with the Mortgagee in connection with the negotiation of any such taking and any awards or damages payable to any Mortgagor in connection therewith and shall take any action relating thereto requested by the Mortgagee.  The Mortgagor will permit the Mortgagee, at the Mortgagee's option in each instance, to the exclusion of the Mortgagor, to conduct the adjustment of each such damage or award claim.  The Mortgagor hereby appoints the Mortgagee as the Mortgagor's attorney in fact to obtain, adjust and settle each such damage or award claim and to endorse in favor of the Mortgagee any and all drafts and other instruments with respect thereto.  The within appointment, being coupled with an interest, is irrevocable until this Agreement is terminated by a written instrument executed by a duly authorized officer of the Mortgagee.  The Mortgagee shall not be liable for any loss sustained on account of any exercise pursuant to said power unless such loss is caused by the willful misconduct and actual bad faith of the Mortgagee.  The Mortgagee may apply any proceeds of such taking against the Liabilities, whether or not such have matured, in accordance with Section 9-6 herein.

4-19.  Abatement.  The Mortgagor will promptly notify the Mortgagee in writing of any action which the Mortgagor intends to take with respect to the abatement of any municipal taxes or assessments and shall initiate any such abatement action at the request of the Mortgagee.  The Mortgagor will advise the Mortgagee as to the status of any such action and will not compromise or settle any such action without the prior written consent of the Mortgagee.  The Mortgagor

- 11 -

13088632v_3

1561115

hereby appoints the Mortgagee as the Mortgagor's attorney in fact, effective after the occurrence of any event which is, or solely with the passage of time would be, an Event of Default hereunder, to initiate, prosecute, obtain, adjust, and settle, any such abatement action and to endorse in favor of the Mortgagee any and all drafts and other instruments with respect thereto. The within appointment, being coupled with an interest, is irrevocable until this Agreement is terminated by a written instrument executed by a duly authorized officer of the Mortgagee. The Mortgagee shall not be liable for any loss sustained on account of any exercise pursuant to said power unless such loss is caused by the willful misconduct and actual bad faith of the Mortgagee. After the occurrence of any event which is, or solely with the passage of time would be, an Event of Default hereunder, the Mortgagee may apply any proceeds of such abatement against the Liabilities, whether or not such have matured, in accordance with Section 9-6 herein.

4-20. <u>Material Adverse Occurrence</u>. The Mortgagor shall promptly notify the Mortgagee of the occurrence of any event which may have a material adverse effect on the Collateral or the Mortgagor.

4-21. <u>Appraisals</u>. The Mortgagor shall, at the Mortgagee's option, assist the Mortgagee in obtaining a current appraisal (the "<u>Appraisal</u>") of the Mortgaged Premises by an appraiser satisfactory to the Mortgagee. The Appraisal shall be in form and substance satisfactory to the Mortgagee and the costs of the Appraisal shall be borne by the Mortgagor, provided, however, that unless an Event of Default exists, the Mortgagor shall only be required to pay the costs of such Appraisal two (2) times during any consecutive twelve (12) month period.

4-22. <u>Compliance with Covenants</u>. The Mortgagor shall not indirectly do or cause to be done, any act which, if done directly by the Mortgagor, would breach any covenant contained herein, or in any other agreement between the Mortgagor and the Mortgagee.

4-23. <u>Other Representations</u>. The representations, covenants, and warranties herein are in addition to any others, previously, presently or hereafter made by either or both of the Mortgagor to or with the Mortgagee in any other instrument.

4-24. <u>Transfers; Ownership Interests and Management</u>. The Mortgagor shall not make or consent to a change, transfer, sale, encumbrance or assignment of the shareholder, membership or other beneficial interests of the Mortgagor, the directors and officers of the Mortgagor, or in the manner in which the business of the Mortgagor is conducted, except to the extent required under this Mortgage, the Note or the other Loan documents.

4-25. <u>Single Purpose Entity</u>. Mortgagor at all times shall remain a Single Purpose Entity until after the Liabilities have been repaid in full. For the purposes of this Agreement, a "<u>Single Purpose Entity</u>" shall mean an entity which (i) exists solely for the purpose of owning and operating the Mortgaged Premises, (ii) conducts business only in its own name, (iii) does not engage in any business other than the ownership, management and operation of the Mortgaged Premises, (iv) does not hold, directly or indirectly, any ownership interest (legal or equitable) in any entity or any real or personal property other than the interest which it owns in the Mortgaged Premises, (v) does not have any assets other than those related to its interest in the Mortgaged

- 12 -

13088652v.3

1561115

Premises and does not have any debt other than as permitted by this Agreement and does not guarantee or otherwise obligate itself with respect to the debts of any other person or entity, (vi) has its own separate books, records, accounts, financial statements and tax returns (with no commingling of funds or assets), (vii) holds itself out as being a company separate and apart from any other entity, and (viii) observes organizational formalities independent of any other entity.

4-26. Use of Proceeds. The Mortgagor shall use the proceeds of the Loan to (i) repay and refinance existing indebtedness owed by the Mortgagor, (ii) pay for the closing costs and expenses associated with and/or relating to the establishment of the Loan, (iii) make deposits into the Debt Service Reserve Funds on the date hereof in the amounts provided herein, and (iv) distribute the balance, if any, to the Mortgagor to be used by the Mortgagor to discharge all preexisting liens encumbering the Mortgaged Premises and for the acquisition of additional real estate of which the Mortgagee has granted its prior approval.

4-27. Limitation on Indebtedness. The Mortgagor shall not create or incur any indebtedness for borrowed money, become liable, either actually or contingently, in respect of letters of credit or banker's acceptances or issue or sell any of its obligations, excluding, however, from the operation of this covenant any and all indebtedness in favor of the Mortgagee as set forth in this Agreement.

4-28. Compliance with Anti-Terrorism Orders. The Mortgagor shall not permit any change, transfer, sale, encumbrance or assignment of any interest in the Mortgagor, any affiliate of the Mortgagor or the Mortgaged Premises to any person or entity (or any beneficial owner of such person or entity) who is listed on the specially Designated Nationals and Blocked Persons List maintained by the Office of Foreign Asset Control, Department of the Treasury pursuant to Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) and/or any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of the Office of Foreign Asset Control, Department of the Treasury or pursuant to any other applicable Executive Orders (such lists are collectively referred to as the "OFAC Lists"). The Mortgagor shall not enter into a Lease with any party who is listed on the OFAC Lists. The Mortgagor shall immediately notify the Mortgagee if the Mortgagor has knowledge that any Guarantor (as hereinafter defined) or any member or beneficial owner of the Mortgagor, any affiliate of the Mortgagor or Guarantor is listed on the OFAC Lists or (A) is indicted on or (B) arraigned and held over on charges involving money laundering or predicate crimes to money laundering. The Mortgagor shall immediately notify the Mortgagee if the Mortgagor knows that any tenant under a Lease is listed on the OFAC Lists or (A) is convicted on, (B) pleads nolo contendere to, (C) is indicted on or (D) is arraigned and held over on charges involving money laundering or predicate crimes to money laundering.

ARTICLE 5- MORTGAGOR'S USE OF COLLATERAL

Unless and until the occurrence of any event which is, or solely with the passage of time would be, an Event of Default hereunder, the Mortgagor shall be authorized to occupy, operate, manage, hold, or otherwise use the Collateral in the ordinary and reasonable course of the

- 13 -

13088632v.3

1563115

Mortgagor's business and collect, when due, the Receivables Collateral, subject, however, to the terms and provisions hereof.

## ARTICLE 6- EVENTS OF DEFAULT

Upon the occurrence of any one or more of the following (each an "Event of Default"), any and all Liabilities of the Mortgagor to the Mortgagee shall become immediately due and payable, without notice or demand, at the option of the Mortgagee, provided that upon any Event of Default under 6-7 below, any and all Liabilities of the Mortgagor shall become immediately and automatically due and payable, without notice or demand; the Mortgagor hereby expressly waives any such notice or demand, anything contained herein or in any other Loan document to the contrary notwithstanding. The occurrence of any such Event of Default shall also constitute, without notice or demand, a default under all other agreements between the Mortgagee and the Mortgagor, whether now existing or hereafter arising.

6-1. The failure to pay any portion of the Loan within ten (10) days following the date the same is due, or if the entire Loan is not paid on or before the Maturity Date (as defined in the Note), or any earlier date on which the indebtedness may become due, by acceleration or otherwise.

6-2. The failure by the Mortgagor to pay when due (or upon demand, if payable on demand), any other amount then owing by the Mortgagor to the Mortgagee.

6-3. The failure by the Mortgagor to promptly, punctually, and faithfully perform, discharge, or comply with any of the Liabilities.

6-4. The determination by the Mortgagee that any financial information, representation, or warranty now or hereafter provided or made by the Mortgagor to the Mortgagee, whether herein, or in any other document, instrument, agreement, or paper, was not materially true or accurate when given.

6-5. The occurrence of any default or event of default under any other loan or financing made by any lender other than Mortgagee to the Mortgagor, or any other event such that any indebtedness of the Mortgagor for borrowed money from any lender other than the Mortgagee could be accelerated, notwithstanding that such acceleration has not taken place.

6-6. The occurrence of any event of default under any agreement between the Mortgagee and the Mortgagor, or under any instrument or paper given to the Mortgagee by the Mortgagor, whether such agreement, instrument, or paper now exists or hereafter arises (notwithstanding that the Mortgagee may not have exercised its rights upon default under any such other agreement, instrument or paper).

6-7. Any act by, against, or relating to the Mortgagor or Guarantor (if any), or its or their property or assets, which act constitutes the application for, consent to, or sufferance of the appointment of a receiver, trustee, or other person (pursuant to court action or otherwise) over

- 14 -

13088632v 3

1561115

all, or any part of, the Mortgagor's and/or Guarantor's property; the granting of any trust mortgage or execution of an assignment for the benefit of the creditors of the Mortgagor and/or Guarantor, or the occurrence of any other voluntary or involuntary liquidation or extension of debt agreement for the Mortgagor and/or Guarantor; the admission by the Mortgagor and/or Guarantor of its inability to pay its debts as they mature; adjudication of insolvency relative to the Mortgagor and/or Guarantor; the entry of an order for relief or similar order with respect to the Mortgagor and/or Guarantor in any proceeding pursuant to Title 11 United States Code or any other federal statute dealing with bankruptcy (generally the "Bankruptcy Code"); the filing of any complaint, application, or petition by or against the Mortgagor and/or Guarantor initiating any matter in which the Mortgagor and/or Guarantor is or may be granted any relief from its debts pursuant to the Bankruptcy Code or pursuant to any other insolvency statute or procedure, in each case, which remains undischarged 60 days after filing; the calling or sufferance of a meeting of creditors of the Mortgagor and/or Guarantor; the meeting by the Mortgagor and/or Guarantor with a formal or informal creditors' committee; the offering by or entering into by the Mortgagor and/or Guarantor of any composition, extension or other arrangement seeking relief or extension of its debts; or the initiation of any other judicial or non-judicial proceeding or agreement by, against, or including the Mortgagor and/or Guarantor which seeks or intends to accomplish a reorganization or arrangement with creditors.

6-8.    The entry of any judgment against the Mortgagor, which judgment is not satisfied or appealed from (with execution or similar process stayed) within fifteen (15) days of its entry, or adequately covered by insurance in the sole discretion of the Mortgagee.

6-9.    The service of any process upon the Mortgagee seeking to attach by mesne or trustee process any funds of the Mortgagor on deposit with the Mortgagee.

6-10.    The death, legal incapacity, termination of existence, dissolution, winding up, or liquidation of the Mortgagor or Guarantor.

6-11.    The sale, transfer, assignment, encumbrance or any other disposition of any of the capital stock or any partnership or beneficial interest or other ownership interests of or in the Mortgagor (including the issuance of new shares, partnership or membership interests or splitting of shares), or the sale, transfer, assignment, pledge, mortgage or other disposition or grant of any interest in all or any portion of the Collateral (excepting only those encumbrances required by and in favor of Mortgagee in connection with the Loan).

6-12.    The occurrence of any of the events described in this Article with respect to any partner or beneficiary or member or shareholder of the Mortgagor or any guarantor, endorser, or surety to the Mortgagee of the Liabilities as if such person were the "Mortgagor" described therein.

6-13.    The breach of the Statutory Condition contained herein, upon which breach, the Mortgagee shall have the Statutory Power of Sale.

- 15 -

13088632v.3

**1561115**

6-14.   If one or both of the Proposed Loans (as defined below) fails to close within forty-five (45) days following the date of this Mortgage, as a result of (i) the Mortgagor's bad faith actions in connection with the Proposed Loans, or (ii) the Mortgagor's failure to comply, in a timely manner, with any and all of the terms and conditions contained in the term sheets evidencing the Proposed Loans. For purposes of this Agreement, "Proposed Loans" shall mean (i) that certain proposed loan in the original principal amount of $350,000.00 as described in that certain Term Sheet dated February 14, 2011 by and between Axiom Partners, LP, N&A Lupo Realty Trust, and Mr. Robert Lupo, individually and secured by the property located in Newton, Massachusetts; and (ii) that certain proposed loan in the original principal amount of $1,300,00.00 as described in that certain Term Sheet dated February 14, 2011 by and between Axiom Partners, LP, N&A Lupo Realty Trust, and Mr. Robert Lupo, individually and secured by the properties located in Waltham, Massachusetts.

6-15.   The breach of any of the covenants contained in Sections 4-24, 4-25, 4-26, or 4-27.

As used herein, "Guarantor" shall mean any person(s) or entity(ies) that guarantees all or a portion of the Liabilities.

## ARTICLE 7- RIGHTS AND REMEDIES UPON DEFAULT

7-1.   Rights and Remedies Upon Default.   Upon the occurrence of any Event of Default, or at any time thereafter, the Mortgagee shall have all the rights of a mortgagee and a secured party under the Massachusetts General Laws, in addition to which the Mortgagee shall have all of the following rights and remedies:

(a)   with or without taking possession, to collect the Receivables Collateral;

(b)   to take possession of all or a portion of the Collateral;

(c)   with or without taking possession of the Collateral, to sell, lease, or otherwise dispose of any or all of the Collateral in its then condition or following such preparation or processing as the Mortgagee deems advisable;

(d)   with or without taking possession of the Collateral, and without assuming the obligations of the Mortgagor thereunder, to exercise the rights of the Mortgagor under, to use, or to benefit from any of the Contracts, Leases, and Licenses;

(e)   with or without taking possession of the Collateral and with or without bringing any action or proceeding, either directly, by agent, or by the appointment of a receiver, manage, lease, sublease, or operate the Collateral on such terms as the Mortgagee, in its sole discretion, deems proper or appropriate;

(f)   to apply all or any portion of the Collateral, or the proceeds thereof, towards (but not necessarily in complete satisfaction of) the Liabilities;

- 16 -

13088632v 3

**1561115**

(g)    to exercise the Statutory Power of Sale;

(h)    to foreclose any and all rights of the Mortgagor in and to the Collateral, whether by sale, entry, or in any other manner provided for hereunder or under Massachusetts General Laws;

(i)    to elect, upon the discretion of the Mortgagee, to treat any or all of the Leases, as superior to the lien of this Agreement; and

(j)    any other right or remedy under this Agreement, the Note, the Assignment of Leases and Rents executed and delivered in connection with the Loan, or any other Loan document or agreement.

7-2.    Sale or Other Disposition of Collateral.    Any sale or other disposition of the Collateral may be at public or private sale, to the extent such private sale is authorized under the Massachusetts General Laws, upon such terms and in such manner as the Mortgagee deems advisable. The Mortgagee may conduct any such sale or other disposition of the Collateral upon the Mortgaged Premises, in which event the Mortgagee shall not be liable for any rent or charge for such use of the Mortgaged Premises. The Mortgagee may purchase the Collateral, or any portion of it, at any sale held under this Article. With respect to any Collateral to be sold pursuant to the UCC, the Mortgagee shall give the Mortgagor at least ten (10) days written notice of the date, time, and place of any proposed public sale, or such additional notice as may be required under Massachusetts General Laws, and of the date after which any private sale or other disposition may be made. The Mortgagee may sell any of the Personal Property as part of the Mortgaged Premises, or any portion or unit thereof, at the foreclosure sale or sales conducted pursuant hereto. The Mortgagor waives any right to require the marshalling of any of its assets in connection with any disposition conducted pursuant hereto. In the event all or part of the Collateral is included at any foreclosure sale conducted pursuant hereto, a single total price for the Collateral, or such part thereof as is sold, may be accepted by the Mortgagee with no obligation to distinguish between the application of such proceeds amongst the property comprising the Collateral. If all or any portion of the Collateral is sold by the Mortgagee, the Mortgagor shall pay to the Mortgagee on demand an amount equal to one percent (1.0%) of the purchase price thereof in addition to the Liabilities and all Costs of Collection provided for herein. The obligation of the Mortgagor to pay such amounts shall be included in the Liabilities of the Mortgagor to the Mortgagee and shall accrue interest at the highest rate of interest charged relative to any of the Liabilities.

7-3.    Collection of Receivables Collateral.    In connection with the exercise by the Mortgagee of the rights and remedies provided herein:

(a)    The Mortgagee may notify any of the Mortgagor's debtors relating to the Receivables Collateral, either in the name of the Mortgagee or the Mortgagor, to make payment directly to the Mortgagee or such other address as may be specified by the Mortgagee, may advise any person of the Mortgagee's interest in and to the Receivables Collateral, and may

- 17 -

13088632v.3

1563115

collect directly from the obligors thereon all amounts due on account of the Receivables Collateral;

(b)     At the Mortgagee's request, the Mortgagor will provide written notification to any or all of said debtors concerning the Mortgagee's interest in the Receivables Collateral and will request that such debtors forward payment thereof directly to the Mortgagee;

(c)     The Mortgagor shall hold any proceeds and collections of any of the Receivables Collateral in trust for Mortgagee and shall not commingle such proceeds or collections with any other funds of the Mortgagor; and

(d)     The Mortgagor shall deliver all such proceeds to the Mortgagee immediately upon the receipt thereof by the Mortgagor in the identical form received, but duly endorsed or assigned on behalf of the Mortgagor to the Mortgagee.

7-4.   Use and Occupation of Mortgaged Premises.  In connection with the Mortgagee's exercise of the Mortgagee's rights under this Article, the Mortgagee may enter upon, occupy, and use all or any part of the Collateral and may exclude the Mortgagor from the Mortgaged Premises or portion thereof as may have been so entered upon, occupied, or used.  The Mortgagee shall not be required to remove any of the Collateral from the Mortgaged Premises upon the Mortgagee's taking possession thereof, and may render any Collateral unusable to the Mortgagor.  In the event the Mortgagee manages the Mortgaged Premises in accordance with Section 7-1(e) herein, the Mortgagee may make such alterations, renovations, repairs, and replacements to the Collateral, as the Mortgagee, in its sole discretion, deems proper or appropriate.  The obligation of the Mortgagor to pay such amounts and all expenses incurred by the Mortgagee in the exercise of its rights hereunder shall be included in the Liabilities of the Mortgagor to the Mortgagee and shall accrue interest at the highest rate of interest charged relative to any of the Liabilities.

7-5.   Partial Sales.  The Mortgagor agrees that, in case the Mortgagee in the exercise of the Power of Sale contained herein or in the exercise of any other rights hereunder given, elects to sell in parcels, said sales may be held from time to time and that the power shall not be exhausted until all of the Collateral not previously released shall have been sold, notwithstanding that the proceeds of such sales exceed, or may exceed, the Liabilities then secured thereby.

7-6.   Assembly of Collateral.   Upon the occurrence of any Event of Default, the Mortgagee may require the Mortgagor to assemble the Personal Property and make it available to the Mortgagee, at the Mortgagor's sole risk and expense, at a place or places which are reasonably convenient to both the Mortgagee and the Mortgagor.

7-7.   Power of Attorney.   The Mortgagor hereby irrevocably constitutes and appoints the Mortgagee as the Mortgagor's true and lawful attorney to take any action with respect to the Collateral to preserve, protect, or realize upon the Mortgagee's interest therein, each at the sole risk, cost and expense of the Mortgagor, but for the sole benefit of the Mortgagee.  The rights and powers granted the Mortgagee by the within appointment include, but are not limited to, the

- 18 -

13081632v.3

**1561115**

right and power to: (i) prosecute, defend, compromise, settle, or release any action relating to the Collateral; (ii) endorse the name of the Mortgagor in favor of the Mortgagee upon any and all checks or other items constituting remittances or proceeds of Receivables Collateral; (iii) sign and endorse the name of the Mortgagor on, and to receive as secured party, any of the Collateral; (iv) sign and file or record on behalf of the Mortgagor any financing or other statement in order to perfect or protect the Mortgagee's security interest; (v) enter into leases or subleases relative to all or a portion of the Mortgaged Premises; (vi) exercise the rights of the Mortgagor under any Contract, Lease, or License; or (vii) manage, operate, maintain or repair the Mortgaged Premises. The Mortgagee shall not be obligated to perform any of such acts or to exercise any of such powers, but if the Mortgagee elects so to perform or exercise, the Mortgagee shall not be accountable for more than it actually receives as a result of such exercise of power, and shall not be responsible to Mortgagor except for the Mortgagee's willful misconduct and actual bad faith. All powers conferred upon the Mortgagee by this Agreement, being coupled with an interest, shall be irrevocable until terminated by a written instrument executed by a duly authorized officer of the Mortgagee.

7-8.    Rights and Remedies.    The rights, remedies, powers, privileges, and discretions of the Mortgagee hereunder (the "Mortgagee's Rights and Remedies"), shall be cumulative and not exclusive of any rights or remedies which it would otherwise have. No delays or omissions by the Mortgagee in exercising or enforcing any of the Mortgagee's Rights and Remedies shall operate as or constitute a waiver thereof. No waiver by the Mortgagee of any default hereunder or under any other agreement shall operate as a waiver of any other default hereunder or under any other agreement. No single or partial exercise of the Mortgagee's Rights and Remedies, and no other agreement or transaction, of whatever nature entered into between the Mortgagee and the Mortgagor at any time, whether before, during, or after the date hereof, preclude any other or further exercise of the Mortgagee's Rights and Remedies. No waiver or modification on the Mortgagee's part on any one occasion shall be deemed a waiver on any subsequent occasion, nor shall it be deemed a continuing waiver. All of the Mortgagee's Rights and Remedies under this Agreement or any other agreement or transaction shall be cumulative, and not alternative or exclusive, and may be exercised by the Mortgagee at such time or times and in such order of preference as the Mortgagee in its sole discretion may determine.

## ARTICLE 8- NOTICE

All notices, demands and other communications made in respect to this Agreement shall be made to the following addresses (each of which may be changed upon seven (7) days written notice to all others) given by hand, by telegram, or by certified or registered mail, return receipt requested, as follows:.

If to the Mortgagee:        Axiom Partners, LP
                           21 Custom House St., Suite 910
                           Boston, Massachusetts 02110
                           Attention: Mr. Zack Farahmand

- 19 -

13088632v.3

1561115

| With a copy to: | Seyfarth Shaw LLP |
| --- | --- |
| | World Trade Center East |
| | Two Seaport Lane, Suite 300 |
| | Boston, Massachusetts 02210 |
| | Attention: Mr. Louis J. DiFronzo, Jr., Esquire |

If to the Mortgagor:        JKCB, LLC
131 Linden Street
Waltham, Massachusetts 02452
Attn: Mr. Kenneth V. Lopez

With a copy to:             Robert N. Lupo
721 Main Street
Waltham, Massachusetts 02451

Any such notice shall be deemed received the earlier of (i) two (2) days after the mailing of such notice in accordance with the terms and conditions and to the addresses provided above, or (ii) the date of which the notice is delivered by hand or by telegram to the address and to the individual provided above.

## ARTICLE 9- MISCELLANEOUS

9-1.    Mortgagor.  In the event that the Mortgagor is more than one person or entity, all representations, covenants, warranties, defaults, rights, remedies, powers, privileges, and discretions shall be applicable to the Mortgagor individually, jointly, and severally, with the exception of those which are made by their terms applicable to a specific Mortgagor.

9-2.    Exhibits.  Any and all Exhibits referred to herein shall be deemed annexed hereto prior to the execution hereof and specifically incorporated by reference herein.

9-3.    Headings.  All section headings included within this Agreement shall be for reference only, and shall not limit or restrict, in any manner whatsoever, the breadth or nature of the provisions included within each subject section.

9-4.    Successors and Assigns.  In the event the ownership of the Collateral, or any part thereof, becomes vested in a person other than the Mortgagor, the Mortgagee may, without notice to the Mortgagor, deal with such successor or successors in interest with reference to this Agreement and the Liabilities in the same manner as with the Mortgagor, without in any way waiving the default occasioned by such transfer of ownership or in any way vitiating or discharging the Mortgagor's liability hereunder or upon the Liabilities, and no compromise, settlement, release or sale of the Collateral, no forbearance on the part of the Mortgagee, and no alteration, amendment, cancellation, waiver or modification of any term or condition or extension of the time for payment of the Liabilities given by the Mortgagee shall operate to release, discharge, modify, change or affect the original liability of the Mortgagor herein, either in whole or in part, notice of any action being waived.

- 20 -

13088632v.3

1561115

9-5.    Set Off.    Except for tax and insurance escrow funds which are provided for in Section 4-8 herein, all deposits or other sums at any time credited by or due from the Mortgagee to the Mortgagor, and all cash, securities, instruments, or other property of the Mortgagor in the possession of the Mortgagee (whether for safekeeping, or otherwise) shall at all times constitute security for the Liabilities, and may be applied or set off by the Mortgagee against the Liabilities at any time after the occurrence of an Event of Default, whether or not the Liabilities are then due or other collateral is then available to the Mortgagee.

9-6.    Application of Proceeds.    The proceeds of any collection, sale, or disposition of the Collateral, or of any other payments received hereunder, shall be applied toward the Liabilities in such order and manner as the Mortgagee determines in its sole discretion, including if Mortgagee so chooses to the inverse order of maturity, any statute, custom, or usage to the contrary notwithstanding.    The Mortgagor shall remain liable to the Mortgagee for any deficiency remaining following such application.

9-7.    Waiver.    (a)    The Mortgagor WAIVES notice of non-payment, demand, presentment, protest and all forms of demand and notice, both with respect to the Liabilities and the Collateral.

(b)    The Mortgagor, if entitled to it, WAIVES the right to notice and/or hearing prior to the exercise of any of the Mortgagee's rights and remedies.

9-8.    Responsibility of Mortgagee.    The Mortgagee shall not be liable for any loss sustained by the Mortgagor resulting from any action, omission, or failure to act by the Mortgagee with respect to the exercise or enforcement of its rights under this Agreement or its relationship with the Mortgagor unless such loss is caused by the willful misconduct and actual bad faith of the Mortgagee.    This Agreement and the Mortgagee's exercise of its rights hereunder shall not operate to place any responsibility upon the Mortgagee for the control, care, management, or repair of the Collateral, nor shall it operate to place any responsibility upon the Mortgagee to perform the obligations of the Mortgagor under any Lease, License, or Contract, or to make the Mortgagee responsible or liable for any waste committed on the Mortgaged Premises, any damages or defective condition of the Mortgaged Premises, or any negligence in the management, upkeep, repair, or control of the Mortgaged Premises.

9-9.    Indemnification.    The Mortgagor shall jointly and severally indemnify, defend, and hold the Mortgagee harmless of and from any claim brought or threatened against the Mortgagee by the Mortgagor, any guarantor or endorser of the Liabilities, or any other person (as well as from attorneys' reasonable fees and expenses in connection therewith) on account of the Collateral, or on account of the Mortgagee's relationship with the Mortgagor or any other guarantor or endorser of the Liabilities (each of which may be defended, compromised, settled, or pursued by the Mortgagee with counsel of the Mortgagee's selection, but at the expense of the Mortgagor).    The within indemnification shall survive payment of the Liabilities and/or any termination, release, or discharge executed by the Mortgagee in favor of the Mortgagor.

- 21 -

13088632v.3

1561115

9-10. <u>Binding on Successors</u>. This Agreement shall be binding upon the Mortgagor and the Mortgagor's respective heirs, executors, administrators, representatives, successors, and assigns and shall inure to the benefit of the Mortgagee and the Mortgagee's successors and assigns. This Mortgage, or any part hereof or interest herein, may, from time to time, and without notice to or consent of the Mortgagor, be sold, transferred, pledged, assigned or conveyed by the Mortgagee.

9-11. <u>Severability</u>. Any determination that any provision of this Agreement or any application thereof is invalid, illegal, or unenforceable in any respect in any instance shall not affect the validity, legality, and enforceability of such provision in any other instance, nor the validity, legality, or enforceability of any other provision of this Agreement.

9-12. <u>Modification</u>. (a) This Agreement and all other instruments executed in connection herewith incorporate all discussions and negotiations between the Mortgagor and the Mortgagee concerning the matters included herein and in such other instruments. No such discussions or negotiations shall limit, modify, or otherwise affect the provisions hereof. No modifications, amendment, or waiver of any provision of this Agreement, or of any provisions of any other agreement between the Mortgagor and the Mortgagee, shall be effective unless executed in writing by the party to be charged with such modification, amendment, or waiver, and if such party be the Mortgagee, then by a duly authorized officer thereof.

(b) The Mortgagor may take any action herein prohibited, or omit to perform any act required to be performed by it, if the Mortgagor shall obtain the prior written consent by a duly authorized officer of the Mortgagee for each such action, or omission to action.

9-13. <u>Payment of Costs</u>. The Mortgagor shall jointly and severally pay on demand all Costs of Collection and all expenses of the Mortgagee in connection with the preparation, execution, and delivery of this Agreement and of any other documents and agreements between the Mortgagor and the Mortgagee, including, without limitation, attorneys' reasonable fees and disbursements, and all expenses which the Mortgagee may hereafter incur in connection with the collection of the Liabilities or the protection or enforcement of any of the Mortgagee's rights against the Mortgagor, any Collateral, and any guarantor or endorser of the Liabilities. The Mortgagor authorizes the Mortgagee to pay all such expenses and to charge the same to any account of the Mortgagor with the Mortgagee.

9-14. <u>Additional Advances</u>. All amounts which the Mortgagee may advance under any Sections of this Agreement: (a) shall be repayable to the Mortgagee, on demand, with interest at the Default Rate (as defined in the Note) from (and including) that date such funds are advanced to (but excluding) the date of repayment, (b) shall be a Liability secured by this Agreement, and (c) may be charged by the Mortgagee to any deposit account which the Mortgagee maintains in connection with this Agreement. In the event any advance is made by Mortgagee that results in the outstanding principal amount of the Loan exceeding the original principal amount of the Loan, the Mortgagee shall have the right to obtain, at Mortgagor's sole cost and expense, a down-date endorsement to the lender's title insurance policy issued to the Mortgagee in connection with the closing of the Loan.

- 22 -

13088632v.5

1581115

9-15. <u>Governing Law</u>. This Agreement and all rights and obligations hereunder, including matters of construction, validity and performance, shall be governed by the laws of The Commonwealth of Massachusetts. The Mortgagor submits itself to the jurisdiction of the courts of said Commonwealth for all purposes with respect to this Agreement and the Mortgagor's relationship with the Mortgagee.

9-16. <u>Termination</u>. This Agreement shall remain in full force and effect until specifically terminated in writing by a duly authorized officer of the Mortgagee. Such termination by the Mortgagee may be conditioned upon such further indemnifications provided to the Mortgagee by or on behalf of the Mortgagor as the Mortgagee may request. No termination pursuant to this Section shall affect the indemnification provided for in this Article.

9-17. <u>Specific Performance</u>. The failure by the Mortgagor to perform all and singular the Mortgagor's obligations hereunder will result in irreparable harm to the Mortgagee for which the Mortgagee shall have no adequate remedy at law. Consequently, the Mortgagor agrees that such obligations are and shall be specifically enforceable by the Mortgagee.

9-18. <u>Waiver of Jury Trial</u>. The Mortgagor (as well as all partners and beneficiaries and shareholders of the Mortgagor, and all guarantors, endorsers and sureties to the Mortgagee of the Liabilities) hereby makes the following waiver, knowingly, voluntarily, and intentionally, and understands that the Mortgagee, in entering into any loan arrangements or make any financial accommodations to the Mortgagor, whether now or in the future, is relying on such waiver. THE MORTGAGOR (AS WELL AS ALL PARTNERS AND BENEFICIARIES AND SHAREHOLDERS OF THE MORTGAGOR, AND ALL GUARANTORS, ENDORSERS AND SURETIES TO THE MORTGAGEE OF THE LIABILITIES) HEREBY IRREVOCABLY <u>WAIVES</u> ANY PRESENT OR FUTURE RIGHT OF THE MORTGAGOR (OR OF SUCH PARTNERS, BENEFICIARIES, SHAREHOLDERS, GUARANTORS, ENDORSERS AND SURETIES, AS THE CASE MAY BE) TO A JURY IN ANY TRIAL OF ANY CASE OR CONTROVERSY IN WHICH THE MORTGAGEE IS OR BECOMES A PARTY (WHETHER SUCH CASE OR CONTROVERSY IS INITIATED BY OR AGAINST THE MORTGAGEE OR IN WHICH THE MORTGAGEE IS JOINED AS A PARTY LITIGANT), WHICH CASE OR CONTROVERSY ARISES OUT OF OR IS IN RESPECT OF, ANY RELATIONSHIP BETWEEN THE MORTGAGOR OR ANY OTHER PERSON AND THE MORTGAGEE.

9-19. <u>Intent</u>. It is intended that:

    (a)   this Agreement take effect as a sealed instrument;

    (b)   with the exception of the Mortgagee's internal costs and expenses, all costs and expenses incurred by the Mortgagee in connection with the Mortgagee's relationship(s) with the Mortgagor shall be borne jointly and severally by the Mortgagor; and

    (c)   the interests created by this Agreement secure all of the Liabilities of the Mortgagor to the Mortgagee, whether now existing or hereafter arising.

- 23 -

13088632v.3

1561115

9-20.  Receipt of Copy.  The Mortgagor acknowledges having received a copy of this Agreement.

9-21.  Integration.  This Agreement incorporates all discussions and negotiations between the Mortgagee and the Mortgagor, either express or implied, concerning the matters included herein, any custom, usage, or course of dealing to the contrary notwithstanding. No such discussions, negotiations, custom, usage, or course of dealing shall limit, modify or otherwise affect the provisions hereof. No modifications, amendment or waiver of any provision of this Agreement is effective unless executed in writing by the party to be charged with such modification, amendment or waiver, and if such party be the Mortgagee, then by a duly authorized officer thereof.

9-22.  Reference.  This instrument may be referred to herein as the or this "Mortgage," "Mortgage, Security Agreement, and Assignment," or "Agreement," but no such reference shall limit the effectiveness of this instrument for any Mortgagee hereunder.

9-23.  Commercial Transaction.  The Mortgagor (1) acknowledges that the transaction of which this Mortgage is a part is a commercial transaction and the proceeds of the Loan are not being used for personal, family or household purposes, and (2) to the extent permitted by any state or federal law, waives any right he and/or she may have to prior notice of and a hearing on the right of Mortgagee or its successors and/or assigns to any remedy or combination of remedies that enables Mortgagee or its successors and/or assigns, by way of attachment, foreign attachment, garnishment or replevin, to deprive the Mortgagor of any of its property, at any time prior to final judgment in any litigation instituted in connection with this Mortgage.

<The remainder of this page is left intentionally blank.>

13018632v.3

- 24 -

1561115

IN WITNESS WHEREOF, the Mortgagor has executed this Agreement as a sealed instrument on the date first above written.

MORTGAGOR:

**JKCB, LLC**
a Massachusetts limited liability company

By: _____
Name:  Kenneth V. Lopez
Its:     Manager

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

On this 2nd day of February, 2011 before me, the undersigned notary public, personally appeared Kenneth V. Lopez, proved to me through satisfactory evidence of identification, which was his Massachusetts driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose, as Manager of JKCB, LLC.



Notary Public: E. Peter Mullane
(official signature and seal of notary)
My Commission expires:  09/01/2017

E. PETER MULLANE
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Sept. 1, 2017

- 25 -

13088632v.3

1561115

crit

By: _____
Robert N. Lupo

## COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

On this 2nd day of March, 2011, before me, the undersigned notary public, personally appeared the above-named Robert N. Lupo, who proved to me through satisfactory evidence of identification which was his Massachusetts driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose, individually and on behalf of JKCB, LLC.



Notary Public: E. Peter Mullane
(official signature and seal of notary)
My commission expires:  09/01/2017

E. PETER MULLANE
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Sept. 1, 2017

- 26 -

13088632v.3

1561115

## EXHIBIT A

### Legal Description - 29 Myles Standish Road, Weston, Massachusetts

That certain parcel of land situate in Weston in the County of Middlesex and said Commonwealth, bounded and described as follows:

Northwesterly      by Myles Standish Road, being a curving line, three hundred fifty-seven and 51/100 (357.51) feet:

Northeasterly      by Lot 43 as shown on plan hereinafter mentioned, two hundred forty-eight and 36/100 (248.36) feet;

Easterly           by Lot 44 on said plan, one hundred and five (105) feet; and

Southeasterly      by Lot 41 on said plan, two hundred ninety-four and 42/100 (294.42) feet.

Said parcel is shown as Lot 42 on said plan.

All of said boundaries are determined by the Court to be located as shown on a subdivision plan, as approved by the Court, filed in the Land Registration Office, a copy of which is filed in the Registry of Deeds for the South Registry District of Middlesex County in Registration Book 699, Page 141, with Certificate 113891.

The above described land is subject to and has the benefit of the Special Provisions more particularly set forth in Document 416237.

### Legal Description - 28-33 Nehoiden Road, Mashpee, Massachusetts

That certain parcel of land situate in Mashpee, County of Barnstable, Commonwealth of Massachusetts, bounded and described as follows:

Southwesterly      by Nehoiden Road, one hundred ten (110) feet;

Northwesterly      by Lot 23, one hundred ten (110) feet;

Northeasterly      by Lot 38, one hundred ten (110) feet;

Southeasterly      by Lot 25, one hundred ten (110) feet;

Said land is shown as LOT 24 on plan hereinafter mentioned.

Northeasterly      by Nehoidan Road, one hundred fifteen (115) feet;

Southeasterly      by Lot 17, one hundred ten (110) feet;

- 27 -

13088632v.3

**1561115**

| Southwesterly | by a portion of Lots 13 and 12, one hundred fifteen (115) feet; and |
| Northwesterly | by Lot 19 one hundred ten (110) feet. |

Said land is shown as LOT 18 on said plan.

All of said boundaries are determined by the Court to be located as shown on subdivision plan 26502-C (Sheet 2) dated March 1968 drawn by Whitney & Bassett, Surveyors, and filed in the Land Registration Office at Boston, a copy of which is filed in Barnstable County Registry of Deeds in Land Registration Book 334, Page 120 with Certificate of Title No. 42270 and said land is shown thereon as LOTS 24 and 18.

13088632v.3



EXHIBIT

"D"



2011 00034409
Bk: 56477 Pg: 449   Doc: ACC
Page: 1 of 1   02/18/2011 11:24 AM

## N & A LUPO REALTY TRUST

### TRUSTEE CERTIFICATE AND ACCEPTANCE

I, ROBERT N. LUPO, of Weston, Massachusetts, do hereby accept my appointment as the TRUSTEE of the N & A LUPO REALTY TRUST, under a Declaration of Trust dated July 8, 1988, as may be amended, being recorded with the Middlesex South Registry of Deeds in Book 20802, Page 368, and also being filed as Document No. 830618 with the Middlesex South Registry District of the Land Court, in accordance with and pursuant to the provisions of the Section TWELFTH thereof, to serve in the place of M. Adeline Lupo and Nicholas A. Lupo, being the former Trustees, both of whom are now deceased.

IN WITNESS WHEREOF, Robert N. Lupo has hereunto set his hand and seal this _14th_ day of February, 2011.

_____
Robert N. Lupo

### COMMONWEALTH OF MASSACHUSETTS

County of Middlesex

On this _14_ day of February, 2011, before me, the undersigned notary public, personally appeared Robert N. Lupo, who is personally known to me or who has produced his current Massachusetts driver's license as satisfactory identification that he is the person whose name is signed on the preceding or attached document, and acknowledged to me that he read and signed such document voluntarily for its stated purpose.

_____
Notary Public
My commission expires: _April 19 2013_

[Seal]

STEPHANIE A. CASEY
Notary Public
Commonwealth of Massachusetts
My Commission Expires Apr 19, 2013

Robert Lupo Esq
719 Main St
Waltham MA 02451          Dup 4 Ld Ct

EXHIBIT

"E"

[2 pages]

## LUPO MASHPEE REALTY TRUST
### TRUSTEE'S CERTIFICATE

The undersigned, being the sole incumbent Trustee of the **LUPO MASHPEE REALTY TRUST** under a Declaration of Trust dated August 22, 2005, and filed with the Land Registration Office for the Barnstable Registry District of the Land Court as Document No. 1,014,970, hereby certifies as follows:

1.   That the undersigned is the sole incumbent Trustee of the Trust;

2.   That the Trust is in full force and effect and has not been revoked or terminated, and that all amendments thereto, if any, have been duly filed with the said Barnstable Registry District of the Land Court;

3.   That no beneficiary of the Trust is a minor or an incompetent person;

4.   That, pursuant to the Trust, when specifically authorized and directed by the beneficiaries of the Trust, the Trustee has full right, power and authority to deal with any property owned or held by the Trust with the same force and effect as though such property was individually owned; and

5.   That the Trustee, by an instrument in writing signed by all (100%) of the holders of beneficial interests under the Trust, has been duly authorized and directed to convey to JKCB, LLC, a Massachusetts limited liability company, for consideration of less than $100.00, all of the Trust's right, title and interest in and to the real property (residential real estate) situate at what is now numbered and generally known as 28 and 33 Nehoiden Road, Mashpee, Barnstable County, MA 02649.

WITNESS my hand and seal this 17th day of February, 2011.

Robert N. Lupo, Trustee

## THE COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

On this 17th day of February, 2011, before me, being the undersigned notary public, personally appeared Robert N. Lupo, Trustee as aforesaid, proved to me through satisfactory evidence of identification, which was his Mass. driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he read and signed it voluntarily for its stated purpose individually, and in his capacity as Trustee of the said Lupo Mashpee Realty Trust.

Notary Public:
My commission expires:  09/01/2017

[SEAL]



E. PETER MULLANE
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Sept. 1, 2017

BARNSTABLE REGISTRY OF DEEDS

2

B 2 0 3 0 2   P 3 6 8                           ◌



N&A LUPO REALTY TRUST

W I T N E S S E T H

THIS DECLARATION OF TRUST, made by NICHOLAS A. LUPO, of Weston, Commonwealth of Massachusetts, who together with M. ADELINE LUPO, of said Weston, (who is hereby appointed Co-Trustee) and with all successors in trust, is called the "Trustee". The Trustee, even when comprised of more than one member, will be referred to in the singular number and neuter gender when referred to as such.

FIRST: This trust shall be designated as N&A LUPO REALTY TRUST, which name and the words "this trust", wherever used in this instrument, shall, but not personally, refer to the Trustee and shall not refer to the beneficiaries of this trust. The undersigned original Trustee hereunder, hereby declares that it is holding the sum of Ten Dollars ($10) and other good and valuable consideration and further declares that it will hold and administer the property which is now or hereafter transferred to it, in trust for the purposes hereafter set forth. The Trustee may accept any other property, real or personal, conveyed, assigned, transferred or set over to it by any person to constitute a part of the trust hereby created and to be held, invested, managed and disbursed by the Trustee, in accordance with the provisions hereof.

SECOND: This trust may be amended from time to time, by an instrument in writing, signed by a majority of those then serving as Trustee hereunder and acknowledged by such Trustee, but any such amendment shall only be effective in the case of those dealing with the Trust when a copy thereof, signed and acknowledged by the Trustee hereunder, is recorded with the appropriate Registry of Deeds.

B 2 0 8 9 2   P 3 6 9

THIRD:  The powers, obligations, terms and conditions of this Agreement shall be as follows:

A:  The Trustee shall have the full power and discretion, as if absolute owner to acquire, purchase, hold, manage, improve, rent or lease real estate, including the erections of new buildings; to invest and re-invest the trust property (including any surplus and also income) in personal property, including stocks, bonds and notes of obligations secured upon real estate; and to employ the funds of this trust in such other incidental business or enterprise, as in the judgment of the Trustee, may be beneficial to the beneficiaries.

B:  The Trustee shall have the power to repair or rebuild any building destroyed or damaged by fire or otherwise; to let, to lease for improvement or otherwise for a term beyond the possible termination of this Agreement or for any less term; to dedicate and convey land for public purposes; to make such contracts regarding the trust property as to it may appear advisable or necessary, and to compromise and settle claims of every name and nature.  The Trustee may make such arrangements as it deems advisable with adjoining owners, respecting boundary lines, easememnts and party walls, and for these purposes, may acquire adjoining land or sell portions of the trust property.

C:  The Trustee may borrow money for such time and upon such terms as it may see fit, execute notes and mortgages of any real estate held by it hereunder, either with or without power of sale, and any other form of security agreement.

D:  The Trustee shall also have the power to borrow for temporary purposes for such time and in such sum it deems best and give promissory notes therefor, binding the property of the trust, but not the Trustee nor beneficiaries personally; to pledge, as collateral security for such loan, any personal property belonging to the trust, and to enter into any obligations, jointly and/or severally, with any person or corporations.

E:  The Trustee shall have the power to sell at public auction or private sale, and to assign, transfer, pledge, barter or exchange for real

-2-

B 2 0 3 0 2   P 3 7 0

or personal property, all or any part of the real or personal property,
including mortgages now or hereafter held under the trust, at such time and
prices and upon such terms and conditions as it may deem proper.

F: The Trustee shall at all times keep the premises properly
insured against fire and it shall have full power and authority to pay all
taxes or assessments, mortgages, or other liens, now or hereafter resting upon
said property, and all sums of money for the payments of which it, by reason
of being Trustee hereunder, may be held liable, by way of damages, penalty of
fine or otherwise, to pay all expenses of the trust, which in its judgment may
be proper or necessary, all expenses incurred in making sales (including
commissions to brokers), surveying, examining titles, and in keeping the
premises insured against fire; to employ such officers, brokers, architects,
engineers, building agents, attorneys, or other persons as it thinks best and
to fix their compensation and define their duties. Checks on the trust
account shall be executed by the Trustee. The Trustee shall have the power to
designate the person or persons who, in addition to the said Trustee, shall
have the right to execute checks drawn on the funds of the trust.

G: The Trustee shall have the power to represent the
beneficiaries in all suits or legal proceedings, relating to the trust in any
court, at law or equity, or before any bodies or tribunals; to employ counsel
and to commence suits or proceedings or to compromise, or to submit to
arbitrations, all matters of dispute to which the trust or Trustee may be a
party, when in its judgment necessary or proper.

H: The Trustee shall also have full power to execute and
deliver all written instruments which it deems necessary and proper in the
exercise of its powers, and without limiting the generality of the foregoing,
it shall have full power to execute, acknowledge and deliver all deeds,
mortgages, assignments, discharges, extensions and partial releases of
mortgages.

I: The Trustee shall have the full power to guarantee the debts
or other obligations of any other person or entity on such terms and
conditions as it deems advisable and shall have the full power to pledge or

-3-

B 2 0 8 0 2    P 3 7 1

mortgage the property of this trust as security for such guarantee.  No
purchaser, lender, corporation, association or officer or transfer agent
dealing with the Trustee, shall be bound to make any inquiry concerning the
validity of any sale, pledge, mortgage, loan or purchase, purporting to be
made by the Trustee, or be liable for the application of money paid or loaned.

　　　　J:  In general, the Trustee shall have power to deal with the
trust property as though beneficial owner thereof; intending by this clause to
give the Trustee all powers concerning the trust property, not expressly or by
clear implication denied it.


　　　　FOURTH:  Notwithstanding anything herein contained to the contrary,
unless sooner terminated under other provisions hereof, the trust created
under this instrument shall terminate twenty (20) years after the death of the
last survivor of the original Trustee and any other persons mentioned by name
in this instrument who were living at the date of the execution of this
instrument, and upon such termination the Trustee shall pay over, transfer and
convey the trust property (including any accumulated, undistributed and
accrued income and additions from any source) in accordance with the other
provisions of this trust dealing with termination.


　　　　FIFTH:  The original beneficiaries of this trust are listed as
beneficiaries in the SCHEDULE OF BENEFICIARIES this day executed by the
Trustee and filed with the Trustee, and their interests are as therein
stated.  Such Schedule need not be recorded with this trust.  The interest of
the beneficiaries under this trust shall be inalienable, shall not be subject
to anticipation, shall be free from interference or control of creditors and
shall not pass by virtue of any assignment for the benefit of creditors or be
liable to attachment, execution or other process of law.  A beneficiary may
assign his interest hereunder only with the unanimous consent of all the
beneficiaries and Trustees then existing, which consent need not be recorded
in any registry office.

-4-

B 2 0 9 0 2    P 3 7 2

SIXTH:  The term "BENEFICIARIES," shall, wherever used herein, mean
the beneficiary or beneficiaries listed in the said Schedule or in the revised
Schedule, if any, from time to time executed and filed with the Trustee.  Any
Trustee may, without impropriety, become a beneficiary hereunder and exercise
all rights of a beneficiary with the same effect as though he were not a
Trustee.

SEVENTH:  No Trustee hereunder shall be liable for any error of
judgment nor for any loss arising out of any act or omission in good faith,
but shall be responsible only for its own willful breach of trust.  No license
of court shall be requisite to the validity of any transaction entered into by
the Trustee.  No purchaser, transferee, pledgee, mortgagee or other lender
shall be under any liability to see to the application of the purchase money
or of any money or property loaned or delivered to any Trustee or to see that
the terms and conditions of this trust have been complied with.  Every
agreement, lease, deed, mortgage or other instrument or document executed or
action taken by the person appearing of record to be the Trustee hereunder
shall be conclusive evidence in favor of every person relying thereon or
claiming thereunder that at the time of delivery thereof or of the taking of
such action, this trust was in full force and effect, that the Trustee's
execution and delivery thereof or taking of such action was duly authorized
and is valid, binding, effective and legally enforceable.

EIGHTH:  Notwithstanding any other provisions of this instrument, all
actions of the Trustee shall be exercised by the Trustee only in conformity
with the unanimous wishes of all the beneficiaries of this trust.  This trust
is (and the Trustee shall act only as) an agent of the beneficiaries, but no
person need make any inquiry concerning the propriety of any of the Trustee's
actions, and all such actions shall conclusively be presumed to be proper.
Any person dealing with the trust or the Trustee may always rely, without
further inquiry, on a certificate signed by any person appearing from the
records of any Registry of Deeds to be a Trustee, hereunder, as to who is the

-5-

B 2 0 3 0 2 P 3 7 3

Trustee or, who are the beneficiaries, hereunder, or as to the authority of the Trustee to act, or as to the existence, or non-existence of any fact or facts which constitute conditions precedent to acts by the Trustee or which are in any other manner germane to the affairs of the trust. No person shall have any duty to investigate the records of any Registry of Deeds other than that of the county (or district thereof) in which the locus of affected realty exists.

NINTH: The Trustee may pay any net income of this trust to the beneficiaries in proportion to their respective interests hereunder, annually. The Trustee may open, maintain, and, at will, close out any checking and savings accounts and safe deposit boxes in any bank, trust companies, Federal savings and loan associations, and other banking, lending or other financial institutions; and the Trustee may deposit funds and other assets of the trust in such institutions and such safe deposit boxes, and also may disburse such funds on checks signed by the Trustee or by any person or persons authorized in writing by the Trustee so to do, and may withdraw such funds and other assets on instruments of withdrawal signed by the Trustee or by any person or persons authorized by the Trustee so to sign, and permit such person or persons to have access to such safe deposit boxes; and such institutions may rely fully on the Trustee's signed authorization so to do, so filed by the Trustee with said institution.

TENTH: This trust may be terminated at any time by any Beneficiary by notice in writing to the Trustee, but such termination shall only be effective in the case of those dealing with the Trust when a certificate thereof, signed and acknowledged by the Trustee hereunder, shall be recorded with the appropriate Registry of Deeds. In case of any termination, the Trustee shall record such a certificate and shall transfer and convey the specific assets constituting the trust property, subject to any leases, mortgages, contracts or other encumbrances or the trust property, to the beneficiaries in proportion to their respective interests hereunder, except

-6-

that if the beneficiaries comprise a partnership or joint venture, the
conveyance shall run to such partnership or joint venture.

ELEVENTH:  Neither the Trustee nor the beneficiaries shall be
personally liable for any money borrowed, or obligation of any kind incurred
in connection with this trust business.  All persons or corporations extending
credit and contracting with or having any claim against the Trustee shall look
only to the funds and property of the trust for payment under such contract or
claim, or for payment of any debt, damage, judgment, or decree, or of any
money that may otherwise become due or payable to them from the Trustee so
that neither the Trustee nor the beneficiaries, present or future, shall be
personally liable therefor.  This Article shall not apply to the extent the
party sought to be charged has specifically signed in a personal capacity.

TWELFTH:  Any Trustee hereunder may resign by written instrument,
signed and acknowledged by such Trustee, and delivered to the other members of
the Trustee, if any, and to the Beneficiaries.  In such event or in the event
of any other cessation of any of the members of the Trustee, from time to
time, to serve, such person as may be selected in a written instrument by a
majority of the remaining members of the Trustee shall immediately become
Trustee.  In the event there is no other member of the Trustee serving, the
outgoing Trustee may appoint a successor by a written instrument, provided
however, that if no such appointment is made, ROBERT N. LUPO, of Weston, if
able and willing, otherwise the STATE STREET BANK AND TRUST COMPANY, shall
immediately succeed as Trustee and any certification by such successor that it
is properly serving shall be conclusive on all persons.  If such successor is
not able and willing to serve, a majority of the Beneficiaries, as shown on
any SCHEDULE OF BENEFICIARIES signed by any person who ever was a Trustee
hereunder, shall appoint a successor, provided such Schedule is recorded with
such appointment.

THIRTEENTH:  At any time by the written consent of a majority of all
the members serving as Trustee for the time being, one or more additional

-7-

B 2 0 8 0 2   P 3 7 5

members may be added to the Trustee, and the number serving as such may
similarly be reduced.  The acceptance in writing by any Trustee appointed
shall be recorded with each appropriate Registry of Deeds, although the
failure to do so shall not invalidate the appointment.  Upon the appointment
of any succeeding Trustee, the title to the trust estate shall thereupon and
without the necessity of any conveyance, be vested in said succeeding
Trustee.  Each succeeding Trustee shall have all rights, powers, authority and
privileges as if named as the original Trustee hereunder.  No Trustee shall be
required to furnish bond.


FOURTEENTH:  This trust shall be interpreted in accordance with the
laws of the Commonwealth of Massachusetts, and its validity and administration
shall be governed by said laws, except with respect to such assets as are
required by law, to be governed by the laws of some other jurisdiction.


IN WITNESS WHEREOF, the said NICHOLAS A. LUPO, as Trustee, hereunto
sets his hand and seal on this _8th_ day of _July_, 1988.

_____          _____ (L.S.)
                                 NICHOLAS A. LUPO


I hereby accept the office of Co-Trustee.

                                 _____ (L.S.)
                                 M. ADELINE LUPO

                    COMMONWEALTH OF MASSACHUSETTS
County of _Middlesex_, ss:


Then personally appeared the above named NICHOLAS A. LUPO and
acknowledged the foregoing instrument to be his free act and deed, before me.



Date _July 8_, 1988.              _____
                                 NOTARY PUBLIC
                                 My Commission Expires:


-8-

Doc:1,014,970  10-04-2005   1:10
BARNSTABLE LAND COURT REGISTRY

## LUPO MASHPEE REALTY TRUST

### DECLARATION OF TRUST

We, Robert N. Lupo and M. Adeline Lupo, both of Weston, Massachusetts, hereby declare

that we and our successors in trust will hold the real property situated at 28 and 33 Nehoiden Road

(also referred to as Lots 18 and 24), Mashpee, Massachusetts (the "Premises"), to be conveyed to us

by deed of even date and to be filed herewith with the Registry District of Barnstable County ("said

Registry"), and any and all other property that may be transferred to the Trustees hereunder for the

sole benefit of the beneficiaries hereunder upon the terms herein set forth.

FIRST. Name and Purpose: This Trust shall be known as the "Lupo Mashpee Realty Trust",

and the terms "Trustee" and "Trustees" and all pronouns referring to the Trustee or Trustees

wherever used herein shall refer to the person or persons acting as Trustee or Trustees from time to

time hereunder, whether or not there shall be more than one Trustee named herein initially. This

Trust is intended to qualify as a nominee trust, so-called, for federal and state income tax purposes.

It is established to hold the record legal title to the trust estate and to perform such functions as are

necessarily incidental thereto.

SECOND. Beneficiaries: The beneficiaries of this Trust (hereinafter whether singular or

plural, "beneficiary") are listed in a Schedule of Beneficial Interests this day executed by the

beneficiary and the Trustees and attached hereto, or as the same may be amended as hereinafter

provided, and the interests of the beneficiary is as stated therein. In the event of the death of any

individual beneficiary, the interest of such beneficiary, and the rights, privileges and powers

appurtenant thereto, shall pass to and devolve upon the executors or administrators of the estate of

such beneficiary.

THIRD. Powers of Trustees: The Trustees shall act at all times prior to termination of the Trust only as directed in writing by the beneficiary and shall have full power and authority in accordance with such directions: to pay over the principal and income of the Trust to the beneficiary; to acquire, hold, manage, improve, sell, mortgage, exchange, transfer, convey, pledge, lend and otherwise deal with or dispose of all or any part or parts of the Premises or any part or parts of any other real or personal property or interests therein; to erect, construct, alter, repair, demolish or otherwise physically affect any buildings or structures of any type or description on the Premises or on any other Trust property; to grant or acquire rights and easements and any other interests in real estate; to execute and deliver leases, agreements and other instruments with respect to all or any part or parts of the Premises or any other Trust property, any or all of which may extend beyond the date of any possible termination of the Trust; to give releases, discharges, options and extensions with respect to the Premises or any other Trust property; and to borrow money (with or without security), and execute and deliver notes, checks, drafts, undertakings and other instruments or orders for the payment, transfer or withdrawal of money. Notwithstanding the foregoing provisions of this Article, the Trustees, until directed to the contrary by the beneficiary, shall have only the following powers and duties;

    (a)    To hold the Premises and any other Trust property and to receive any money due the Trust, and

    (b)    To pay any net income of the Trust in their hands at least annually to the beneficiary.

The Trustees shall not maintain bank accounts in the name of the Trust or Trustees unless specifically authorized to do so by the beneficiary; however, the Trustees may maintain bank accounts in the name of the beneficiary for any purpose authorized by the beneficiary. In the event any successor to the original Trustee named in this declaration, without specific authorization, does

- 2 -

maintain bank accounts in the name of the Trust or Trustee or otherwise incurs financial obligations or accepts deposits of money in the name of the Trust or Trustees, the Trustees shall indemnify the beneficiary against, and hold the beneficiary harmless from, any liability resulting therefrom, including taxes and accounting expenses, unless this term is specifically waived by the beneficiary.

Any and all instruments executed pursuant to the direction of the beneficiary may include obligations extending over any periods of time, including periods extending beyond the date of any possible termination of the Trust.

Any action, other than actions requiring participation of the beneficiary namely (i) amendments of this instrument pursuant to Article SIXTH, (ii) removals or appointments of Trustees pursuant to Article SEVENTH, or (iii) termination under Article EIGHTH, may be taken, and all instruments other than pursuant to the foregoing, whether or not under seal, may be executed, on behalf of the Trust by the sole Trustee, by any one Trustee in the event the Trust has more than one Trustee, or by such agent as shall be authorized by a written certificate signed by all of the Trustees.

The Trustees shall have no power to bind the beneficiary personally, and in every contract the Trustees shall enter into, reference shall be made to this Declaration of Trust, and the person, firm or corporation so contracting with the Trustees shall look only to the funds and property of the Trust for payment under such contract or for payment of any debt, damage, judgment or decree or of any money which may otherwise become due and payable by reason of a failure on the part of said Trustees to perform such contract in whole or in part, and neither the Trustees nor the beneficiary present or future, shall be personally liable therefor.

FOURTH.  Third Party Reliance:  Notwithstanding the provisions of Article THIRD concerning authorization of Trustee actions by the beneficiary, every agreement, deed, mortgage,

- 3 -

pledge, note, assignment, transfer, check, extension, release, discharge and other writing or document executed by a person appearing from the records in the said Registry to be a Trustee hereunder shall be conclusive evidence in favor of every person relying thereon or claiming thereunder that at the time of the execution or delivery thereof this Trust was in full force and effect and that the Trustee executing and delivering such instrument was duly authorized, empowered and directed by the beneficiary to execute and deliver the same and that, subject to Article THIRD hereof concerning the requirements for the execution of instruments, such instrument is valid, binding, effective and legally enforceable.

Notwithstanding anything in this instrument to the contrary, any person dealing with the Trust property or the Trustees may always rely on a certificate signed by any person appearing from the records of said Registry to be a Trustee hereunder as to who are the Trustees or who are the beneficiaries hereunder, or as to the authority of the Trustees to act, or as to the existence or non-existence of any other fact or facts which are in any other manner germane to the affairs of the Trust.

No purchaser, transferee, pledgee, mortgagee or other lender shall be under any responsibility or liability to see to the application of any purchase money, or of any money loaned, or property lent or delivered to the Trustees, or to see that the terms and conditions of this Trust have been complied with or performed.

FIFTH. Limitation of Trustee Liability: The Trustees shall not be held to any personal liability whatsoever, whether in tort, in contract, for error of judgment, or for loss arising out of any act or omission in the execution of the Trust, so long as they act in good faith, but each Trustee hereunder shall be responsible for his or her or its own willful breach of trust, knowingly and intentionally committed. No Trustee shall be liable for any act or omission by any other Trustee. If

- 4 -

any Trustee shall at any time for any reason (other than for willful breach of trust) be held to be under any personal liability as such Trustee, then such Trustee shall be held harmless and indemnified by the beneficiary, jointly and severally, against all loss, costs, damage, or expense by reason of such liability. The Trustees may withhold from any distribution, transfer or conveyance such amounts as they from time to time reasonably deem necessary to protect themselves from such liability. No Trustee shall be required to take any action directed by the beneficiary which will, in the opinion of the Trustee, involve the Trustee in any personal liability, unless first indemnified to the satisfaction of the Trustee. No court approval or license shall be requisite to the validity of any transaction entered into by the Trustees, and no Trustee shall be required to give any bond.

SIXTH. Amendments: This instrument and the Schedule of Beneficial Interests may be amended at any time by a written instrument signed by the beneficiaries and Trustees and acknowledged by one or more Trustees. A beneficiary may assign his or her beneficial interest provided that no such assignment shall be effective until (i) the original assignment is delivered to the Trustees, (ii) the assignee executes an Amendment to the Schedule of Beneficial Interests, (iii) at least one Trustee signs and acknowledges the Amendment to the Schedule of Beneficial Interests, (iv) and such Amendment is filed with said Registry.

SEVENTH. Resignation; Appointment of Successor Trustee: Any Trustee hereunder may resign by a written instrument signed and acknowledged by such Trustee and delivered or mailed to each beneficiary, and to each remaining Trustee, if any.

Succeeding or additional Trustees may be appointed or any Trustee removed by a written instrument signed by the beneficiary and acknowledged, or one or more additional Trustees may be appointed from time to time by the existing Trustee or Trustees, provided that each of the Trustees appointed shall accept such office by a written instrument signed and acknowledged by him or her.

- 5 -

In the event that there is no Trustee, either through death, resignation or for any other cause, a person purporting to be a successor Trustee hereunder may record in said Registry an affidavit, under pains and penalties of perjury, stating he or she has been appointed by the beneficiary as successor Trustee. Such affidavit, when so recorded together with an attorney's certificate stating that such attorney has knowledge of the affairs of the Trust and that the person signing the affidavit has been appointed a Trustee by the beneficiary, shall have the same force and effect as if the certificate of a Trustee or Trustees required or permitted hereunder had been so recorded, and persons dealing in good faith with the Trust or trust estate may always rely without further inquiry upon such an affidavit as so executed and recorded as to the matters stated herein.

So long as there is at least one Trustee in office a successor Trustee shall not be required to be appointed to fill any vacancy.

Upon the appointment of any succeeding or additional Trustee or Trustees, the title to the Trust estate shall thereupon and without the necessity of any conveyance be vested in said succeeding or additional Trustee or Trustees jointly with the remaining Trustee or Trustees, if any. Each succeeding and additional Trustee shall have all the rights, powers, authority, privileges and duties as if named as an original Trustee hereunder.

EIGHTH. Termination: The Trust may be terminated at any time by any one beneficiary by a written notice to the Trustee or Trustees, and the Trust shall terminate upon the disposition by the Trust of its entire interest in the Premises and all other real property at any time held by the Trust, or eighty-nine years after the date hereof, whichever shall first occur. In case of any such termination, the Trustees shall continue to have and may exercise all the rights, powers, authority and privileges conferred by this instrument upon the Trustees, for the full duration of such period (not exceeding two years from the date of termination, however) as the Trustees in their sole discretion determine

- 6 -

to be necessary for winding up the affairs of the Trust. Upon the conclusion of any winding up of the affairs of the Trust which the Trustees may deem necessary, the Trustees shall transfer and convey the entire Trust estate then remaining in their hands, subject to any leases, mortgages, contracts or other encumbrances thereon, to the beneficiary; provided that the Trustees shall not be required to transfer and convey the Trust estate unless first indemnified to their satisfaction against any personal liability.

NINTH. Notice: Notwithstanding any other provision of this instrument, no amendment or termination of the Trust or change in the Trustees shall become effective except with respect to persons having actual knowledge thereof until such instrument of amendment, termination, resignation, removal, appointment or acceptance, or a certificate thereof by a Trustee certifying that such amendment, termination, resignation, removal, appointment or acceptance was duly made in accordance with the terms of this instrument or any amendment hereof, has been duly recorded in said Registry and, in the event this Trust shall hereafter own real property in a district or county other than the district or county in which said Registry is located, then, with respect to such other real property, until such amendment, termination, resignation, removal, appointment, acceptance of certificate has been recorded in the appropriate registry of deeds for such district or county.

TENTH. Governing Law: This instrument shall be governed by and construed in accordance with the law of the Commonwealth of Massachusetts.

WITNESS the execution hereof as a sealed instrument as of the 22nd day of August, 2005.

_____
Robert N. Lupo

_____
M. Adeline Lupo

## COMMONWEALTH OF MASSACHUSETTS

County of Middlesex

On this 22nd day of August, 2005, before me, the undersigned notary public, personally appeared Robert N. Lupo, who is known to me to be the person whose name is signed on the foregoing instrument, and acknowledged to me that he signed it voluntarily for its stated purpose.



_____
Deborah Kay, Notary Public
My commission expires:  11/12/05

## COMMONWEALTH OF MASSACHUSETTS

County of Middlesex

On this 22nd day of August, 2005, before me, the undersigned notary public, personally appeared M. Adeline Lupo, who is known to me to be the person whose name is signed on the foregoing instrument, and acknowledged to me that she signed it voluntarily for its stated purpose.

_____
Deborah Kay, Notary Public
My commission expires:  11/12/05

BARNSTABLE COUNTY
REGISTRY OF DEEDS
A TRUE COPY. ATTEST
JOHN F. MEADE, REGISTER

**BARNSTABLE REGISTRY OF DEEDS**



EXHIBIT
"H"

## M. ADELINE LUPO REVOCABLE TRUST

## SECOND AMENDMENT AND RESTATEMENT

This _25th_ day of _August_, 2005, M. Adeline Lupo, of Weston, Massachusetts, being the Grantor under a trust agreement known as the M. Adeline Lupo Revocable Trust dated July 8, 1988, of which said M. Adeline Lupo and Robert N. Lupo are the current Trustees, pursuant to the powers reserved under Paragraph I of Article II, does hereby amend and restate said Trust in its entirety by deleting Article I through Article XXVI thereof and substituting therefor the following new Article 1 through Article 10, it being the Grantor's intention that this instrument together with any future amendments shall serve as the instrument or instruments evidencing said trust agreement.

## ARTICLE 1

## PROVISIONS FOR THE GRANTOR

1.1.     <u>Trust During Grantor's Life</u>. During the lifetime of M. Adeline Lupo, of Weston, Massachusetts (herein the "Grantor"), the Trustees shall hold and manage the trust property and shall dispose of the net income and principal, including the whole thereof, as the Grantor may from time to time request. In the absence of any such request, the Trustees may pay to or apply for the benefit of the Grantor any part or all of the net income and principal as they deem advisable, with full power to accumulate income and to hold the same for future use or to add the same in whole or in part to principal. In the event of the Grantor's incompetency, the Trustees are authorized to use any part or all of the net income and principal for the benefit of the Grantor and her issue of any degree by making payments to or by applying the same for any one or more of them at such times and in such amounts, proportions and manner as the Trustees deem advisable,

with full power to accumulate income and to hold the same for future use or to add the same in whole or in part to principal.

1.2.     <u>Payments and Disposition of Property Upon Grantor's Death</u>.  Upon the Grantor's death, payments by the Trustees pursuant to Section 6.1 shall be made from the property held in trust hereunder and any property then payable to the Trustees or to which they may be entitled.  The balance of such property shall be held under Article 2.

<div align="center">ARTICLE 2</div>

<div align="center"><u>PROVISIONS FOR THE GRANTOR'S ISSUE</u></div>

2.1.     <u>Division of Trust</u>.  Upon receipt of property to be held under this Article 2, the Trustees shall divide the same into as many equal shares as there are then living children of the Grantor and then deceased children of the Grantor who leave issue then living.  The Trustees shall hold each share established for the benefit of a then living child of the Grantor in accordance with the provisions of Section 2.2, and shall hold each share established with respect to a then deceased child of the Grantor who leaves issue then living in accordance with the provisions of Section 2.3.

2.2.     <u>Child's Trust</u>.  The Trustees shall hold and manage each share established for a then living child of the Grantor as a separate trust and shall use any part or all of the net income and principal for the benefit of such child and such child's issue of any degree by making payments to or by applying the same for any one or more of them at such times and in such amounts, proportions and manner as the Trustees deem advisable, with full power to accumulate income and to hold the same for future use or to add the same in whole or in part to principal until such child's death. Upon the death of such child, the Trustees shall distribute the property then remaining in such child's trust as follows:

2.2.1.     All the property then remaining in any non-exempt trust established pursuant to Section 3.2 shall be distributed in accordance with the exercise by such child of a general power of

<div align="center">2</div>

appointment over such property, as long as such exercise conforms to the requirements of Section 10.11. The property in any such non-exempt trust over which such child fails to exercise effectively said general power of appointment shall be held in accordance with the provisions of Section 2.2.3.

2.2.2.  All the property then remaining in any exempt trust established pursuant to Section 3.2 shall be distributed in accordance with the exercise by such child of a special power of appointment over such property, as long as such exercise conforms to the requirements of Section 10.10. The property in any such exempt trust over which such child fails to exercise effectively said special power of appointment shall be held in accordance with the provisions of Section 2.2.3.

2.2.3.      Property directed to be held in accordance with the provisions of this Section shall be held and distributed as follows:

2.2.3.1.      If such child leaves issue then living, the Trustees shall continue to hold such property as a separate trust in accordance with the provisions of Section 2.3.

2.2.3.2.      If such child leaves no issue then living, such property shall be added to and become an integral part of the separate trust under Section 2.2 for the benefit of the Grantor's other child if he or she is then living or, if not, shall be added to and become an integral part of the trust under Section 2.3 for the benefit of the then living issue of the Grantor's other child.

2.3.      <u>Trust for Issue of Deceased Child</u>.  The Trustees shall hold and manage each share established with respect to a then deceased child of the Grantor who leaves issue then living as a separate trust and shall use any part or all of the net income and principal for the benefit of such deceased child's issue of any degree by making payments to or by applying the same for any one or more of them at such times and in such amounts, proportions and manner as the Trustees deem advisable, with full power to accumulate income and to hold the same for future use or to add the

3

same in whole or in part to principal. Each trust established with respect to a then deceased child of
the Grantor who leaves issue then living shall terminate at such time as there is no living child of
such deceased child of the Grantor who is under the age of thirty (30) years, and the Trustees shall
then distribute all the property then remaining in such trust, free of all trusts, to such deceased
child's then living issue by right of representation or, if there shall be no such issue then living, to
the Grantor's then living issue by right of representation; provided, however, that any property to be
distributed to a person for whose benefit property is still held in trust under Section 2.2 or this
Section 2.3 shall instead be added to and become an integral part of such separate trust.

    2.4.     Rule Against Perpetuities. Each trust under this Article shall in all events
terminate twenty-one (21) years from the death of the survivor of the Grantor and those of the
Grantor's issue who are living at her death. Upon such termination, the Trustees shall distribute all
the property then remaining in such trust, free of all trusts, to those persons then eligible to receive
income from such trust, equally if all are in the same generation or, if not, to such persons by right
of representation beginning with the oldest generation which has one or more eligible beneficiaries
then living.

<div align="center">

ARTICLE 3

GENERAL PROVISIONS RELATING TO SEPARATE TRUSTS AND
TO PAYMENTS OF PRINCIPAL AND INCOME

</div>

    3.1.     Exempt and Non-Exempt Property for Generation-Skipping Transfer Tax
Purposes. "Exempt property" is (a) any property as to which the exemption from tax under
Chapter 13 of the Internal Revenue Code has been or is to be allocated (the "GST exemption"); (b)
any property, the transfer of which in a generation-skipping transfer would not be subject to tax
under said Chapter 13 by reason of section 1433(b)(2) of the Tax Reform Act of 1986; and (c) any
property held under this trust instrument or received from another trust or trust equivalent (as

<div align="center">4</div>

defined in said Chapter 13) that has an inclusion ratio of zero for purposes of said Chapter 13.

"Non-exempt property" is all other property. The Trustees may rely fully on the representations of

the transferor of the property (as defined in said Chapter 13) or the transferor's executor as to the

allocation of the GST exemption made or to be made to property that will be received by the

Trustees and the Trustees may rely fully on the representations of the trustees of any other trust or

trust equivalent from which property will be received by the Trustees hereunder as to the inclusion

ratio of such other trust or trust equivalent.

3.2.    <u>Separate Trusts for Generation-Skipping Transfer Tax Purposes</u>. If any trust

hereunder (the "original trust") would, but for this Section, receive both exempt and non-exempt

property, the Trustees shall create two trusts in place of the original trust to receive such property:

One (the "exempt trust") shall receive and hold the exempt property and the other (the "non-exempt

trust") shall receive and hold the non-exempt property. The Trustees shall administer the exempt

and non-exempt trusts as separate trusts and each shall be administered in accordance with the

provisions of the original trust, except that (a) the Trustees may allocate disproportionate amounts

of or interests in property from the exempt and non-exempt trusts in any division of trust property

into separate shares or trusts and (b) the Trustees shall make distributions and payments (including

any payment pursuant to Section 6.2 or Section 6.3) that are not generation-skipping transfers from

the non-exempt trust to the extent possible.

3.3.    <u>Funding Trusts</u>. When funding any trust under this instrument, the Trustees shall

meet the requirements of the Internal Revenue Code regarding valuation under section 2642 and

separate trusts under section 2654.

3.4.    <u>Spendthrift Provision</u>. Any payment of principal or income shall be free from

the interference and control of creditors and from all marital control and shall not be anticipated by

way of assignment, whether voluntary or by process of law, and each such payment shall be so

protected until its actual receipt by the appropriate recipient as authorized hereunder.

3.5.    Payments to Persons Under the Age of Twenty-One Years. When any payment

of principal or income is due or is to be paid in the discretion of the Trustees to any person under

the age of twenty-one (21) years, the Trustees are authorized to make such payment, regardless of

the amount, directly to such person, to a parent or guardian of such person for such person's benefit,

to a custodian for such person under a Uniform Transfers to Minors Act or comparable act of any

jurisdiction or to a trust for such person that is described in section 2503(c) of the Internal Revenue

Code.

3.6.    Discretionary Distributions to Minimize Taxes. With respect to each trust

established under Article 2, in addition to the provisions regarding distributions of income and

principal, the Trustees may distribute income and principal for the sole purpose of reducing the rate

of tax on income or avoiding generation-skipping transfers.

3.7.    Termination of Small Trusts. If at any time the Trustees are of the opinion that

the expense of administering any trust has become excessive in relation to the amount of property

held therein, they may terminate such trust and distribute all the property then remaining, free of all

trusts, to those persons then eligible to receive income from such trust, equally if all are in the same

generation or, if not, to such persons by right of representation beginning with the oldest generation

that has one or more eligible beneficiaries then living.

## ARTICLE 4

## TRUSTEES' POWERS

4.1.    Powers Exercisable by All Trustees. In addition to and not in limitation of their

common law and statutory powers, the Trustees shall have and may exercise the following powers:

6

4.1.1.    To retain any property for whatever period they deem advisable and to invest and reinvest in any property, both real and personal, including mutual funds of the "load" and "no load" variety, regardless of whether any particular investment would be proper for trustees and regardless of the extent of the diversification of the assets in the trust under which such property is held.

4.1.2.    To sell and to grant options to purchase all or any part of the trust property, both real and personal, at any time at public or private sale, for such consideration, whether or not the highest possible consideration, and upon such terms, including credit, as they deem advisable, and to execute, acknowledge and deliver deeds or other instruments in connection therewith.

4.1.3.    To lease any real estate for such term or terms, whether or not extending beyond the term of the trust under which such real estate is held, and upon such provisions and conditions as they deem advisable, including the granting of options to renew, options to extend the term or terms and options to purchase.

4.1.4.    Upon the written request of the Grantor, to assign, mortgage or pledge any part or all of the trust property as collateral to secure any obligations of the Grantor.

4.1.5.    With respect to any corporation, association or other entity the securities of which are held by the Trustees, (a) to participate in person or by proxy (with or without power of substitution) or pursuant to a voting trust in any meeting of stockholders, directors or securities holders of any kind; (b) to execute waivers of notice of the time, place and purposes of any meeting; (c) to consent to any action by such entity without a meeting and to execute formal instruments of consent; (d) to participate in any type of reorganization, recapitalization, merger, consolidation, liquidation, dissolution or other action; (e) to exercise subscription or conversion rights; (f) to serve or to designate an employee or representative to serve as an officer or director of any such entity and to vote any securities for the election of such person; (g) to deposit any securities with any protective committee or voting trust and to pay expenses in connection therewith; and (h) to take any other action as owners with respect to securities held hereunder.  If the Trustees incur any liability or expense under any state or federal law, including without limitation the federal securities acts and the "Blue Sky" laws of the several states as a result of holding, disposing of or otherwise dealing in or with any securities held hereunder or as a result of serving or designating another to serve as an officer or director of the issuer of any such securities, the Trustees shall be reimbursed for and indemnified against any such liability or expense from the property held hereunder to the extent permitted by applicable law.

4.1.6.    To hold any securities or other property, both real and personal, in the name of such nominee as they shall select or in the form of "street certificates", without in either case disclosing the fact that such property is held in a fiduciary capacity, and to indemnify any such nominee against any loss resulting from holding such property as nominee.

4.1.7.    To keep any trust property at any place within or without the United States or with a depository or custodian at any such place.

4.1.8.    To manage and invest any separate shares as a single fund consisting of undivided interests.

4.1.9.    To employ others in connection with the administration of the trust including legal counsel, investment advisors, brokers, accountants and agents, notwithstanding the fact that a Trustee may receive a direct or indirect financial benefit as a result of such employment or may be affiliated with any one or more of them, and to pay them reasonable compensation in addition to the Trustees' compensation.

4.1.10.    To have and possess rights of an owner with respect to any policies of life insurance held hereunder including the right to sell, assign or hypothecate any or all of said policies, to exercise any option or privilege granted by said policies, including the right to change any beneficiary designation, to borrow any sum from the insurer or from any individual, partnership, corporation or association, pledging any or all of said policies as security therefor, to surrender any or all of said policies, to receive all payments, dividends, surrender values, benefits or privileges of any kind which may accrue on account of said policies, to purchase insurance on the life of the Grantor or any other person, to use their best efforts to collect all sums payable to them under or by virtue of the provisions of any of said policies as they mature, except that the Trustees shall not be required to initiate any legal proceedings or to incur any expense until indemnified to their satisfaction and, except as herein specified, the Trustees shall have no responsibility for any of said policies, for the payment of any premiums thereunder or for any action required to keep said policies in force.

4.2.    <u>Powers Exercisable by Disinterested Trustees Only</u>. The disinterested Trustees shall also have and may exercise the following powers:

4.2.1.    To borrow and to pledge or mortgage any property as collateral, and to make secured or unsecured loans. The Trustees are specifically authorized to make loans without interest to any beneficiary or to the estate of any beneficiary hereunder.

4.2.2.    To make any distribution or separation into shares, in whole or in part in kind, at values determined by them with or without regard to tax basis, and to allocate different kinds and disproportionate amounts of property and undivided interests in property among the shares.

4.2.3.    To make any elections permitted under any pension, profit-sharing, employee stock ownership or other benefit plan.

4.2.4.    To pay, compromise, settle or otherwise adjust any claims, including taxes, asserted in favor of or against either the trust property or the Trustees.

4.2.5.    To determine:  (a) whether any money or property coming into their possession shall be deemed principal or income and whether to apportion the same between principal and income; (b) the manner in which expenses incidental to the administration of the trust shall be borne or apportioned between principal and income; (c) whether any discounts shall be accumulated; (d) what portion, if any, of interest received on bonds purchased at a premium and dividends received on wasting investments shall be added to principal in order to prevent the diminution of principal; and (e) to what extent expenditures, including real estate taxes, insurance, repairs, improvements and principal payments on mortgages and other loans, for the maintenance and protection of real estate and other trust property shall be charged against income or principal, and whether to establish reserves from income or principal for such expenditures and for depreciation, depletion, amortization and obsolescence in order to prevent the diminution of principal.

## ARTICLE 5

## ACCOUNTING BY THE TRUSTEES

While the Grantor is living and competent, the Trustees shall, from time to time, render an account of their trust to her.  In the event of the Grantor's incompetency or after her death, the Trustees shall render an account of their trust annually to each income beneficiary or, if an income beneficiary is not then legally competent or is not then living and a guardian, conservator, executor or any other fiduciary has been legally appointed for such income beneficiary, to such fiduciary. "Income beneficiary" shall mean each person who is eligible to receive income during the period covered by the account; provided, however, that any such person who has a parent or more remote lineal ancestor who is eligible to receive income during such period shall not be deemed an income beneficiary for purposes of this Article.  The assent to such account by a majority of the persons to whom the account has been rendered shall be a complete discharge of the Trustees as to all matters included in such account or reflected thereby.  The failure of any person to whom such account has been rendered to object to such account by written instrument filed with the Trustees within ninety (90) days after the rendering of such account shall be deemed to be an assent thereto.

## ARTICLE 6

### PROVISIONS RELATING TO PAYMENT OF TAXES AND OTHER ITEMS

6.1.    <u>Payment of the Grantor's Taxes and Other Items</u>. The Trustees may pay such sums as they deem advisable for payment of the Grantor's debts, funeral expenses and estate administration expenses. In addition, the Trustees shall pay to the Grantor's estate such sums for the foregoing purposes and for the satisfaction of pecuniary legacies under the Grantor's will and for payment of the Grantor's estate taxes and generation-skipping transfer taxes on direct skips as are set forth in a written statement or statements submitted by the executor of the Grantor's will to the Trustees. The Trustees may also pay such taxes directly to the taxing authorities involved. Such payments shall be made from the principal of the trust under Article 1, and the Trustees shall use property that will result in the least possible increase (if any) in federal and state estate tax upon the Grantor's estate. In no event shall property be paid by reason of this Section 6.1 if such property is not includible in the Grantor's gross estate for either federal or any state estate tax purposes. Notwithstanding the foregoing provisions of this Section 6.1, the Trustees may refuse to pay to the Grantor's estate proceeds of any insurance on the Grantor's life.

6.2.    <u>Payment of Estate Taxes from a Child's Trust</u>. If, upon the death of a child of the Grantor, property is then held in trust for such child's benefit under Section 2.2, the Trustees may pay and, if such child's executor so requests in writing, the Trustees shall pay from such child's trust to such child's estate, or directly to the taxing authorities involved, as provided in Section 3.2, the amount requested by such executor or, absent such request, an amount the Trustees deem advisable for payment of any federal or state estate taxes attributable to the property held in such child's trust, but such amount, in either case, shall not exceed (a) the amount of estate taxes payable by reason of the death of such child less (b) the amount of such taxes computed without including the property held in such child's trust.

10

6.3.     Payment of Taxes Attributable to Disclaimed Property. All estate taxes and generation-skipping transfer taxes that are attributable to a disclaimer of any property under this trust shall be borne by the disclaimed property, as provided in Section 3.2.

ARTICLE 7

PROVISIONS RELATING TO TRUSTEESHIP

7.1.     Compensation, Liability and Indemnification. The Trustees shall be entitled to reasonable compensation to be paid from the trust property. No Trustee shall be required to give a bond for the performance of his or her duties or to furnish a surety on any bond required by a court of competent jurisdiction. Unless due to his or her own wilful default or gross negligence, no Trustee shall be liable for his or her acts or omissions or those of any co-Trustee or prior Trustee. The Trustees shall be indemnified and held harmless to the extent of the property held hereunder for any liability incurred by them while acting hereunder except liabilities incurred by them through their own wilful default or gross negligence.

7.2.     Resignation. Any Trustee may resign by notifying the Grantor or, in the event of the Grantor's incompetency or after her death, any other Trustee by written instrument signed and acknowledged by the resigning Trustee.

7.3.     .   Removal. The Grantor shall have the right while living and competent to remove any Trustee by notifying such Trustee by written instrument signed and acknowledged by the Grantor.

7.4.     Appointments. At such time as either said M. Adeline Lupo or said Robert N. Lupo shall be incapable of serving or shall cease to serve as a Trustee hereunder, John C. Collins, Jr., of Waltham, Massachusetts, and Deborah Kay, of Boston, Massachusetts, each shall serve as a Trustee upon his or her written acceptance. While the Grantor is living and competent, she may appoint successor or additional Trustees. In the event of the Grantor's incompetency or

11

after her death, the Trustees may make such appointments. If, however, at any time during the incompetency of the Grantor or after her death, there is not a disinterested Trustee capable of performing his or her duties, the Trustee or Trustees then serving or, if none, a majority of those persons entitled to an accounting under Article 5 shall forthwith appoint one or more disinterested Trustees. Any appointment of a Trustee hereunder shall be by a written and acknowledged instrument and shall not take effect until the appointee shall endorse his or her acceptance thereon.

7.5.     Powers.  Whoever shall act as Trustee shall have all the rights, powers, duties, discretions and exemptions given to the named Trustees, except that any interested Trustee shall take no part in any decision involving the discretionary payment, application or distribution of income or principal and shall take no part in the exercise of the powers and discretions conferred upon the disinterested Trustees in Section 4.2.

7.6.     Incapacity.  If, at any time when there is more than one Trustee, any Trustee shall be mentally or physically incapable of performing his or her duties, it shall not be necessary for such Trustee to resign or to be removed in order that the trust may continue to be administered. The other Trustees may administer the trust during such incapacity without the concurrence of the incapacitated Trustee.  If such incapacity results in there being no disinterested Trustee capable of performing his or her duties, a disinterested Trustee shall forthwith be appointed pursuant to the provisions of Section 7.4.

7.7.     Delegation of Duties.  The Trustees may from time to time authorize any one or more of them to execute instruments including, without limitation, checks, notes and drafts, on behalf of the Trustees hereunder.  Any individual Trustee may delegate from time to time all his or her powers and duties to the other Trustees only if during such delegation there shall continue to be at least one disinterested Trustee capable of performing his or her duties.  Any such delegation shall

be by a written and acknowledged instrument delivered to the other Trustees and shall be for a period not exceeding six (6) months.

7.8.     Trustee's Certificate.  A written instrument signed by any Trustee as to the identity of the Trustees or as to any other facts or matters relating to the trust or its management shall be conclusive as to all facts stated in such instrument in favor of any person relying thereon, and no one dealing with any Trustee shall be held to see to the application of any money or property transferred to or upon the order of such Trustee.

7.9.     Exculpation.  No Trustee shall be liable for the default of the executor of the Grantor's will.  No Trustee shall be liable for the failure to demand or contest an accounting of any fiduciary, to seek redress of any breach of any fiduciary duty, or to require delivery of any property from a fiduciary unless such failure is due to the Trustee's own wilful default or gross negligence.

7.10.     No Duty to Prepare Estate Tax Return.  No provision of this trust shall be construed as requiring the Trustees to take any part in the preparation of any estate tax return or in the computation of any such tax, and the Trustees may rely on such computations made by the appropriate fiduciaries.

7.11.     Finality of Decisions.  Any decision made by a Trustee involving a discretionary power under this trust, any computation made for purposes of funding separate trusts or shares, and any computation made for purposes of determining a payment pursuant to Article 6 shall be final and binding on all persons interested.

## ARTICLE 8

### GRANTOR'S POWER TO AMEND AND REVOKE

8.1.     During the Grantor's Life.  The Grantor shall have the right while living and competent to amend or revoke this trust at any time by delivering to the Trustees a written instrument signed and acknowledged by the Grantor.  Upon the Trustees' receipt of an instrument

13

of revocation this trust shall terminate, and the Trustees shall distribute to the Grantor or her designee the property remaining in trust less such charges, taxes and assessments as may be properly charged to or assessed upon such property. The Grantor's receipt shall be a full discharge of the Trustees.

8.2.   <u>After the Grantor's Incompetency or Death</u>.  In the event of the Grantor's incompetency or after her death, the disinterested Trustee shall have the power, by written instrument signed and acknowledged by each disinterested Trustee then in office, to amend the administrative provisions of this instrument, provided that no such amendment shall alter or shift any beneficial interests in this trust or increase the powers or discretion of any interested Trustee or change the provisions of this Article.

## ARTICLE 9

## RECORDING OF DOCUMENTS

9.1.   <u>Recording of Trust</u>.  If at any time the Trustees hold title to real estate or any interest therein, other than through a nominee, this instrument shall be recorded, if possible, in the registry of deeds for the county or district where such real estate is situated, unless the law or standards of title affecting real estate allow proof of title through the recording of Trustees' certificates, affidavits or in some other manner.

9.2.   <u>Recording of Changes</u>.  As long as the Trustees hold title to real estate, any instrument evidencing any resignation, removal, appointment, acceptance, amendment or revocation shall be recorded, if possible, in the registry of deeds for the county or district where such real estate is situated, unless no such recording is required or the law or standards of title affecting real estate allow the recording of any such change through Trustees' certificates, affidavits or in some other manner. Any such change shall take effect when the instrument evidencing such change, or such

14

other document, as the case may be, is so recorded.  If such recording is not possible or required, the change shall take effect upon compliance with the applicable provisions of Article 7 or Article 8.

## ARTICLE 10

## GOVERNING LAW, PRESUMPTION, DEFINITIONS AND TITLES

10.1.    _Governing Law_.  This trust shall at all times be governed, construed and administered in accordance with the laws of the Commonwealth of Massachusetts.

10.2.    _Presumption_.  Any person who does not survive a "transferor" (as defined in said Chapter 13 of the Internal Revenue Code) by ninety (90) days shall be deemed to have predeceased such transferor.

10.3.    _Family Relationship Definitions_.  The terms "child", "children" and "issue" shall include all lineal descendants, whether by blood or adoption.

10.4.    _Right of Representation_.  Whenever the Trustees are directed to distribute property to an individual's issue by right of representation, the division of property into shares shall begin at the first generation below that of such individual, with the establishment of equal shares for each then living member of such generation and each then deceased member of such generation who leaves issue then living.

10.5.    _Determination of Incompetency and Incapacity_.  The determination of whether the Grantor is incompetent shall be made by the Trustees (other than said M. Adeline Lupo if she is then serving as a Trustee).  The determination of whether a Trustee is mentally or physically incapable of performing his or her duties shall be made by the other Trustees.  Any such determination when supported by the certificate of a disinterested physician shall be final and binding on all persons interested or relying thereon.

10.6.    _Interested Trustee_.  For the purposes of each trust hereunder, the term "interested Trustee" shall mean a Trustee, other than the Grantor, who is eligible, whose spouse is eligible or

who is legally obligated to support a person who is eligible to receive income or principal from such trust. All other Trustees, including the Grantor if she is serving as a Trustee, shall be "disinterested Trustees".

10.7.    Internal Revenue Code. All references to the Internal Revenue Code shall mean the Internal Revenue Code of 1986 or any successor Code as the same may from time to time be amended. All references to estate taxes shall include inheritance and other death taxes.

10.8.    Insurer's Exculpation. No insurance company shall be responsible for the application of any money or property transferred to the Trustees hereunder.

10.9.    Miscellaneous Definitions. Whenever the context permits, the term "Trustees" shall include the Trustee or Trustees then serving hereunder, the term "executor" shall include "administrator", the use of a particular gender shall include any other gender and references to the singular or the plural shall be interchangeable.

10.10.    Special Power of Appointment. The donee of a special power of appointment may exercise such power only in favor of any one or more of the Grantor's issue and spouses of such issue in such amounts, proportions and manner, in trust or otherwise, as the donee designates. The donee of a special power of appointment may not exercise the same in favor of the donee, the donee's creditors, the donee's estate or the creditors of such estate. The exercise of a special power of appointment shall be effective only if the donee thereof exercises the same by a will (executed either before or after the death of the Grantor) that makes specific reference to the special power of appointment being exercised.

10.11.    General Power of Appointment. The donee of a general power of appointment may exercise such power only in favor of any one or more of the Grantor's issue, spouses of such issue and creditors of the donee's estate, in such amounts, proportions and manner, in trust or otherwise, as the donee designates. The donee of a general power of appointment may not exercise

the same in favor of the donee, the donee's creditors or the donee's estate. The exercise of a general power of appointment shall be effective only if the donee thereof exercises the same by a will (executed either before or after the death of the Grantor) that makes specific reference to the general power of appointment being exercised.

10.12.    Name of Trust.    The trust created by this instrument may be referred to as the "M. Adeline Lupo Revocable Trust" or, after the death of the Grantor, the "M. Adeline Lupo Irrevocable Trust."

10.13.    Titles.    The titles of all Articles hereunder are inserted for reference only and do not affect the interpretation of this trust.

IN WITNESS WHEREOF, M. Adeline Lupo has hereunto set her hand and seal, the day and year first above written, executing two identical copies of this instrument, each of which shall constitute an original.

_M. Adeline Lupo_
M. Adeline Lupo, Grantor

COMMONWEALTH OF MASSACHUSETTS

County of Middlesex

On this _25th_ day of _August_____, 2005, before me, the undersigned notary public, personally appeared M. Adeline Lupo, personally known to me to be the person whose name is signed on the foregoing instrument, and acknowledged to me that she signed it voluntarily for its stated purpose.

_John C. Collins, Jr._
Notary Public
My commission expires:  _3/20/2009_
_Middlesex County, Mass._

17

The undersigned, currently being the Trustees of the M. Adeline Lupo Revocable Trust,

hereby acknowledge receipt of the foregoing Second Amendment and Restatement, this 29th day of

_____Augnot_____, 2005.

_____
M. Adeline Lupo, Trustee

_____
Robert N. Lupo, Trustee

1518157

18

## M. ADELINE LUPO REVOCABLE TRUST

## THIRD AMENDMENT

This 12th day of October, 2005, M. Adeline Lupo, of Weston, Massachusetts, Grantor

of the M. Adeline Lupo Revocable Trust dated July 8, 1988, as amended and restated by an

instrument dated August 25, 2005, of which M. Adeline Lupo and Robert N. Lupo are the current

Trustees, pursuant to the Grantor's power to amend said Trust in accordance with the provisions of

Article 8 thereof, hereby amends said Trust as follows:

First: By deleting the first sentence in Section 2.1 under Article 2 thereof and substituting

the following provisions therefor:

"2.1.    Division of Trust.   Upon receipt of property to be held under this Article 2, the

Trustees shall divide the same into as many equal shares as there are children of the Grantor then

living and children of the Grantor then deceased leaving issue then living; provided, however, that if

the Trustees shall hold any beneficial interest in real property located at 10 Edgewater Park,

Newton, Massachusetts, and if the Grantor's son, Robert N. Lupo, is then living, the Trustees shall

allocate said interest to the trust share established with respect to Robert N. Lupo and shall then

divide the balance of the trust property in equal shares as aforesaid. The Trustees shall hold each

share established for the benefit of a then living child of the Grantor in accordance with the

provisions of Section 2.2, and shall hold each share established with respect to a then deceased child

of the Grantor who leaves issue then living in accordance with the provisions of Section 2.3."

IN WITNESS WHEREOF, M. Adeline Lupo has hereunto set her hand and seal, the day and

year first above written.

M. Adeline Lupo, Grantor

COMMONWEALTH OF MASSACHUSETTS

County of Middlesex

On this __12th__ day of October, 2005, before me, the undersigned notary public,

personally appeared M. Adeline Lupo, who is known to me to be the person whose name is signed

on the foregoing instrument, and acknowledged to me that she signed it voluntarily for its stated

purpose.

Deborah Kay, Notary Public
My commission expires: 11-12-05


The undersigned, being all of the Trustees of said Trust, hereby acknowledge receipt of the

foregoing Third Amendment this __12th__ day of October, 2005.

M. Adeline Lupo, Trustee                          Robert N. Lupo, Trustee

2

1534876