UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| In re<br><br>ROBERT N. LUPO,<br><br>　　　　　　Debtor. | Chapter 7<br>Case No. 09-21945 JNF |

OBJECTION TO MOTION TO APPROVE STIPULATION AND AGREEMENT

Joan Batista ("Batista"), a creditor of the estate of the above-referenced Debtor, hereby objects to the *Motion To Approve Stipulation and Agreement* (the "Motion To Approve") filed by Joseph B. Collins. In support of this objection, Batista states as follows:

BACKGROUND

1. The Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on December 10, 2009 (the "Petition Date"). On September 15, 2010, the case was converted to a case under Chapter 7.

2. Joseph B. Collins (the "Trustee") is the duly appointed Chapter 7 trustee of the bankruptcy estate.

3. Among the assets listed on the Debtor's schedule of personal property are interests in the M. Adeline Lupo Revocable Trust (the "MALR Trust"), the N&A Lupo Realty Trust (the "N&A Trust") and the Mashpee Realty Trust (the "Mashpee Trust").

4. The Debtor and Kenneth Lopez ("Lopez") are the trustees of the N&A Trust. The MALR Trust is the sole beneficiary of the N&A Trust. The Debtor and Batista, his sister, are each 50% beneficiaries of the MALR Trust.

1

Document      Page 2 of 10

5.    As of the Petition Date, the N&A Trust held title to, among other assets, real estate located at 29 Myles Standish Road, Weston, Massachusetts (the "Weston Property"), with an assessed value of $1,023,900, and property located on Hamilton Road, Waltham, Massachusetts.

6.    In addition, upon information and belief, the N&A Trust holds title to 50% of certain real estate located at Edgewater Park, Newton, Massachusetts (the "Newton Property"). The bankruptcy estate holds the other 50% interest in the Newton Property. The Trustee is in the process of marketing the Newton Property for sale. The Debtor and Batista dispute ownership of the remaining 50% beneficial interest in the Newton Property the N&A Trust portion). Notwithstanding that title to the Newton Property reflects a 50% ownership interest in the Newton Property by the N&A Trust, the Debtor asserts that the bankruptcy estate holds a 50% interest in the Newton Property and that he holds the beneficial interest in the other 50% of the Newton Property. Batista asserts that the bankruptcy estate holds a 50% interest in the Newton Property, and that both she and the Debtor jointly hold the remaining 50% beneficial interest in the Newton Property.

7.    The Debtor and Lopez are trustees of the Mashpee Trust. Batista and the Debtor are each 50% beneficiaries of the Mashpee Trust.

8.    As of the Petition Date, the Mashpee Trust held title to two parcels of real estate located at 28-33 Nehoiden Road, Mashpee Massachusetts (the "Mashpee Properties").

9.    On or about April 13, 2011, the Trustee commenced Adversary Proceeding No. 11-01120 (the "Adversary Proceeding") against the Debtor, Lopez, JKCB, LLC ("JKCB"), Batista and Axiom Partners, LP ("Axiom").

10. In the Complaint (the "Complaint") filed to commence the Adversary Proceeding, the Trustee alleged that during the 6-month period prior to the Petition Date, the Debtor used the assets of the N&A Trust to pay $187,782 for his personal benefit, including legal expense for matters unrelated to the N&A Trust.

11. The Trustee further alleged that following the Petition Date, on February 17, 2011, the Debtor transferred the Weston Property and Mashpee Properties to JKCB for no consideration,[1] and that thereafter, the Debtor mortgaged the Weston Property and Mashpee Properties to obtain a $750,000 loan (the "Axiom Loan") from Axiom, notwithstanding Batista's refusal to consent to the transaction.

12. Upon information and belief, the purpose of the Axiom Loan was to provide funds to "re-purchase" certain of the Debtor's properties, with respect to which relief from stay to foreclose had been granted to Rockland Trust ("Rockland") in the bankruptcy case. Upon information and belief, the Debtor failed to consummate his "re-purchase" and as a result, a deposit derived from the Axiom Loan proceeds of approximately $200,000 was lost to Rockland. Upon information and belief, at least $73,000 of the funds loaned by Axiom remain on hand, although Batista is uncertain as to the purposes for which the Debtor intends to utilize same.

13. Based upon the allegations set forth in the Trustee's Complaint, the Trustee requested a declaratory judgment that assets of the trusts be deemed property of the bankruptcy estate, as well as judgments avoiding the transfers of the Weston Property and Mashpee Properties to JKCB. The Trustee also sought a judgment avoiding the mortgage granted to

---

[1] Notwithstanding Batista's refusal to consent, records filed at the Barnstable Registry of Deeds reflect that the Debtor executed a *Lupo Mashpee Realty Trust Trustee's Certificate* in which he certified that all holders of beneficial interests in the Mashpee Trust consented to the transfer.

Axiom or, in the alternative, seeking damages in the amount of $750,000 against Axiom.

14. Batista believes that the allegations set forth in the Trustee's Complaint represent a continuation of years of mismanagement, misappropriation, fraud and breach of fiduciary duty by the Debtor with respect to the trusts. As a result, Batista has filed a proof of claim in the case in the amount of $2,488,350, which includes both claims relating to the Debtor's actions during the period set forth in the Complaint as well as the period prior thereto since the creation of the trusts, beginning in at least 2005. Batista intends to fully litigate her claims against the estate, and proceed in state court to remove the Debtor and Lopez as trustees of the trusts and seek a liquidation of trust assets.

15. On May 27, 2011, the Trustee filed the Motion to Approve, in which he sought approval of a settlement of the claims set forth in the Adversary Proceeding. Pursuant to the terms of the settlement, the estate will receive $20,000 in cash upon approval of the settlement. In addition, the estate will receive an additional $30,000 payable pursuant to a promissory note from the Debtor, JKCB and the Debtor's wife, Ms. Reynolds ("Reynolds"). The note will be secured by a mortgage on the Debtor's residence and a mortgage on the Weston Property (originally owned by the N&A Trust, but now owned by JKCB as a result of the post-petition transfer). Upon an Order approving the Settlement, the Adversary Proceeding will be deemed dismissed against the remaining defendants in the Adversary Proceeding.

16. Upon information and belief, the Debtor intends to utilize proceeds from the sale of the Newton Property to fund payment of the $30,000 promissory note payable to the bankruptcy estate pursuant to the settlement.

ARGUMENT

17.  "A settlement agreement should be approved as long as it does not 'fall below the lowest point in the range of reasonableness'" *In re Healthco Int'l, Inc.*, 136 F. 3d 45, 51 (1st Cir. 1998), quoting *In re W.T. Grant Co.*, 699 F. 2d 599, 608 (2nd Cir. 1983).   In determining whether a compromise satisfies the applicable standard of reasonableness, courts have focused on four considerations:

   a.  The probability of success in litigation;

   b.  The complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it;

   c.  The likely difficulty in collection;

   d.  The paramount interest of creditors.

See <u>Jeffrey v. Desmond</u>, 70 F. 3d 183, 185 (1st Cir. 1995).  See also, <u>In re Anolik</u>, 107 B.R. 426, 429 (D. Mass. 1989) and <u>In re Lawrence Paperboard Corp.</u>, 52 B.R. 907, 909 (Bankr. D. Mass. 1985).

18.  The settlement described in the Motion To Approve does not fall within the range of reasonableness required by applicable law to allow for approval.

19.  The proposed settlement does little more than condone the Debtor's improper behavior in his handling of these trusts.  The Trustee's allegations in the Adversary Proceeding set forth several examples of the Debtor's utilization of the trusts for his own purposes, notwithstanding the interests of Batista or the creditors of his estate.  If approved, the Weston Property and Mashpee Properties will remain encumbered by a $750,000 mortgage to secure the

Axiom Loan, none of the proceeds of which have benefitted Batista in any way. Moreover, the trusts will have suffered misappropriation of assets in excess of $180,000. Perhaps most disturbing, pursuant to the settlement, it is proposed that the Debtor utilize trust property (the Weston Property and the Newton Property) to fund, and provide security for, the proposed settlement. Thus, the settlement allows the Debtor pay for his prior sins against the trusts by committing them anew. This fundamental unfairness cannot be the basis for a settlement in this case.

20. Batista acknowledges that her interest in this case is, in some ways, congruent with the estate and in some ways not. While she has an interest in the trusts as a 50% beneficiary, she also has an interest as a creditor, and in that regard, she believes that the estate would have a likelihood of success on the merits that the Debtor's 50% beneficial interest in the trust can be treated as property of the bankruptcy estate (subject to certain rights of Batista to offset amounts to which she is entitled for the Debtor's misappropriation of trust assets).

21. Apart from the impact on this determination of various provisions of the trusts in outlining the powers of the Debtor as trustee, it is the Debtor's own actions in treating trust assets as his own that will result in a finding that a portion of the trust assets should be treated as property of the bankruptcy estate. Upon information and belief, the Debtor has not seriously disputed that he used $187,782 from the trusts for his personal benefit during the 6-month period prior to the Petition Date. If proven, this fact alone would appear to provide a solid legal basis for the Trustee's position. The Debtor's insistence on borrowing an additional $750,000, by first transferring and then encumbering the Weston Property and Mashpee Properties without seeking Court approval, and then squandering $200,000 or more of it in a failed bid to buy back problem

properties from Rockland Trust in his personal bankruptcy case would appear to provide substantial additional support for the claims.

22. The Trustee's Motion To Approve sets forth no analysis as to the likelihood of success on the merits of this matter. As a result, creditors cannot determine the benefits which might accrue to the estate from successful litigation. Batista asserts that discovery associated with proving the claims set forth on her proof of claim will likely disclose further instances of the Debtor's operation of these trusts for his personal benefit and thereby shed additional light on the extent of the estate's claims.

23. The litigation of this case need not be overly complex for the estate. While litigation of these issues will require the depositions and document productions necessary to investigate the Debtor's operation of these trusts, including a forensic accounting analysis, Batista intends to do most of the work required for this analysis in the context of proving her claims against the estate.

24. Batista has filed a proof of claim in the case in the amount of $2,488,350 and sought to have it allowed as a timely claim. The Debtor has objected both to having the claim be deemed filed timely and the substance of the claim itself. Batista believes that many of the same factual issues which bear upon Batista's claim will tend to prove or disprove the estate's case in the Adversary Proceeding. In other words, facts that prove the fraud, misappropriation and breach of fiduciary duty as described in Batista's claim will also tend to enhance the estate's position that a portion of the trusts' assets should be treated as property of the bankruptcy estate.

25. There will likely be little difficulty in collection of a judgment in this case. Upon information and belief, in excess of $73,000 in proceeds from the Axiom Loan remain on hand,

preserved by the injunction entered by the Court in this case to satisfy a judgment. Further, if the Trustee is successful, he will be able to liquidate the real estate owned by the trusts and distribute the proceeds among Batista and the estate.

26. The paramount interest of creditors in this case lies in rejecting the settlement. Based upon discussions with the Trustee, in the absence of Batista's claims, it is still possible that creditors could receive a distribution equal to or approaching 100% of their claims. If Batista's claims are allowed in full, creditors will likely receive a lesser percentage distribution. Thus, at this stage of the investigation into the Debtor's actions, settlement of the estate's claims for a payment of $50,000 is more likely to be harmful to creditors in this case. Due to the similarities between Batista's claims and the estate's claims, if Batista is able to prove the entirety of her $2,488,350 claim, it is likely that the bankruptcy estate's recovery would be well in excess of the $50,000 set forth in the settlement. Nonetheless, pursuant to the proposed settlement, the estate will receive only $50,000 to cover Batista's additional claims, ensuring a substantially lower percentage distribution.

27. On the other hand, if Batista's claims are denied in full, it is likely that the bankruptcy estate's case in the Adversary Proceeding would have a poor outcome for the estate as well. In that scenario, while the estate will not receive the $50,000 it might have received pursuant to the settlement (assuming that the Debtor will not subsequently settle for the same amount), it will not be faced with a significant claim by Batista, and creditors will likely still receive payment approaching 100% of their claims.

28. At this stage of the investigation, creditors' interests lie in generating additional estate funds, which may be required to satisfy Batista's additional claims. As long as Batista is

doing a substantial portion of the estate's work in this regard, there is no reason to risk a settlement that may be insufficient to cover those claims. In that sense, the settlement is truly below the lowest range of reasonableness because at this time, it is more likely to diminish the dividend to creditors than enhance it.

29. The settlement cannot be approved by this Court. Creditors, including Batista, deserve a full investigation of the Debtor's handling of these trusts in order to fully assess the interests of Batista and the bankruptcy estate therein.

30. To date, because of the prosecution of the Adversary Proceeding by the estate and the injunctive relief, it has not been necessary for Batista to seek similar relief in the probate court. In light of the proposed settlement, however, Batista has little choice but to move forward with litigation in the probate court to remove the Debtor as trustee. Accordingly, in the unlikely event that this Court approves the proposed settlement, Batista requests that the Court continue the pending injunction for 10 days to allow Batista to proceed in state court and obtain a further injunction against the Debtor, pending a hearing on his removal as trustee.

WHEREFORE, Batista respectfully requests that this Court enter an Order:

i) denying the Motion To Approve; and

ii) granting such other and further relief as it deems just and proper.

        JOAN BATISTA

        By her attorneys,

        /s/ Philip C. Silverman
        Philip C. Silverman, Esq. (BBO #555492)
        Anderson Aquino LLP
        240 Lewis Wharf
        Boston, MA 02110
        (617) 723-3600
        Psilverman@andersonaquino.com

Dated: June 20, 2011