**UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS**

~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**ROBERT N. LUPO**,                    Chapter 7
          Debtor                      Case No. 09-21945-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

The matters before the Court are 1) the Application for Final Allowance of
Compensation and Reimbursement of Expenses by the Law Firm of Looney & Grossman,
LLP ("L&G") as Counsel to the Debtor (the "Fee Application"); 2) the Objection to the Fee
Application filed by Robert N. Lupo (the "Debtor"); 3) the Debtor's Emergency Motion
Requesting that the Court Refrain from Ruling on the Fee Application (the "Motion to
Refrain"); 4) the Objection to the Motion to Refrain filed by Joseph B. Collins, the Chapter
7 Trustee and the former Chapter 11 Trustee (the "Trustee"); 5) the Debtor's Motion to
Compel the Trustee Either to Retain Counsel to Pursue Debtor's Legal Malpractice Claim
against Looney & Grossman, LLP and Its Attorneys or to Abandon the Claim to the Debtor
(the "Motion to Compel"); and 6) the Trustee's Objection to the Motion to Compel.

1

Pursuant to its Fee Application, which it filed on December 27, 2010, L&G seeks compensation for services in the sum of $65,343.75 and reimbursement of expenses in the sum of $225.84 for the period of time between June 23, 2010 and August 18, 2010, the date the Court appointed a Chapter 11 Trustee. The Debtor filed an Objection to the Fee Application on October 10, 2011. In his Objection, the Debtor alleged, *inter alia,* that "Claimant [L&G] was retained to represent the debtor in these proceedings and as a result of claimant's failure to comply with an order of this court, the case was converted to a chapter 7 liquidation" and that the fees requested by L&G are excessive. In his Motion to Refrain, the Debtor asked the Court to "except from any finding any determination that Looney and Grossman's representation of the Debtor met the standard of care for attorneys practicing before this Court, and specifically preserve the Debtor's right to pursue a malpractice claim against Looney and Grossman and any attorneys at that firm who represented the Debtor in connection with this bankruptcy." In his Motion to Compel, the Debtor seeks an order compelling the Trustee "to either retain Attorneys Steven E. Ernstoff and Lisa DeBrosse Johnson to pursue Lupo's legal malpractice claims against Looney & Grossman, LLP and Attorneys Stewart F. Grossman, Adam J. Ruttenberg and Michael A. Siedband, or, in the alternative, abandon the claims so Lupo may pursue the action on his own." The Trustee objected to both the Motion to Refrain and the Motion to Compel. In his Objection to the Motion to Compel, he set forth the reasons why he believed the case was converted to a case under Chapter 7, namely the grounds set forth in his Statement Regarding Order to Show Cause, adding that "the Trustee believes that the premise of the

2

Debtor's allegation of legal malpractice, i.e., that the Court converted the case to Chapter 7 solely as a result of the failure to file a Disclosure Statement, may be flawed."  He also requested that the Motion to Compel should be denied with prejudice as the certificate of service accompanying the motion is false.

The Court conducted an evidentiary hearing on December 6, 2011 with respect to the Debtor's Objection to the Fee Application.  Prior to the hearing, the Court issued a procedural order in which it deemed the Fee Application and the Debtor's Objection to the Fee Application a contested matter to which the adversary rules apply. *See* Fed. R. Bankr. P. 9014.  The Court ordered the parties to file affidavits, exhibits and briefs on pertinent issues, including whether the Debtor's alleged claims against  L&G, are property of his bankruptcy estate, *see* <u>Bezanson v. Thomas (In re R & R Assocs. of Hampton)</u>, 402 F.3d 257 (1st Cir. 2005); <u>In re Robotic Vision Sys., Inc.</u>, 343 B.R. 393 (Bankr. D. N.H. 2006), and whether the Debtor has standing to assert such claims. The Court determined that at the evidentiary hearing the affidavits submitted by the parties would serve as the direct examination of the affiants, and the hearing would be limited to cross examination and the submission of exhibits. *See* Fed. R. Bankr. P. 9017(c).

At the hearing, Stewart F. Grossman, Esq. ("Attorney Grossman"), was the only witness who testified with respect to the Fee Application.  Although the Debtor submitted an Affidavit with respect to the Fee Application, this Court granted L&G's Motion to Strike the Debtor's Affidavit  because it was not filed timely and because the Debtor purported to give his opinion as to what would have happened in his bankruptcy case had L&G taken

3

certain action.  The Court ruled that the Debtor lacked the requisite expertise as a

bankruptcy specialist to proffer such an opinion.[1]  Accordingly, the Court limited the

Debtor's participation in the evidentiary hearing to the cross-examination of Attorney

Grossman and the submission of exhibits.

Upon consideration of the evidence presented at the evidentiary hearing and the

record of proceedings in this case, the Court finds that L&G sustained its burden of proof

with respect to its entitlement to, and the reasonableness of, the compensation sought in

its Fee Application for services rendered.  Therefore, the Court shall enter orders allowing

L&G's fees as requested, overruling the Debtor's Objection to the Fee Application, and

denying the Debtor's Motion to Refrain and Motion to Compel.  In so doing, the Court

rejects the Debtor's assertions that the conduct of L&G constituted legal malpractice.[2]

---

[1] In his Affidavit, the Debtor stated:  "[s]ince graduation [from law school] and
until September 25, 2006, I practiced law with an emphasis on conveyancing.  I knew
nothing about bankruptcy or litigation."  The Debtor also stated that "[h]ad Attorney
Grossman complied with the Order to Show Cause, the Court would have not
converted the case to a chapter 7 and, based upon the values of the property, the
Disclosure Statement would have been approved and the creditors would have voted in
favor of the Plan of Reorganization."  The two statements are inconsistent as without
knowledge of bankruptcy, the Debtor could not have concluded that his plan of
reorganization would succeed.  Moreover, his statement as to what would have
transpired had a disclosure statement been filed is speculative.

[2] "'To establish legal malpractice in Massachusetts, a plaintiff generally must
establish: "(1) the existence of an attorney-client relationship; (2) that [the] attorney
breached his duty to exercise reasonable care and skill; (3) that the plaintiff suffered
actual loss; and (4) that the attorney's negligence proximately caused such loss.'" St.
Paul Fire and Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP., 379 F.Supp.2d
183, 202 (D. Mass. 2005) (quoting Cain v. Kramer, No. 00-10341-DPW, 2002 WL 229694,
at *8 (D. Mass.2002)).

The Court now makes the following findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

## II. FACTS

The Debtor filed a voluntary Chapter 11 petition on December 10, 2009.[3]  At the commencement of his case, he was represented by the law firm of Hanify & King, Professional Corporation ("H&K").

The Debtor's Chapter 11 case has been marked by turmoil almost from its inception in part due to the number of parcels of real estate owned by the Debtor, directly or indirectly, and in part due to the number of documents filed by creditors, including parties acting pro se.  Numerous secured creditors objected to the Debtor's "Motion for Order Authorizing : (1) the Interim and Permanent Use of Cash Collateral, (2) the Granting of Adequate Protection, (3) Entry of Scheduling Order Regarding Continued Use of Cash Collateral and (4) Additional Relief," and motions for relief from the automatic stay were filed and adversary proceedings were commenced within the first several months of the case.

After Judge Frank J. Bailey recused himself from the case and the case was assigned to Judge William C. Hillman, H&K, on June 18, 2010, filed a Motion to Withdraw as Counsel on grounds that "there is a fundamental disagreement with the Debtor as to the conduct of the Chapter 11 case, which fundamental disagreement has resulted in an

---

[3] The Court may take judicial notice of its docket. *See* <u>LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.),</u>196 F.3d 1, 8 (1st Cir. 1999), *cert. denied,* 530 U.S. 1230 (2000).

irreconcilable breakdown of the attorney-client relationship."  Three days after the filing

of the Motion to Withdraw, the United States trustee filed  a "Motion to Convert Debtor's

Chapter 11 Case to Chapter 7 or to Appoint a Chapter 11 Trustee and Request for

Expedited Determination."  As grounds, the United States trustee represented:

> The Debtor's amended schedules and statements reflect substantial
> non-exempt assets available for liquidation and payment to creditors;
>
> The Debtor has failed to formulate a meaningful disclosure statement and a
> feasible plan in over the six months his case has been pending;
>
> The Debtor's counsel has filed a motion to withdraw . . .;
>
> Conversion to chapter 7 or the appointment of a chapter 11 trustee is in the
> best interest of creditors and the estate.

As a result of H&K's decision to withdraw as counsel, the Debtor filed a Motion to

Employ Stewart F. Grossman and the Law Firm of Looney & Grossman LLP as Counsel on

June 28, 2010.[4]  The firm received a $25,000 retainer from the Debtor's non-debtor spouse.

On June 29, 2010, the Court authorized the Debtor to employ L&G; it also appointed an

Examiner.

On August 9, 2010, L&G, on behalf of the Debtor, filed a Chapter 11 Plan of

---

[4] In an email dated June 24, 2010 to the Debtor, Attorney Grossman noted:

You come with a reputation of being a difficult client who sues  his
lawyers. . . . If you actually have a real Angle [sic], this case should work.
If Chris [Christopher Lewis, a pro se party who filed a Notice of
Appearance in the case and who in pleadings filed with the Court
represented that he worked closely with the Debtor postpetition] doesn't
have the cash, then you have to sell properties to buy your way out of the
proceeding.  The US Trustees [sic] office has concluded that all the delays
in the case are due to you and your strategy . . . or stubbornness.

Reorganization, together with a Motion for an Extension of Time in which to File Disclosure Statement.[5]  As grounds for the Motion for an Extension of Time, L&G represented that the Debtor was the owner of over 30 different parcels of real estate, each of which, with a few exceptions, had its own secured creditors and that the complexity of the Debtor's case and the results of the Examiner's investigation required an extension of time until August 27, 2010 to file a sufficiently detailed Disclosure Statement in support of the Chapter 11 Plan of Reorganization.

Prior to filing the Chapter 11 plan, Adam Ruttenberg, Esq. ("Attorney Ruttenberg"), a partner at L&G, sent an email to the Debtor on August 4, 2010 alerting him to the need to produce documents before the disclosure statement  could be filed.  Moreover, in an Affidavit filed with the Court, which was the subject of  cross-examination, Attorney Grossman stated:

> Despite numerous meetings and conversations with the Debtor throughout late July, the Debtor did not provide L&G with the needed information on how he wanted to treat his creditors in a plan, let alone the projections to support such treatment.  Not until the end of July did the Debtor give L&G even a portion of the information I sought.  Throughout the first week of August, I and other attorneys at L&G sent the Debtor drafts of a plan with many holes to fill in.  Only on the morning of August 9, 2010, the very day exclusivity expired, did the Debtor get L&G his proposed plan treatment. . . .  Despite all my and L&G's exhortations to the contrary, the Debtor agreed in the plan to sell only one meaningful property in Newton, plus five condominiums in Acton.

The Debtor did not send L&G either projections showing his ability to make

_____

[5] The Court granted two motions to extend the exclusive periods for filing and soliciting votes for a plan.  *See* 11 U.S.C. § 1121.  The second motion contained a request to extend the exclusive period for filing a plan of reorganization until August 9, 2010.

the proposed plan payments or a liquidation analysis showing that the pot of $50,000 per year for five years was a better result for unsecured creditors than a Chapter 7 liquidation. As I and Attorney Ruttenberg had repeatedly told the Debtor, without those a disclosure statement could not be filed. . . .

Less than two months after L&G's retention, Rockland Trust Company filed a Motion for Relief from Stay and Immediate Appointment of Trustee, or, in the Alternative for the Termination of Exclusivity, together with 19 exhibits and a Motion for an Emergency Hearing. It asserted that it was owed $1,891,651 at the petition date. In its Motion, it alleged that the Debtor was illegally performing demolition and construction work at property securing its loan and that the Debtor had failed to properly maintain other properties, creating hazardous conditions at those properties. In support of the appointment of a Chapter 11 Trustee, it stated:

> A trustee should be appointed without further delay. These eight months of postpetition activity demonstrate Lupo's contempt for legal requirements, gross [mis]management, neglect, and disregard for the interests of the general public and his creditors. A trustee should be immediately appointed so that a single responsible person will manage the estate's properties to a successful conclusion.

> Moreover, Lupo's conduct throughout these proceedings demonstrate a contempt for the requirements of operating his business in accordance with applicable non-bankruptcy law as required by 28 U.S.C. § 959(b). This is consistent with the character revealed in the SJC's decision to indefinitely suspend Lupo's license to practice law. A trustee should be appointed to ensure that the business is operating in accordance with applicable state law.

The Court granted the Motion for an Emergency Hearing and scheduled a hearing for August 18, 2010. The Examiner filed his Report two days before the hearing. The Examiner observed the following:

8

> The Examiner conducted two lengthy interviews of the Debtor.  The
> Examiner feels that the Debtor was very forthcoming during both of those
> interviews although he was very slow when it came to producing documents
> that were requested at the conclusion of the July 14, 2010 interview.  *The
> Examiner believes that it was only due to the efforts of Attorney Ruttenberg  [of
> L&G] that the majority of the documents finally were turned over - weeks after they
> were requested.  Attorney Ruttenberg has been extremely responsive to all of the
> many requests made by the Examiner throughout this investigation.*

(emphasis supplied).  Although the Examiner noted the Debtor's candor, he also noted that

the Debtor is a disbarred attorney whose license to practice law was revoked by the

Supreme Judicial Court for engaging in "'clear, personal conflicts of interest with elderly,

unsophisticated and vulnerable clients' and that his 'conduct reflect[ed] an insensitivity to

his obligation of absolute fiduciary fidelity to those whom he counseled combined with a

pattern of self-dealing and self-enrichment at their expense.'"[6]

As an indication of the complexity of the Debtor's Chapter 11 case, the Examiner

determined that the Debtor owned 32 parcels of real estate, either individually or through

a trust, at the commencement of his case, a large number of which were devoted to so-

called Section 8 housing, as well as numerous automobiles, a number of which were not

disclosed on his Schedules of Assets, and an interest in a corporation known as the Piano

Man, Inc.  The Examiner also evaluated the Debtor's claims against Rockland Trust, and

Bowditch & Dewey LLP, among other claims, determining that they were unlikely to

confer a benefit to the estate if they were prosecuted, while also noting that the Debtor has

---

[6] The Debtor's discharge has been denied as a result of his failure to defend the
Chapter 7 Trustee's three-count Complaint through which the Chapter 7 Trustee
objected to his discharge on a variety of grounds involving dishonesty and failure to
abide by orders of the Court.

a reputation for bringing and prosecuting "frivolous litigation."

On August 17, 2010, the Official Committee of Unsecured Creditors filed a "Statement in Support of Appointment of Chapter 11 Trustee." It noted that it found the Debtor's Plan of Reorganization to be unrealistic, adding "the Debtor assumes it [sic] can reduce unsecured claims by more than half and then pay unsecured creditors over five years. The Committee believes there are sufficient assets so that the creditors should be paid in full upon the Effective Date."

L&G, on behalf of the Debtor, filed an Opposition to the Motion of Rockland Trust Company for Relief from the Automatic Stay and Immediate Appointment of a Trustee or, in the Alternative, for Termination of Exclusivity, supported by the Debtor's Affidavit and that of Tony Chisari, a licensed construction contractor. Despite the Debtor's Opposition, Judge Hillman, on August 18, 2010, approximately six weeks after L&G's employment, appointed a Chapter 11 Trustee with the obvious support of parties in interest.

Following the appointment of Joseph B. Collins, Esq. as the Chapter 11 Trustee, Attorney Grossman, in his Affidavit, averred the following:

> Immediately after the August 18, 2010 hearing, I and Attorney Ruttenberg met with the Debtor in a conference room at the courthouse. We explained that the appointment of a Chapter 11 trustee had drastically changed the dynamic of the bankruptcy case, and that the Debtor's ability to succeed in his bankruptcy case would almost certainly need the support of the Chapter 11 trustee. We further explained that the Chapter 11 trustee was now in charge of all of the Debtor's assets that were property of the bankruptcy estate, and that the Debtor would have to cooperate with the Chapter 11 trustee regarding those assets. We also explained that, especially in light of the Court's [Hillman, J.] disparaging remarks about the Debtor , it would be impossible to get a Chapter 11 plan confirmed that provided for the Debtor

10

> to retain the bulk of his real estate unless such plan had the support of the
> Chapter 11 trustee.
>
> ***
>
> Ultimately the Debtor did not listen to our advice about the Chapter 11
> trustee. . . .  Instead of responding to the Chapter 11 trustee, the Debtor was
> devoting his efforts to finding a lender who somehow would loan him
> enough money to get him out bankruptcy (ignoring that the repayment of
> such a lender would prevent any plan based on such a loan from being
> feasible).

Consistent with his Affidavit, Attorney Grossman testified that he and the Debtor, as well

as the Debtor's spouse, met with the Chapter 11 Trustee to discuss going forward in the

case.  Describing the meeting as "an informal 341," Attorney Grossman testified that the

Chapter 11 Trustee considered the Debtor's list of properties to be sold to be "a good start,"

but inadequate to address the capital gain tax consequences from the sales of the

properties.  In addition, Attorney Grossman sent an email to the Debtor on September 3,

2010 advising him of the need to cooperate with the Trustee and Rockland Trust with

respect to both the management and sale of numerous properties, stating "[w]e have to

work with him [the Chapter 11 Trustee] or he will join with Rockland to sell everything,"

adding "Bob, as of 5 PM last night you still had not called the real estate broker.  PLEASE

do it asap.  You have to make him believe  your are bending over to work with him.  He

made a simple request and you have ignored him."  He concluded:

>  . . . I [do not] want to see you spend money like you did in the BBO
> suspension litigation.  I don't want to see you and Jean [the Debtor's spouse]
> blow through what you have left.  You are not young and need the money
> for your senior years which are around the corner. I spend so much time
> keeping you focused and talking about Hanify [H&K], Rockland, Bowditch,

Lisa [Lisa Jacobs, a purported creditor or administrative claimant, who has appeared pro se in this case], the legal community's conspiracy and money you think you can borrow. Those issues are all distractions. You are wasting my time and your time.  . . .  Keep focused and make the right decisions.

In his testimony, Attorney Grossman explained:

I spoke with Mr. Lupo quite often about going forward, and we decided after Joe Collins was appointed on the 18th of August that Joe Collins was told as I was told from  - - by David Reier for Rockland Trust, that unless the plan was significantly improved, they were going to file a competing plan.  We were working  - - and the competing plan was a quick liquidation which would have paid everyone in full by the end of the calendar year.

And Mr. Lupo's plan was  - - was not feasible, that the liquidation analysis and feasibility were still big question marks, and there was a competing plan, and Mr. Collins was very frustrated with Mr. Lupo because he wouldn't turn over the Ameritrade account, and there was a problem of coordinating bills and the paying and the receipt of rents.

And when Rockland Trust realized that the demolition of part of their collateral package was done without building permits, which were secured later, the credibility of Mr. Lupo was  - - was not very high in the Trustee's mind, and I had told Mr. Lupo that we have to work with the  - - with the Trustee to get this done and his plan was just not going to work.

On September 9, 2010, the Court, prompted by the filing of an Objection to the Debtor's Plan of Reorganization filed by HSBC Bank USA National Association and the Debtor's failure to file  a Disclosure Statement by the August 27, 2010 deadline, issued an order to "show cause, in writing, by September 15, 2010, why this case should not be dismissed for failure to file a disclosure statement and otherwise comply with the orders of this Court."  The Official Committee of Unsecured Creditors filed a Statement opposing dismissal of the Debtor's Chapter 11 case, noting that "[t]he Plan of Reorganization filed by the Debtor was not viable and any further time spent on it, let alone the Disclosure

12

Statement, would be of no benefit to the estate, and, in fact, would only add to accrual of administrative claims." The Chapter 11 Trustee filed a Statement Regarding Order to Show Cause in which he observed that the amount of mortgage debt scheduled by the Debtor was less than what was set forth in proofs of claim; that the values ascribed to properties by the Debtor were significantly higher than the assessed values; that the net income from the properties did not support the Debtor's valuations; that liquidation of the properties would produce substantial capital gain tax liabilities; and that many properties were subject to non-avoidable judicial liens. He added that he did not believe that there was a reasonable likelihood for the confirmation of a Chapter 11 plan other than a liquidating plan and that he would be filing a motion to convert based upon his belief that the assets could be liquidated effectively in a Chapter 7 case.

On September 13, 2010, the Debtor emailed Attorney Grossman stating that he was unaware until that morning that there was an order to show cause issued by the Court. He stated: "Although you say this is only a status conference, not to worry, can we please file the disclosure today, that the court required on Aug. 27, 2010." He also stated: "If the number for unsecureds (why not spread out payments) and the admins [sic], (spread out payments as well) is X, then I understood we had listed enough properties to begin with??"[7] Although Attorney Grossman responded to the Debtor's email, the Debtor, in a follow-up email sent on September 14, 2010, repeated his request that L&G file a disclosure

---

[7] Because 11 U.S.C. § 1129(a)(9)(A) requires administrative claims to be paid on the effective date "cash equal to the allowed amount of such claim," the Debtor's proposal would render a plan with such treatment incapable of being confirmed.

13

statement.

On September 14, 2010 at 7:29 p.m., the Court scheduled a hearing on its order to show cause for September 15, 2010 at 9:30 a.m.  L&G appeared at the hearing on behalf of the Debtor, although it had not filed a response to the order to show cause because that order contemplated a response by September 15, 2010 at 4:30 p.m.  *See* MLBR  Appendix 8, Electronic Filing Rule 3(c)(2).  Moreover, Judge Hillman in his order to show cause did not specify conversion as a possible option for the Debtor's failure to file a disclosure statement.  Nevertheless, the Court converted the Debtor's Chapter 11 case to a case under Chapter 7 on September 15, 2010, effective September 18, 2010, although the deadline for filing a written response had not expired.  Prior to the hearing, however, Attorney Grossman testified that he discussed dismissal of the case with the Debtor.

On September 17, 2010, L&G and counsel to the Debtor's non-debtor spouse promptly filed a Joint Motion for Reconsideration of Order Converting Case from Chapter 11 to Chapter 7 with a request for emergency determination.  In the Motion for Reconsideration, the parties stated:

> On August 23, 2010, the Debtor, his Wife, Counsel, and Accountants met with the Trustee and the Trustee's then-proposed counsel.
>
> After meeting with the Trustee, and during subsequent communication with the Trustee, it became clear to the Debtor that the Trustee planned to sell several more properties than the Debtor anticipated selling in his Plan of Reorganization.
>
> After hearing the Trustee's opposition to the original Plan of Reorganization, the Debtor determined that his Plan of Reorganization, as filed, faced long odds for success. The Debtor and his Wife continued to communicate with

14

the Trustee and hoped to file a joint plan of reorganization with the Trustee.

The Debtor's Counsel further determined that the expenses associated with formulating a disclosure statement were too burdensome to the Debtor and his estate to justify, given the small likelihood for success with the Plan of Reorganization.

The parties added:

The first mention of converting the case to one under Chapter 7 appeared in the Trustee's Statement Regarding Order to Show Cause.

In that statement, filed September 14, 2010 at 2:19 p.m., the Trustee stated that he intended to file a motion to convert the case to Chapter 7, and requested that consideration of the dismissal "be deferred until such time as there is a hearing a [sic] Motion to Convert."

The Debtor and his Counsel did not have time to sufficiently and adequately discuss the possibility that the case might be converted to one under Chapter 7, nor did they believe that conversion would be considered, based upon the Court's Order to Show Cause and Notice of Nonevidentiary Hearing thereon.

Had the Debtor and his Counsel had an adequate opportunity to discuss the possibility of conversion – as opposed to dismissal or retention of the case in Chapter 11 – they would have presented additional facts in favor of remaining in Chapter 11 at the Show Cause Hearing. Those facts and related arguments likely would have been in addition to, not instead of, the decision to pursue dismissal of the case.

The parties concluded:

In a case such as this one, in which the parties anticipate a 100% payment to allowed unsecured claims, the Trustee owes an additional duty to not prejudice the Debtor (or other residual interest holders) and not commit waste. By moving to convert the case to one under Chapter 7, the Trustee has removed the Debtor's ability to file a confirmable plan without gaining any additional administrative powers for himself.

On September 17, 2010, Judge Hillman recused himself and the case was reassigned

15

to the undersigned judge.  This Court scheduled the Motion for Reconsideration for

September 21, 2010.  On that date, this Court denied the Motion for Reconsideration.  Both

the Chapter 7 Trustee and the Official Committee of Unsecured Creditors opposed

reconsideration.  The Chapter 7 Trustee reiterated his position set forth in his Statement

Regarding Order to Show Cause, while the Official Committee of Unsecured Creditors

observed that the Debtor had attempted to maintain the illusion that he could act in

bankruptcy in the same manner as he had prior to the commencement of his case.  The

Debtor did not file a notice of appeal from this Court's denial of the motion for

reconsideration.

L&G continued to represent the Debtor at least through October 18, 2010 when it

filed a Motion to Extend Deadline for Filing Chapter 7 Individual Statement of Intention.

In that Motion, it represented that "[t]he undersigned counsel has been unable to

communicate with the Debtor regarding his statement of intention and other issues related

to the administration of his bankruptcy estate." The Court granted the Motion.  Prior to that

time, an email exchange between the Debtor and Attorney Grossman revealed a dispute

about whether the debtor had prepared and forwarded projections to L&G.

Attorney Grossman, in his Affidavit, stated that he attended the hearing on

September 15, 2010 and argued to keep the case in Chapter 11.  Attorney Grossman

concluded that, despite his advice, the Debtor had not succeeded in overcoming the

opposition of the Chapter 11 trustee to his Plan of Reorganization. At trial, Attorney

Grossman stated: " . . .  I had told Mr. Lupo that we have to work with the  - - with the

16

Trustee to get this done and his plan was just not going to work." He also indicated in his Affidavit that he and L&G had provided services and billed for those services after August 18, 2010 in the total sum of $65,219.21 of which only $11,298 was ever paid.

On October 21, 2010, Leonard Krulewich, Esq. ("Attorney Krulewich") filed an Emergency Motion for Reconsideration to Reconvert to Chapter 11, in which the Debtor raised a due process argument as to the sufficiency of notice with respect to conversion of his case to Chapter 7 rather than dismissal. The Debtor also represented that he had obtained a commitment to finance a Chapter 11 plan of reorganization which was "sufficient enough to allow the debtor to bring all mortgages current, to pay administration fees and other priority creditors and to pay a partial dividend to unsecured creditors," adding that he would eventually pay all unsecured claims in full. Because the Debtor failed to attach the commitment letter to his Emergency Motion, this Court denied his Motion on October 25, 2010. On November 3, 2010, the Debtor renewed his Motion for Reconsideration. The Court, after entering a procedural order requiring the Debtor to file the outline of a feasible plan, heard the Motion for Reconsideration on November 12, 2010. Notably, the United States trustee, the Chapter 7 Trustee, and Rockland Trust Company opposed reconsideration for numerous procedural and substantive reasons. On November 15, 2010, the Court entered the following order:

> Upon consideration of the averments set forth in the Debtor's Motion (which is the Debtor's third attempt to vacate the Court's conversion of this case to one under Chapter 7); the proposed plan and disclosure statement filed by the Debtor; the objections filed by various interested parties; the arguments of counsel to various parties and the arguments of two pro se individuals at

the hearing on this Motion; the history of proceedings in this case; and no party having requested an evidentiary hearing, the Court finds as follows: The Debtor has not shown cause for reconsideration of this Court's prior orders or that this case should be converted to a case under Chapter 11. The feasibility of the Debtor's proposed plan and disclosure statement is premised upon a number of questionable assumptions. First, the proposed plan is dependent upon the success of litigation, such as the Debtor's objections to administrative expenses of professionals, his objection to the claim of Rockland Trust Company which has already been granted relief from the stay, and objections to numerous unsecured claims. Such litigation is speculative at best and will increase the administrative expense burden to the estate. Second, the proposed plan is also premised on short-term exit financing which must either be repaid or refinanced within a year of confirmation. Third, the plan is conditioned upon vacatur of an order granting relief from stay to Rockland Trust Company. Lastly, the plan is based on financial projections which are at least partially inconsistent with historical facts. In light of all of these factors, the Court finds the feasibility of the Debtor's proposed plan to be unlikely. The Motion is denied.

The Debtor did not file a notice of appeal with respect to this Court's November 15, 2010

order.

## III. ARGUMENTS OF THE PARTIES

The Debtor argues that L&G is not entitled to compensation because it failed to file

a disclosure statement by August 27, 2010 and because it failed to file a response to the

Order to Show Cause issued on September 9, 2010 setting forth a response date of

September 15, 2010. L&G contends that, in essence, there was no point in filing a disclosure

statement because the plan filed on August 9, 2010 was not confirmable as it lacked the

support of the Chapter 11 Trustee, Rockland Trust Company and other Chapter 11

constituencies, and capital gain tax consequences had not been considered in formulating

the plan. In short, it asserted that the filing of a disclosure statement would have served no

18

legitimate purpose.

## IV. DISCUSSION

The burden of proof in all fee applications is on the applicant. *See* <u>In re Scarlet

Hotels, LLC</u>, 392 B.R. 698, 703 (B.A.P. 6th Cir. 2008).  With respect to the Debtor's objection

that the fees incurred were excessive, a review of the Fee Application, including the

narrative of services performed and the itemization of the services rendered compiled from

L&G's time records, and information on the hourly rates of the various professional

persons who rendered services reveals that the time spent and hourly rates charged by

L&G were reasonable.  The Debtor's Chapter 11 case was complex, involving numerous

commercial properties, many occupied by Section 8 tenants and most encumbered by

mortgages which were in default.   When L&G undertook its representation of the Debtor,

it immediately was immersed in a caldron of activity as the day Judge Hillman approved

its retention as counsel to the Debtor, he heard the United States trustee's Motion to

Convert the Debtor's Chapter 11 Case to Chapter 7 or to Appoint a Chapter 11 Trustee.

Although Judge Hillman did not grant the United States trustee's Motion, he appointed an

examiner.  Ten weeks later, he appointed a Chapter 11 trustee.  Given the level of activity

in the case, and four pending adversary proceedings, the Court finds that L&G's fees were

reasonable.

With respect to the Debtor's claims that L&G's failure to file a disclosure statement

was the cause of Judge Hillman's decision to convert his case to a case under Chapter 7, the

Court unequivocally rejects that assertion.  Not only is it nonsensical and illogical, the

record reveals that, prior to the September 15, 2010 hearing at which the Court converted

the Debtor's case to a case under Chapter 7, the Debtor had lost the support of the Chapter

11 Trustee.  In his Statement Regarding Order to Show Cause, the Chapter 11 Trustee noted

that mortgage debt was understated in the Debtor's Schedules, that valuations of the

Debtor's properties were overstated in the Debtor's Schedules, and that cash flow from the

various real properties did not support the Debtor's valuations.  He also referenced the

existence of substantial tax liability for capital gains and the existence of non-avoidable

judicial liens.  As noted above, he stated his belief that there was no reasonable likelihood

for the confirmation of a Chapter 11 plan, other than a liquidating plan and that he

intended to file a motion to convert the Debtor's Chapter 11 case to a case under Chapter

7.  When the Trustee's Statement is considered in conjunction with Attorney Grossman's

testimony, particularly the advice he transmitted to the Debtor that it was incumbent upon

him to make the Chapter 11 Trustee "believe that you are bending over to work with him,"

which advice the Debtor did not heed, the Court finds that the absence of the Chapter 11

Trustee's support, not the failure to file a disclosure statement for an obsolete plan of

reorganization was the trigger for Judge Hillman's decision to convert the Debtor's Chapter

11 case to Chapter 7.

The Court can find no basis for permitting the Debtor to assert a malpractice claim

against L&G, particularly as those claims, were they to exist, belong to the Chapter 7

Trustee, not the Debtor.  *See* In re Robotic Vision Sys., Inc., 343 B.R. 393, 398 (Bankr. D.N.H.

2006).  The Court has determined that L&G's services were competent under the

20

circumstances.  In addition, the element of causation required to support any claim for

professional malpractice simply is not present in this case.  The Debtor's leap of logic that

the failure to a file disclosure statement or to respond to the Court's order to show cause

before the deadline had expired constituted malpractice is wholly unpersuasive in view of

credible evidence presented.  The Court credits Attorney Grossman's testimony that the

Debtor refused to accept the advice of L&G.  The Court finds that L&G appropriately

advised the Debtor that, in the absence of adequate refinancing, any confirmable plan of

reorganization had to include the sale of several properties and have the support of the

Chapter 11 Trustee, advice which the Debtor did not unreservedly and timely accept.  L&G

was hampered in filing a feasible plan and an adequate disclosure statement by the

Debtor's inability to obtain a firm refinancing commitment, his refusal to provide

information necessary to draft a feasible plan of reorganization and disclosure statement

that properly treated secured and unsecured creditors and administrative claimants, or to

timely provide reasonable projections for the continued operation of the rental properties

and other information necessary for the filing of an adequate disclosure statement.

Moreover, the Debtor did not accept L&G's advice to unhesitatingly cooperate with the

Chapter 11 Trustee and to work with the Chapter 11 Trustee in proposing a joint plan of

reorganization.  Indeed, the Debtor refused to cooperate with the Chapter 11 Trustee in a

number of respects, including his failure to promptly turn over to the Trustee monies in his

Ameritrade account. The myriad of problems with the Debtor's Chapter 11 case, including

the lack of support for a plan of reorganization by the Chapter 11 Trustee, the Official

21

Committee of Unsecured Creditors, and the major secured creditor, was the proximate

cause of Judge Hillman's decision to convert the Debtor's Chapter 11 case to a case under

Chapter 7, not the failure to file a disclosure statement for an obsolete plan of

reorganization.

On September 9, 2010, Judge Hillman issued an order to show cause why the

Debtor's case should not be dismissed for failure to file a disclosure statement for the plan

filed on August, 9, 2010 by L&G on the Debtor's behalf.  The order required a written

response to be filed by September 15, 2010.  In the evening of September 14, 2010, Judge

Hillman issued a notice of hearing for 9:30 a.m. on September 15, 2010.  Attorney Grossman

appeared and argued on behalf of the Debtor that the case should remain in Chapter 11 or

be dismissed.  Attorney Grossman's testimony as to the reasons why L&G did not file a

disclosure statement was persuasive.  The existing plan of reorganization was not feasible

and any alternative plan would need the support of the Chapter 11 Trustee and to

provided for sale of numerous properties.

In sum, the Court concludes that the Debtor cannot establish the requisite elements

of a malpractice claim to support either his Objection to the Fee Application or his Motions

to Refrain and to Compel.  His assertions of malpractice against L&G lack merit at best and

are frivolous at worst.  As noted above,  to establish legal malpractice, a plaintiff must

establish "'(1) the existence of an attorney-client relationship; (2) that [the] attorney

breached his duty to exercise reasonable care and skill; (3) that the plaintiff suffered actual

loss; and (4) that the attorney's negligence proximately caused such loss.'" St. Paul Fire and

22

Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP., 379 F.Supp.2d 183, 202 (D. Mass.

2005) (citations omitted).  The Debtor cannot satisfy the requisite elements of such a claim,

particularly as evidence established that the proximate cause of the conversion of the

Debtor's case to Chapter 7 was the position of the Chapter 11 Trustee, not the failure to file

a disclosure statement to an obsolete plan of reorganization, which was filed the day

exclusivity for filing a plan of reorganization terminated, and lacked the support of parties

in interest.

Even were the Court to give some credence to the Debtor's argument that filing a

disclosure statement would have moved the Court to keep the case in Chapter 11, L&G and

counsel to the Debtor's non-debtor spouse promptly filed an emergency motion for

reconsideration of the conversion order.  Notably, no parties in interest supported the

Motion for Reconsideration.  In particular, the Chapter 7 Trustee and former Chapter 11

Trustee, opposed reconsideration, arguing that Judge Hillman acted within his authority

to *sua sponte* convert the Debtor's Chapter 11 case to a case under Chapter 7.  The Chapter

7 Trustee reiterated his grounds for conversion in his Opposition, noting that the Debtor

had sought to retain his most valuable properties despite the pendency of his bankruptcy

case. The Official Committee of Unsecured Creditors agreed.  Moreover, when Attorney

Krulewich undertook a third attempt to obtain reconsideration of the order converting the

Debtor's case to Chapter 7, that attempt failed.  Again, the Debtor lacked the support of the

parties who presumably would benefit from distributions under a Chapter 11 plan of

reorganization, as well as the Chapter 7 Trustee and the United States trustee.

23

The Court concludes that the Debtor's Chapter 11 case was converted to Chapter 7 because Judge Hillman accepted the representations of the Trustee and concluded that there was no reorganization in prospect and not because of any negligence on the part of L&G, whose participation in the case led to favorable comments by the Examiner.   Based upon the facts as found, the Court concludes that the Debtor has no basis for objecting to the Fee Application and no meritorious claims for legal malpractice against L&G.  Indeed, the Debtor's conduct in this case has been far from exemplary and, as noted, his discharge has been denied, in part, because of his misconduct.

## V. CONCLUSION

Upon consideration of the forgoing, the Court  shall enter an order overruling the Debtor's Objection and approving the Fee Application and the requests for compensation for services and reimbursement of expenses contained therein.  The Court  also shall enter orders sustaining the Trustee's Objections and denying the Debtor's Motion to Refrain and Motion to Compel.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: February 22, 2012

24